UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

PALM TRAN, INC. AMALGAMATED :
TRANSIT UNION LOCAL 1577 :
PENSION PLAN, Individually and On :
Behalf of All Others Similarly Situated, :
                                       :
                          Plaintiff, : Case No.:
                                        : 2:20-cv-12698-LVP-EAS
                   v. :
                                        : Hon. Linda V. Parker

CREDIT ACCEPTANCE :
CORPORATION, BRETT A. ROBERTS, :
and KENNETH S. BOOTH, :
                                       :
                        Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

Scott D. Musoff
Robert A. Fumerton
Patrick G. Rideout
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000

Thomas G. McNeill (P36895)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
(313) 223-3500

Scott R. Knapp (P61041)
DICKINSON WRIGHT PLLC
123 W. Allegan Street, Suite 900
Lansing, Michigan 48933
(517) 371-1730

*Counsel for Defendants*

November 11, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

I.      The AC Does Not Plead an Actionable Misstatement or Omission ...............3

        A.      CAC's Consumer "Opportunity" Statements Are Inactionable............3

        B.      CAC's Risk Disclosures and
                Compliance Opinions Are Inactionable ................................................5

        C.      Plaintiffs' Quibbles With
                Disclosures of Certain Business Practices Fail ....................................9

II.     The AC Does Not Plead a Cogent or Compelling Inference of Scienter......10

        A.      Defendants' Class Period Stock
                Activity Does Not Support Scienter.....................................................10

        B.      Alleged "Access to Information" Does Not Support Scienter............13

        C.      Plaintiffs Do Not Allege a
                "Suspiciously Quick" or Improper Settlement...................................17

        D.      Plaintiffs' "Temporal Proximity" Allegations Fail ...........................18

III.    Plaintiffs Have Not Pled Loss Causation ....................................................18

CONCLUSION.................................................................................................19

ii

# TABLE OF AUTHORITIES

*In re Acadia Pharmaceuticals Inc. Securities Litigation*,
　　No. 18-CV-01647-AJB-BGS,
　　2020 WL 2838686 (S.D. Cal. June 1, 2020) .................................................15

*In re APAC Teleservices, Inc. Securities Litigation*,
　　No. 97 Civ. 9145(BSJ), 1999 WL 1052004 (S.D.N.Y. Nov. 19, 1999) .......11

*Atlas v. Accredited Home Lenders Holding Co.*,
　　556 F. Supp. 2d 1142 (S.D. Cal. 2008) ..........................................................4

*Backe v. Novatel Wireless, Inc.*,
　　642 F. Supp. 2d 1169 (S.D. Cal. 2009) ........................................................11

*Benzon v. Morgan Stanley Distributors, Inc.*,
　　420 F.3d 598 (6th Cir. 2005) ...........................................................................6

*In re BioScrip, Inc. Securities Litigation*,
　　95 F. Supp. 3d 711 (S.D.N.Y. 2015) ...............................................................8

*Bondali v. Yum! Brands, Inc.*,
　　620 F. App'x 483 (6th Cir. 2015) .............................................................6, 14

*In re Bristol Myers Squibb Co. Securities Litigation*,
　　586 F. Supp. 2d 148 (S.D.N.Y. 2008) ...........................................................18

*Burges v. BancorpSouth, Inc.*,
　　No. 3-14-1564, 2015 WL 4198795 (M.D. Tenn. July 10, 2015) ...................8

*Campbell v. Lexmark International Inc.*,
　　234 F. Supp. 2d 680 (E.D. Ky. 2002).............................................................12

*Chamberlain v. Reddy Ice Holdings, Inc.*,
　　757 F. Supp. 2d 683 (E.D. Mich. 2010) ..........................................................8

*In re Citigroup Inc. Securities Litigation*,
　　753 F. Supp. 2d 206 (S.D.N.Y. 2010) .....................................................15, 16

*City of Austin Police Retirement System v. Kinross Gold Corp.*,
　　957 F. Supp. 2d 277 (S.D.N.Y. 2013) ...........................................................15

*City of Monroe Employees Retirement System v. Bridgestone Corp.*,
    399 F.3d 651 (6th Cir. 2005) ................................................................................18

*In re Countrywide Financial Corp. Securities Litigation*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................4

*In re Credit Acceptance Corp. Securities Litigation*,
    50 F. Supp. 2d 662 (E.D. Mich. 1999) .........................................................12

*Doshi v. General Cable Corp.*,
    386 F. Supp. 3d 815 (E.D. Ky. 2019)............................................................13

*Doshi v. General Cable Corp.*,
    823 F.3d 1032 (6th Cir. 2016) ..............................................................17, 20

*Drakes Collision, Inc. v. Auto Club Group Insurance Co.*,
    No. 19-13517, 2020 WL 7021697 (E.D. Mich. Nov. 30, 2020) .....................3

*In re Ford Motor Co. Securities Litigation*,
    381 F.3d 563 (6th Cir. 2004) ...........................................................................4

*Fresno County Employees' Retirement Ass'n v. ComScore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017) ...........................................................13

*In re Gentiva Securities Litigation*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013)...........................................................18

*George v. China Automotive Systems, Inc.*,
    No. 11 Civ. 7533(KBF), 2012 WL 3205062 (S.D.N.Y. Aug. 8, 2012) ........11

*In re Huntington Bancshares Inc. Securities Litigation*,
    674 F. Supp. 2d 951 (S.D. Ohio 2009).........................................................18

*Indiana Public Retirement System v. AAC Holdings, Inc.*,
    No. 3:19-cv-00407, 2021 WL 1316705 (M.D. Tenn. Apr. 8, 2021).............16

*Indiana State District Council of Laborers &*
    *HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*,
    583 F.3d 935 (6th Cir. 2009) ................................................................*passim*

*In re Insys Therapeutics, Inc. Securities Litigation*,
    No. 17 Civ. 1954 (PAC),
    2018 WL 2943746 (S.D.N.Y. June 12, 2018).............................................16

iv

*In re Intuitive Surgical Securities Litigation*,
  65 F. Supp. 3d 821 (N.D. Cal. 2014)............................................................11

*Jackson County Employees' Retirement System v. Ghosn*,
  510 F. Supp. 3d 583 (M.D. Tenn. 2020) .......................................................9

*Klein v. Altria Group, Inc.*,
  525 F. Supp. 3d 638 (E.D. Va. 2021) ............................................................8

*Konkol v. Diebold, Inc.*,
  590 F.3d 390 (6th Cir. 2009) ..................................................................17, 18

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*,
  797 F.3d 160 (2d Cir. 2015) ..........................................................................16

*Lubbers v. Flagstar Bancorp. Inc.*,
  162 F. Supp. 3d 571 (E.D. Mich. 2016) ........................................................5

*Massachusetts v. Credit Acceptance Corp.*,
  No. 2084CV01954-BLS2,
  2021 WL 1147444 (Mass. Super. Ct. Mar. 15, 2021)...................................7

*In re MicroStrategy, Inc. Securities Litigation*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) ..........................................................12

*MJK Family LLC v. Corporate Eagle Management Services, Inc.*,
  Civ. No. 09-12613, 2009 WL 4506418 (E.D. Mich. Nov. 30, 2009) .............6

*Ohio Public Employees Retirement System*
  *v. Federal Home Loan Mortgage Corp.*,
  830 F.3d 376 (6th Cir. 2016) ........................................................................19

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension*
  *Fund*,
  575 U.S. 175 (2015)......................................................................................17

*In re Oxford Health Plans, Inc., Securities Litigation*,
  187 F.R.D. 133 (S.D.N.Y. 1999)...................................................................11

*Pittman v. Unum Group*,
  861 F. App'x 51 (6th Cir. 2021)...............................................................2, 16

v

*Plymouth County Retirement Ass'n v. ViewRay, Inc.*,
    No. 1:19-cv-2115, 2021 WL 3773330 (N.D. Ohio Aug. 25, 2021) ........11, 14

*PR Diamonds, Inc. v. Chandler*,
    364 F.3d 671 (6th Cir. 2004) .................................................................14

*Richard Thorpe & Darrel Weisheit*
    *v. Walter Investment Management, Corp.*,
    111 F. Supp. 3d 1336  (S.D. Fla. 2015).................................................16

*Ricker v. Zoo Entertainment, Inc.*,
    534 F. App'x 495 (6th Cir. 2013)............................................................5

*In re Scholastic Corp. Securities Litigation*,
    252 F.3d 63 (2d Cir. 2001) ...................................................................12

*In re SLM Corp. Securities Litigation*,
    740 F. Supp. 2d 542 (S.D.N.Y. 2010) ..................................................13

*In re Sofamor Danek Group, Inc.*,
    123 F.3d 394 (6th Cir. 1997) .............................................................7, 8

*Stein v. U.S. Xpress Enterprises, Inc.*,
    No. 1:19-cv-98, 2020 WL 3584800 (E.D. Tenn. June 30, 2020).........14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).........................................................................1, 10

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016) ...................................................................7

*In re TransDigm Group, Inc. Securities Litigation*,
    440 F. Supp. 3d 740 (N.D. Ohio 2020) ................................................19

*In re United American Healthcare Corp. Securities Litigation*,
    No. 2:05-CV-72112 (LPZ/RSW),
    2007 WL 313491 (E.D. Mich. Jan. 30, 2007),
    *aff'd sub nom. Zaluski v. United American Healthcare Corp.*,
    527 F.3d 564 (6th Cir. 2008) .................................................................9

*USM Holdings, Inc. v. Simon*,
    No. 15-14251, 2017 WL 4005939 (E.D. Mich. Sept. 12, 2017)...........10

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019)...........................................................9

*Wilkof v. Caraco Pharmaceutical Laboratories, Ltd.*,
   No. 09-12830, 2010 WL 4184465 (E.D. Mich. Oct. 21, 2010) .....................17

*In re Yum! Brands, Inc. Securities Litigation*,
   73 F. Supp. 3d 846 (W.D. Ky. 2014), *aff'd sub nom.*
   *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483 (6th Cir. 2015) .................14

The Opposition[1] confirms that Plaintiffs' omission-based theory of securities fraud is based on the illogical premise that CAC knowingly misled investors about the legality of its core operations while at the same time disclosing all regulatory developments and related risks, including every instance in which a regulator alleged that CAC was violating the law.  Plaintiffs conspicuously ignore that CAC disclosed:

- that "[s]ubstantially all" of its customers are subprime consumers, and that, as a result, CAC expects to collect, on average, approximately seventy percent of the repayments that it is owed (ECF No. 35-3, PageID.722, 726-728);

- that it is currently "under a lot of scrutiny" (AC ¶ 93) and "expect[s] that regulatory investigations by both state and federal agencies will continue and . . . could have a material adverse impact" on CAC (ECF No. 35-5, PageID.750);

- the current status of every ongoing regulatory investigation, including timely updates on developments in the MA AGO's investigation dating back to December 12, 2014 (*see* AC ¶ 133; Mot., PageID.666-668);

- that various regulators, including the MA AGO, New York DFS and Mississippi Attorney General, asserted during the Class Period that the Company may have violated applicable laws (*see* Mot., PageID.667-668); and

- that the Mississippi Attorney General filed a lawsuit against CAC on April 23, 2019—almost a year and a half prior to the MA AGO's lawsuit (*i.e.*, the alleged "revelation" of securities fraud)—asserting similar claims to those contained in the MA Complaint (ECF No. 35-10, PageID.783).[2]

"This is hardly the sort of behavior one would expect from the perpetrator of [a]

---

[1] Pls.' Resp. & Memo. of Law in Opp. to the Mot. (ECF No. 38, PageID.862-921, the "Opposition" or "Opp."). Unless otherwise noted, capitalized terms shall have the meaning ascribed thereto in Defendants' Motion (ECF No. 35, PageID.644-704), all emphasis is added and internal citations and quotation marks are omitted.

[2] The Court should consider these public disclosures in ruling on the Motion.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

securities fraud" to *conceal* that CAC was knowingly violating the law.  *Pittman v. Unum Grp.*, 861 F. App'x 51, 57 (6th Cir. 2021).

The Opposition pretends as if CAC's comprehensive disclosures simply did not exist, asserting that CAC only "generically warned about regulatory risk" and "merely disclosed the existence of investigations and some relevant details."  (Opp., PageID.876, 899.)  Plaintiffs then argue that CAC should have preempted the MA Complaint with a public confession of wrongdoing, even though CAC vigorously disputes the MA AGO's claims.  The law requires no such thing, and securities fraud cannot be pled solely from unproven consumer protection allegations.  *See Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 938 (6th Cir. 2009) ("*ISDC*"); (*see also* Mot., PageID.684-686).

Although the Opposition acknowledges that a "holistic analysis" for scienter is required, Plaintiffs ignore every competing inference.  For example, they advance their misleading presentation of Mr. Roberts's Class Period stock sales while ignoring that his net stock holdings actually *increased* during the Class Period and experienced a $35.5 million decrease in value shortly after the sale Plaintiffs tout.  Plaintiffs also rely on speculative allegations that Defendants "must have known" of the alleged fraud by virtue of their executive positions or mere access to CAC's computer network—allegations that fall far short of the PSLRA's requirements.

The Court should dismiss the AC in its entirety and with prejudice for failure

2

to plead an actionable misstatement or omission, scienter or loss causation.[3]

## I.      The AC Does Not Plead an Actionable Misstatement or Omission

## A.      CAC's Consumer "Opportunity" Statements Are Inactionable

Although they continue to selectively quote CAC's statements (*see* Opp., PageID.881), Plaintiffs do not dispute that CAC explained precisely what it meant when it described the "opportunity" that it provides consumers:  Because CAC "report[s] to the three national credit reporting agencies," the Company provides an "opportunity" to consumers to purchase a vehicle and improve their credit score through on-time payments.  (ECF No. 35-16, PageID.832; *see also* AC ¶ 90.)

Unable to dispute the accuracy of CAC's disclosures, Plaintiffs attempt to manufacture a claim that CAC misled ***investors*** because the stated "opportunity" was "illusory" to ***consumers***.  (Opp., PageID.884.)  But CAC fully disclosed that: (i) its customers have impaired or limited credit histories and a higher risk of delinquency, default and repossession; (ii) for Consumer Loans originated between 2010 and 2019, at the time of origination, CAC expected to collect, on average, between 64.0% and 73.6% of contractually owed repayments; and (iii) actual collections varied from original expectations by between 0.1% and 4.2%.  (*See* ECF No. 35-3, PageID.726; *see also* Opp., PageID.883, 885.)  The AC does not allege that CAC

---

[3] Plaintiffs have abandoned their flawed "scheme liability" claim by failing to respond to CAC's arguments. *See Drakes Collision, Inc. v. Auto Club Grp. Ins. Co.*, No. 19-13517, 2020 WL 7021697, at *12 (E.D. Mich. Nov. 30, 2020) (Parker, J.).

misrepresented forecasted collection rates, Consumer Loan performance metrics or the circumstances under which it accepted assignment of Consumer Loans.  (*See* ECF No. 35-3, PageID.726-729.)  Thus, this case is readily distinguishable from the out-of-circuit residential-mortgage-crisis cases Plaintiffs cite.[4]

Moreover, as CAC established, statements about the "opportunity" offered to consumers are classic puffery on which no reasonable investor would rely as a matter of law.  *See ISDC*, 583 F.3d at 944 ("vague" and "loosely optimistic" statements "fall squarely within th[e] realm of corporate puffery"); *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004) (puffery is "not material, even if . . . misleading").  Plaintiffs cursorily contend that these statements are not puffery "given the context" (Opp., PageID.883), but do not even attempt to explain how the context (*i.e.*, that CAC reports to credit reporting agencies) makes them actionable.

Finally, the Court should reject Plaintiffs' contrived attempt to recast CAC's statements about the "opportunity" provided to consumers as "reassur[ances] to investors that the Company was not engaging in illegal business practices."  (Opp.,

---

[4] *See Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1149-52 (S.D. Cal. 2008) (company stated it was "focused on credit quality" even though it had "abandon[ed] adherence to its underwriting policies" while simultaneously "manipulat[ing] earnings by inadequately reserving for" mortgage loan losses); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1153 (C.D. Cal. 2008) ("company obsessed with loan production and market share with little regard for the attendant risks, despite the company's repeated assurances to the market").

PageID.884.)  No fair reading of these statements supports this conjecture, and there

is no conceivable nexus between the alleged omission (*i.e.*, violations of law) and

the alleged misstatement (*i.e.*, opportunities to improve credit scores).  *Lubbers v.*

*Flagstar Bancorp. Inc.*, 162 F. Supp. 3d 571, 580 (E.D. Mich. 2016) (Friedman, J.).[5]

**B.**    **CAC's Risk Disclosures and Compliance Opinions Are Inactionable**

The Opposition does not dispute that CAC discloses in painstaking detail in

every quarterly filing (and in the interim, as necessary) (i) the legal risks to which it

is exposed, (ii) the regulatory inquiries to which it is subject and (iii) the potential

material adverse impact of these risks and inquiries.  (*See* Mot., PageID.664-670,

679-686.)  Plaintiffs instead challenge a smattering of "generic risk warnings" and

statements about "compliance with applicable regulations" from SEC filings, earn-

ings calls and shareholder letters (AC, PageID.480) on the grounds that CAC pur-

portedly was "violating the law" during the Class Period.  (*See id.* ¶ 100).

Plaintiffs cannot plead that CAC's prospective disclosures are false by assert-

ing that CAC should have preordained that a yet-to-be-filed enforcement action was

---

[5] Plaintiffs mischaracterize Defendants' argument as challenging Plaintiffs' CW al-
legations solely "because the CWs are 'unidentified' employees."  (Opp.,
PageID.885 n.4.)  Not so.  Plaintiffs' CW allegations fail because not one "even
suggests that any of CAC's business practices were unlawful, much less that any of
CAC's statements were false when made."  (Mot., PageID.675 n.7; *see also id.*,
PageID.691-692 & n.11.)  It makes no difference, *arguendo*, that Plaintiffs provided
details with respect to each CW's former position.  (*See* Opp., PageID.885 n.4); *see*
*also Ricker v. Zoo Ent., Inc.*, 534 F. App'x 495, 496 n.2, 500-01 (6th Cir. 2013).

forthcoming.  (*See* Mot., PageID.679-680 (citing *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483 (6th Cir. 2015); *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598 (6th Cir. 2005)).)  Plaintiffs' only response is to argue that the two controlling decisions cited by CAC—*Bondali* and *Benzon*—are "non-precedential *dicta*" and erroneously refer to *Benzon* as a **Ninth Circuit** decision.  (Opp., PageID.894 & nn.13-14.)[6]  This is not a case where CAC allegedly disclosed only certain regulatory risks "while failing to disclose [a] more significant" regulatory risk, as in the district court case on which Plaintiffs rely.  *MJK Family LLC v. Corp. Eagle Mgmt. Servs., Inc.*, Civ. No. 09-12613, 2009 WL 4506418, at *10 (E.D. Mich. Nov. 30, 2009).  Rather, this case is precisely "a simple 'semantic quibble' about a single statement that [certain regulatory risks] 'may' or 'do' exist."  *Id.*

Plaintiffs also cannot plead falsity through their bald contention—without any particularized allegations—that "the foundation of [CAC's] business model and profitability[]" on a national level was a "sham" grounded in "illegal, unfair, and deceptive trade practices."  (Opp., PageID.875-876; *see also* AC ¶ 100.)  Indeed, Plaintiffs identify only two supposed "clear indications" that CAC was covertly

_____

[6] The portion of *Benzon* cited in the Motion was the basis for the Sixth Circuit's conclusion that the plaintiffs failed to state a claim.  *See Benzon*, 420 F.3d at 612. And the *Bondali* court's conclusion that the risk disclosures at issue were inactionable was one of the bases for its affirmance of dismissal.  *See Bondali*, 620 F. App'x at 491.  Thus, Plaintiffs are incorrect that *Benzon* was "specific to the relationship between investors and their financial advisors," or that the portions of the decisions cited by CAC are "*dicta*."  (Opp., PageID.894 & nn.13-14.)

6

"violating the law"—both of which relate only to issues of *Massachusetts* law. *First*, Plaintiffs cite to CAC's ***disclosure*** that the MA AGO "warned [CAC] of its belief that the Company engaged in culpable conduct." (Opp., PageID.890.)  But it defies logic that CAC defrauded investors about the MA AGO's belief by publicly disclosing it. *Second*, Plaintiffs assert that there was "unambiguous precedent forbidding" the Company's practices, but cite only to a June 2018 decision construing a Massachusetts regulation limiting the frequency of collection calls in that state. (*Id.*, PageID.877, 889.)  Putting aside that CAC was alleged to have violated that call regulation only ***before*** the decision cited by Plaintiffs (*see* AC Ex. 1, PageID.551 ¶ 102), that decision touched but one aspect of CAC's *Massachusetts* business practices, and had no material effect on its core business.  (*See* Mot., PageID.688 n.9.)[7]

Finally, the Opposition does not mention (much less attempt to distinguish) the controlling case, *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394 (6th Cir. 1997), wherein the Sixth Circuit held that a company had no duty to disclose that it was "engaging in illegal promotion of its products" because such legality "was a matter

---

[7] While Plaintiffs argue that the June 2018 decision "left no ambiguity" that CAC's collection call practices violated Massachusetts law (Opp., PageID.890), the Massachusetts state court actually ***denied*** the MA AGO's motion for partial summary judgment on its collection call claim, concluding that "the finder of fact . . . may . . . find in favor of CAC." *Massachusetts v. Credit Acceptance Corp.*, No. 2084CV01954-BLS2, 2021 WL 1147444, at *9 (Mass. Super. Ct. Mar. 15, 2021).  Thus, Plaintiffs' attempt to distinguish *Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016), is wrong.

of opinion" and not "virtually as certain as hard facts." *Id.* at 401-02; *see also ISDC*, 583 F.3d at 945 (company has no "duty to opine about the legality of [its] own actions").[8] Instead, Plaintiffs rely primarily on distinguishable district court decisions (most from out of circuit) where a company simultaneously (i) stated that it was legally compliant and (ii) either failed to disclose ongoing regulatory inquiries or made affirmative misstatements concerning the same.[9] Here, where CAC timely and accurately disclosed the existence and status of all regulatory matters, the legion of analogous authority cited in the Motion (the vast majority of which the Opposition

---

[8] Plaintiffs contend that *ISDC* does not apply because the AC sufficiently alleges that Defendants knew the falsity of their statements. (*See* Opp., PageID.897-898.) Plaintiffs are incorrect. The Sixth Circuit concluded that a "generic claim of lawfulness, in the absence of any specifics," did not "require the disclosure of the allegedly 'illegal' activities." *ISDC*, 583 F.3d at 947. Plaintiffs identify no "specifics" to color the alleged "generic claim[s] of lawfulness" here, *id.*, nor do they satisfy their heavy burden of pleading actual knowledge. (*See* Mot., PageID.688-700; *infra* § II.)

[9] *See In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 727, 729-30 (S.D.N.Y. 2015) (company made "affirmative misstatements" about whether it had received a civil investigative demand (emphasis omitted)); *Burges v. BancorpSouth, Inc.*, No. 3-14-1564, 2015 WL 4198795, at *2 (M.D. Tenn. July 10, 2015) (defendants assured compliance without disclosing that the Bank was "under review by the FDIC" for noncompliance). This case also is distinguishable from *Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683 (E.D. Mich. 2010) (Borman, J.), cited throughout the Opposition, where the company attributed its success to "lawful competition" and "expressly disavow[ed] . . . participation in any customer or market allocation agreements with its competitors," even though it allegedly had entered into illegal, anticompetitive agreements. *Id.* at 693; *see also Klein v. Altria Grp., Inc.*, 525 F. Supp. 3d 638, 660-61 (E.D. Va. 2021) (company expressed "continued commitment to preventing underage vaping" while failing to disclose that business "'directed [its] marketing] at youth' and that this subjected [it] to material risks and expenses").

does not address) compels dismissal.  (*See* Mot., PageID.685-686.)[10]

## C.    Plaintiffs' Quibbles With Disclosures of Certain Business Practices Fail

Finally, Plaintiffs concede that CAC's descriptions of its collection call practices and ancillary product offerings (VSC and GAP) are "literally true."[11]  (Opp., PageID.902.)  Undeterred, Plaintiffs contend these statements must be accompanied by a confession of illegality.  Plaintiffs' position both lacks legal support and ignores the context for the statements, including disclosures *in the very same document* that various regulators, including the MA AGO, had accused CAC of violating the law. (*See* ECF No. 35-3, PageID.721.)  In any event, where, as here, "there exists a good faith dispute as to facts or an alleged legal violation, the law only requires disclosure of the dispute."  *In re United Am. Healthcare Corp. Sec. Litig.*, No. 2:05-CV-72112 (LPZ/RSW), 2007 WL 313491, at *12 (E.D. Mich. Jan. 30, 2007) (Zatkoff, J.), *aff'd sub nom. Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564 (6th Cir. 2008); *see also Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 809 (N.D. Cal. 2019).[12]

---

[10] Plaintiffs' quibbles with CAC's statements in its Shareholder Letters and about dealer compliance, and with Mr. Roberts's statements on CAC's 1Q 2018 Earnings Call (*see* AC ¶¶ 93, 96, 99), fail for similar reasons:  the AC does not plead an actionable misstatement or omission.

[11] Plaintiffs' concession renders their cited authority inapposite.  *See Jackson Cnty. Emps.' Ret. Sys. v. Ghosn*, 510 F. Supp. 3d 583, 612 (M.D. Tenn. 2020) (plaintiff pled "multiple specific, detailed factual allegations" of falsity)

[12] Contrary to Plaintiffs' assertion, Defendants did *not* "fail to challenge Plaintiffs' falsity allegations regarding the sale of securities to investors pursuant to . . .

## II.     The AC Does Not Plead a Cogent or Compelling Inference of Scienter

Plaintiffs wrongly assert that "recklessness satisfies the scienter requirement." (Opp., PageID.902.)  The gravamen of the AC is the failure to disclose "soft" information, *i.e.*, the "legality of [CAC's] actions."  *ISDC*, 583 F.3d at 945.  Thus, the AC "must satisfy a heightened scienter requirement:  knowledge, rather than mere recklessness."  *USM Holdings, Inc. v. Simon*, No. 15-14251, 2017 WL 4005939, at *3 (E.D. Mich. Sept. 12, 2017) (Steeh, J.).  Plaintiffs do not meet this "exacting" pleading standard.  *Tellabs*, 551 U.S. at 313-14.

## A.     Defendants' Class Period Stock Activity Does Not Support Scienter

Plaintiffs acknowledge that scienter requires a "holistic analysis" that does not permit scrutinization of "any individual allegation . . . in isolation."  (Opp., PageID.903.)  Yet Plaintiffs place virtually all of their scienter weight on their unsupportable assertion that "the AC alleges massive, unusually timed insider stock sales by Defendant Roberts while in possession of information contradicting his public statements."  (Opp., PageID.905.)  Plaintiffs not only mis-portray the reality of

---

materially misleading offering documents" in private placement offerings from well before the Class Period.  (Opp., PageID.888 n.7; *see also* AC ¶ 75 (discussing "two securitizations, one from 2016 and one from 2017").)  As an initial matter, Defendants explained why none of Plaintiffs' "violation of law" arguments states a claim. (*See* Mot., PageID.679-686.)  Moreover, *Plaintiffs* do not assert any securities fraud claims based on these securities offerings, which pre-date the Class Period.  Rather, Plaintiffs allege that the *MA Complaint* alleged that CAC sold securities by virtue of materially false or misleading statements.  (AC ¶¶ 70-77.)

Mr. Roberts's stock transactions, but they also eschew the very "holistic analysis" they profess to advocate by brushing aside every fact that undermines scienter.

At the outset, Plaintiffs misleadingly assert that Mr. Roberts sold "10.87 percent of his holdings" during the Class Period,[13] and cite out-of-circuit district court cases for the proposition that sales of 8-9% of holdings can be sufficient to support an inference of scienter.  (Opp., PageID.909.)[14]  But the percentage touted by Plaintiffs is an *aggregate* of Mr. Roberts's sales over a more-than-two-year period.  (*See* Mot., PageID.700.)   In actuality, the sale that Plaintiffs claim was "suspicious" amounted to less than 5% of Mr. Roberts's pre-sale holdings—far less than in the

---

[13] Plaintiffs assert that "Defendants conveniently ignore" that Mr. Roberts's stock sales were not made pursuant to a Rule 10b5-1 trading plan.  (Opp., PageID.906, n.19.)  But trading pursuant to a Rule 10b5-1 plan is an "affirmative defense" to insider trading, and the absence of such an affirmative defense is no substitute for pleading scienter with particularity.  *Plymouth Cnty. Ret. Ass'n v. ViewRay, Inc.*, No. 1:19-cv-2115, 2021 WL 3773330, at *19 (N.D. Ohio Aug. 25, 2021).

[14] Unlike in *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821 (N.D. Cal. 2014), as set forth below (*infra* § II(B)), Plaintiffs do not allege with particularity that Mr. Roberts sold stock "at times after [he] learned of information that would adversely affect [CAC] stock, but before the public learned the information."  *Intuitive*, 65 F. Supp. 3d at 839.  The other authorities Plaintiffs cite also are inapposite.  *See George v. China Auto. Sys., Inc.*, No. 11 Civ. 7533(KBF), 2012 WL 3205062, at *10 (S.D.N.Y. Aug. 8, 2012) ($42 million in "collective net profit" from insider trades across five trading defendants); *Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1184 (S.D. Cal. 2009) (defendants "all sold over 90%" of their holdings; *In re Oxford Health Plans, Inc., Sec. Litig.*, 187 F.R.D. 133, 140 (S.D.N.Y. 1999) ("each [of ten] individual defendant[s] sold for large profits"); *In re APAC Teleservice, Inc. Sec. Litig.*, No. 97 Civ. 9145(BSJ), 1999 WL 1052004, at *7 (S.D.N.Y. Nov. 19, 1999) (two insiders obtained "proceeds in excess of $161,460,000").

11

cases cited by Plaintiffs.  (Opp., PageID.909-910); *see also In re Credit Acceptance Corp. Sec. Litig.*, 50 F. Supp. 2d 662, 677 (E.D. Mich. 1999) (Edmunds, J.) (no scienter when stock sales "represented only 9% of [defendant's] pre-sale holdings").[15]

Moreover, Mr. Roberts's net stock holdings actually ***increased*** during the Class Period.  Plaintiffs are left touting the supposed "temporal proximity" of one sale to the alleged corrective disclosure.  (Opp., PageID.905-908.)  But the gross proceeds realized from that one sale were offset nearly ***threefold*** by a ***$35.5 million decrease*** in the value of his remaining holdings.  (*See* Mot., PageID.699 (collecting cases).)[16]  Plaintiffs' implausible inference that Mr. Roberts capitalized on a years-long fraud by taking a $35.5 million portfolio loss is not one that supports scienter.[17]

---

[15] Plaintiffs strain to distinguish Judge Edmunds's *Credit Acceptance* decision (which is directly on point), including by asserting that her decision predates *Tellabs* and *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011).  (*See* Opp., PageID.907 n.20.)  But Plaintiffs do not explain how either of those decisions abrogated *Credit Acceptance*, or why Mr. Roberts's sale of "only a small fraction of [his] shares," *Credit Acceptance*, 50 F. Supp. 2d at 677, should not be considered as part of the "holistic analysis of scienter this Court is required to undertake."  (Opp., PageID.907 n.20); *see also In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 75 (2d Cir. 2001) (noting that "stock sales by one officer that amounted to less than 11 percent of his holdings" has "failed to qualify as 'unusual'").

[16] Plaintiffs mischaracterize Defendants' argument as suggesting "that a defendant must avoid even more significant losses by liquidating his entire position."  (Opp., PageID.908.)  Rather, the shares Mr. Roberts sold must be "consider[ed] [in] the larger context"—that he ended the Class Period with more shares than he started with.  *Campbell v. Lexmark Int'l Inc.*, 234 F. Supp. 2d 680, 686 (E.D. Ky. 2002).

[17] Plaintiffs' out-of-circuit cases are wholly inapplicable.  *See In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 647 n.50 (E.D. Va. 2000) (defendant allegedly

Likewise, Plaintiffs discount that both CAC and Mr. Booth (co-participants in the supposed fraud) **_purchased_** stock during the Class Period at purportedly artificially inflated prices. (*See* Opp., PageID.907.) Plaintiffs argue that such purchases in isolation do not foreclose an inference of scienter. But where, as here, the **_only_** *Helwig* factor pled is sales by a single co-defendant, the purchases of Mr. Booth and CAC—viewed as part of a holistic analysis—significantly undermine an inference of scienter. (*See* Mot., PageID.697-698 (collecting cases); *id.*, PageID.689-690.)[18]

## B.   Alleged "Access to Information" Does Not Support Scienter

Plaintiffs repackage their conclusory "access to information" allegations to support two *Helwig* factors: (i) divergence between internal reports and external statements and (ii) disregard of the most current factual information. (*See* Opp.,

---

retained holdings to have "the best of both worlds" by "profit[ing] from the alleged fraud" and "minimiz[ing] the need to . . . give up a significant degree of control of the [c]ompany"); *see also Fresno Cnty. Emps.' Ret. Ass'n v. ComScore, Inc.*, 268 F. Supp. 3d 526, 554 (S.D.N.Y. 2017) (each and every defendant sold stock ranging between 22% and 92% of their respective holdings).

[18] Plaintiffs' makeweight attempt to distinguish *Doshi v. General Cable Corp.*, 386 F. Supp. 3d 815 (E.D. Ky. 2019), as a case that cited a case that did not involve stock sales should be rejected. (*See* Opp., PageID.908 n.21.) In holding that the plaintiff failed to plead scienter, the *Doshi* court "employ[ed] a holistic analysis" and "consider[ed] the fact that [the company] repurchased its own stock during the Class Period when the stock prices were allegedly inflated"—as CAC did here—concluding that such repurchases "weigh[ed] against scienter." *Doshi*, 386 F. Supp. 3d at 838.

In addition, because the AC "does not allege any unusual trading activity" as to Mr. Booth, this further "undermines the claim of scienter against him." *In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 558-59 (S.D.N.Y. 2010).

13

PageID.910-911.) Plaintiffs, however, fail to allege *any* particularized facts establishing these factors, including receipt of information by the Individual Defendants to support an inference that they *knew* CAC was "violating the law" during the Class Period. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 688 (6th Cir. 2004); *see also Plymouth Cnty.*, 2021 WL 3773330, at *14 ("'The standard from *Tellabs* requires *specific* facts' that the 'reports were known to Defendants' and that they reflect the allegedly fraudulent scheme." (quoting *Konkol v. Diebold, Inc.*, 590 F.3d 390, 398 (6th Cir. 2009))); *accord Stein v. U.S. Xpress Enters., Inc.*, No. 1:19-cv-98, 2020 WL 3584800, at *40 (E.D. Tenn. June 30, 2020).

*Bondali* is directly on point. There, the Sixth Circuit affirmed dismissal of a federal securities complaint that "fail[ed] to include facts sufficiently tying the individual defendants to information" that would have put them on notice that the company's "statements discussing investment risks or touting its safety protocols were false or misleading." *Bondali*, 620 F. App'x at 492. As the *Bondali* district court observed, mere allegations that senior corporate officials "could have accessed and reviewed" such information is insufficient; a complaint must allege that the officials "acted with knowledge" of the information, "such as a report of the [information] directed to senior management or specific conversations or meetings concerning" the same. *In re Yum! Brands, Inc. Sec. Litig.*, 73 F. Supp. 3d, 846, 867 (W.D. Ky. 2014), *aff'd sub nom. Bondali*, 620 F. App'x 483. The AC does not do so.

14

Plaintiffs next resort to speculation and supposition. *First*, Plaintiffs assert that, as a general matter, "access to information and data increased for personnel that were higher up on the chain of command." (Opp., PageID.911.)  It is well-settled that mere access to information by virtue of corporate positions is insufficient to support scienter. (*See* Mot., PageID.695-696 (collecting cases).)  Otherwise, all senior executives would have scienter by virtue of their computer logins.[19]

*Second*, Plaintiffs assert that Mr. Roberts "spoke publicly about his knowledge of applicable regulations," pointing to the statement that "it's our job to operate in a highly compliant way." (Opp., PageID.911.)  Once again, Plaintiffs seek to lower the scienter bar so low that the CEO of any company automatically would have scienter merely by making generic statements or providing updates to investors on the status of ongoing regulatory matters.  The AC provides no plausible

---

[19] Plaintiffs' cases underscore the AC's deficiencies. *See City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 298-99 (S.D.N.Y. 2013) (no scienter when plaintiff did not allege "other than in conclusory fashion, that [defendant] did not genuinely or reasonably believe [its] statements at the time it made them," and "failed to point to evidence showing that [statement] was actually false, or that [defendant] knew or had reason to know it was false"); *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 245 (S.D.N.Y. 2010) (no scienter from allegations that "information presented by confidential witnesses was known or common knowledge within the company," as such assertions were "too vague and conclusory to support a finding that defendants knew" their statements were false); *cf. In re Acadia Pharms. Inc. Sec. Litig.*, No. 18-CV-01647-AJB-BGS, 2020 WL 2838686, at *7 (S.D. Cal. June 1, 2020) (data in question was required by law to be tracked and reported to the Center of Medicare and Medicaid Services).

15

inference that Mr. Roberts was an expert in the "applicable regulations" in each of the fifty states in which CAC operates (as well as federal regulations), much less that Mr. Roberts **knew** that CAC was violating those regulations. *See Pittman*, 861 F. App'x at 55 (no scienter where "gist" of allegations was that executives "must have known" of information by virtue of their "positions in the [c]ompany").[20]

*Third*, Plaintiffs argue that Defendants "produced the very data that demonstrated their violations of applicable laws and regulations" in response to MA AGO subpoenas. (Opp., PageID.912.)  But Plaintiffs offer nothing other than speculation concerning the contents or timing of document productions, or the role of any of the Individual Defendants in the collection or production of those materials.  Moreover, Defendants' contemporaneous **disclosure** that the MA AGO "warned [CAC] of its belief that the Company engaged in culpable conduct" (*id.*, PageID.914) undermines, not assists, an inference of scienter.  *See, e.g.*, *Loreley Fin. (Jersey) No. 3*

---

[20] The AC falls far short of the particularity alleged in the cases Plaintiffs cite.  *See Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*, No. 3:19-cv-00407, 2021 WL 1316705, at *8 (M.D. Tenn. Apr. 8, 2021) (admitted knowledge of specific information showing accounting was "overly rosy"); *In re Insys Therapeutics, Inc. Sec. Litig.*, No. 17 Civ. 1954 (PAC), 2018 WL 2943746, at *2 (S.D.N.Y. June 12, 2018) (fraudulent accounting to conceal declining revenues in contravention of accounting policies and GAAP); *Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1367, 1374 (S.D. Fla. 2015) (COO "received personal emails regarding . . . compliance deficiencies and deceptive practices"); *Citigroup*, 753 F. Supp. 2d at 241 (bank CFO having familiarity with indices that tracked prices of residential-mortgage-backed securities ("RMBS") denied relevance of declining index prices on value of securities backed by RMBS in responding to analyst questions).

16

*Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177 (2d Cir. 2015) (no scienter where complaint "raised no plausible inference of misrepresentation in the first place").

*Finally*, the hypothetical that Plaintiffs selectively quote from *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015), concerning "unadorned statement[s] of opinion about legal compliance," *id.* at 189, does not support their argument. (*See* Opp., PageID.914-915.) The Court made clear that the misleading nature of an opinion "always depends on context." *Omnicare*, 575 U.S. at 190. CAC's opinions of substantial legal compliance (*see* AC ¶ 97) were made in the context of robust disclosures concerning CAC's regulatory risk and the status of ongoing regulatory matters. (*See* Mot., PageID.664-670, 680-682.) Accordingly, Defendants cannot be said to have failed to "share full information with the public" about or "minimized both the[] scope and overall significance" of regulatory findings. *Wilkof v. Caraco Pharm. Labs., Ltd.*, No. 09-12830, 2010 WL 4184465, at *1, *5 (E.D. Mich. Oct. 21, 2010) (Tarnow, J.).

In short, Plaintiffs' reimagination (and minimization) of their pleading burden would invite precisely the "fraud by hindsight" pleading that the PSLRA sought to eliminate. *See Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1044 (6th Cir. 2016).

**C.    Plaintiffs Do Not Allege a "Suspiciously Quick" or Improper Settlement**

CAC's Massachusetts settlement was not "suspiciously quick or otherwise improper." *Konkol*, 590 F.3d at 404. CAC announced an agreement to settle with

the MA AGO after eight months of vigorous litigation in two courts, including decisions on motions to dismiss and partial summary judgment. (Mot., PageID.670-672.) CAC publicly filed the terms of the settlement, further undermining any scienter inference and distinguishing Plaintiffs' cases. (ECF No. 35-15, PageID.825).[21]

## D.    Plaintiffs' "Temporal Proximity" Allegations Fail

"[T]emporal proximity between an alleged fraudulent statement and a later disclosure, without more, is nothing more than fraud by hindsight." *In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp. 2d 951, 973 (S.D. Ohio 2009); *see also Konkol*, 590 F.3d at 401 (same). "Because [Plaintiffs] . . . do not allege any specific facts establishing that the Defendants knew . . . the falsity of their statements, the proximity of the [alleged] inconsistent statements is not sufficient to support a strong inference of scienter." *Konkol*, 590 F.3d at 401; (*see* Mot., PageID.691-693).

## III.    Plaintiffs Have Not Pled Loss Causation

Contrary to Plaintiffs' assertion (Opp., PageID.918), Defendants addressed loss causation based on the January 31, 2020 stock drop, which the AC does not attribute to the alleged fraud. (*See* Mot., PageID.702 n.16.) Further, as the authority

---

[21] *Cf. City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 685 (6th Cir. 2005) ("secret settlements" of lawsuits that were "sealed" to conceal the alleged improper practices); *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 168 (S.D.N.Y. 2008) ("secret oral concessions" in settlement agreement "which [defendant] lied about"). Moreover, "the existence of a[] [government] investigation alone is not sufficient to give rise to a requisite cogent and compelling inference of scienter." *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013).

cited by Plaintiffs establishes, for a materialization of risk theory to work, the underlying risk must have been "concealed." *See Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 385 (6th Cir. 2016). Similarly, Plaintiffs' argument that the MA Complaint was a "corrective disclosure" fails because it did not "reveal[] new information to the market" regarding the MA AGO's beliefs about the legality of certain of CAC's local business practices. *In re TransDigm Grp., Inc. Sec. Litig.*, 440 F. Supp. 3d 740, 771 (N.D. Ohio 2020) (collecting cases).[22]

## <u>CONCLUSION</u>

For the reasons set forth above, the AC should be dismissed with prejudice.

Dated: November 11, 2021

Respectfully submitted:

**SKADDEN, ARPS, SLATE MEAGHER & FLOM LLP**

Scott D. Musoff
Robert A. Fumerton
Patrick G. Rideout
One Manhattan West
New York, New York 10001
(212) 735-3000
scott.musoff@skadden.com
robert.fumerton@skadden.com
patrick.rideout@skadden.com

**DICKINSON WRIGHT PLLC**

By: *s/ Thomas G. McNeill*
Thomas G. McNeill (P36895)
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
(313) 223-3500
tmcneill@dickinsonwright.com

Scott R. Knapp (P61041)
123 W. Allegan Street, Suite 900
Lansing, Michigan 48933
(517) 371-1730
sknapp@dickinsonwright.com

*Counsel for Defendants*

---

[22] Having failed to plead a primary violation of Section 10(b), Plaintiffs' Section 20(a) claim must be dismissed. *See Doshi*, 823 F.3d at 1045; *ISDC*, 583 F.3d at 947.

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

By: _s/ Thomas G. McNeill_
Thomas G. McNeill (P36895)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
(313) 223-3500
tmcneill@dickinsonwright.com

*Counsel for Defendants*