## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PALM TRAN, INC. AMALGAMATED
TRANSIT UNION LOCAL 1577 PENSION
PLAN, Individually and On Behalf of All
Others Similarly Situated,

        Plaintiff,

   v.

CREDIT ACCEPTANCE CORPORATION,
BRETT A. ROBERTS, and KENNETH S.
BOOTH,

        Defendants.

Case No. 20-cv-12698
Honorable Linda V. Parker

## LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF <u>NOTICE TO THE SETTLEMENT CLASS</u>

Lead Plaintiffs Ontario Provincial Council of Carpenters' Pension Trust Fund and Millwright Regional Council of Ontario Pension Trust Fund (collectively, "Lead Plaintiffs"), on behalf of themselves and all other members of the proposed Settlement Class, through Court-appointed Lead Counsel Labaton Sucharow LLP, hereby move this Court for an order, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e): (i) preliminarily approving the proposed Settlement of this securities class action; (ii) preliminarily certifying the Settlement Class for purposes of the Settlement only; (iii) approving the form and manner of providing notice of the proposed Settlement to the Settlement Class; (iv) appointing JND Legal Administration as the Claims Administrator; (v) scheduling a date for the final Settlement Hearing; and (vi) granting such other and further relief as the Court may deem fair and appropriate.

The Parties have conferred and defendants do not object to the relief requested by this motion.

The motion is based on the accompanying Lead Plaintiffs' Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement and Approval of Notice to the Settlement Class, and the Declaration of Thomas G. Hoffman, Jr., dated August 24, 2022, with annexed exhibits, filed herewith.

A proposed Order Granting Preliminary Approval of Class Action Settlement, which was negotiated by the Parties to the Settlement, with annexed exhibits, is also submitted herewith.

Dated:  August 24, 2022

*/s/ Thomas G. Hoffman, Jr.*
**LABATON SUCHAROW LLP**
Michael P. Canty
Thomas G. Hoffman, Jr.
Charles J. Stiene
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
mcanty@labaton.com
thoffman@labaton.com
cstiene@labaton.com

*Lead Counsel for Lead Plaintiffs and the Proposed Class*

Respectfully Submitted,

Kelly E. Kane (P81912)
**CLARK HILL PLC**
Woodward Ave
Suite 3500
Detroit, Michigan 48226
Tel.: (313) 309-9495
Fax: (313) 309-6875
Email: kkane@clarkhill.com

**CLARK HILL PLC**
Ronald A. King (P45088)
212 E. Cesar Chavez Ave
Lansing, Michigan 48906
Tel.: (517) 318-3015
Fax: (517) 318-3068
rking@clarkhill.com

*Liaison Counsel for Lead Plaintiffs*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 24, 2022, I caused a copy of the foregoing

document to be filed with the Clerk of the Court via CM/ECF, which will send a

notice of electronic filing to all registered users.

<u>  /s/   *Thomas G. Hoffman, Jr.*                  </u>
        THOMAS G. HOFFMAN, Jr.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| PALM TRAN, INC. AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN, Individually and On Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>  v.<br><br>CREDIT ACCEPTANCE CORPORATION, BRETT A. ROBERTS, and KENNETH S. BOOTH,<br><br>    Defendants. | Case No. 20-cv-12698<br>Honorable Linda V. Parker |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF <u>NOTICE TO THE SETTLEMENT CLASS</u>**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...............................3

I.    PROCEDURAL HISTORY ...............................................................3

II.   NEGOTIATION OF THE SETTLEMENT......................................4

ARGUMENT ...............................................................................................5

I.    THE SETTLEMENT WARRANTS PRELIMINARY
     APPROVAL ........................................................................................5

    A.  Standards Governing Review .....................................................5

    B.  Approval of the Settlement Is Likely Under Rule 23(e)(2) ......8

        1.  Lead Plaintiffs and Lead Counsel Have Zealously
           Represented the Settlement Class.......................................8

        2.  The Settlement Is the Product of Good Faith, Informed,
           and  Arm's-Length Negotiations by Experienced
           Counsel ...............................................................................10

        3.  Rule 23(e)(2)(C): The Settlement Provides Significant
           and Certain Benefits to the Class.......................................11

        4.  The Effective Process for Distributing Relief ..................14

           (a)  The Settlement Does Not Excessively Compensate
               Lead Counsel ..............................................................14

           (b)  The Relief Provided Is Adequate Taking Into
               Account All Agreements Related to the Settlement....15

        5.  Settlement Class Members Are Treated Equitably ...........16

II.   PRELIMINARY CERTIFICATION OF THE PROPOSED
     SETTLEMENT CLASS IS APPROPRIATE .................................17

i

    A.   The Settlement Class Meets the Requirements of Rule 23(a)..................18

        1.   Rule 23(a)(1) – Numerosity.................................................................18

        2.   Rule 23(a)(2) – Commonality.............................................................19

        3.   Rule 23(a)(3) – Typicality .................................................................20

        4.   Rule 23(a)(4) – Adequacy of Representation ....................................21

        5.   Rule 23(b)(3) – Predominance and Superiority................................22

III.   NOTICE TO THE SETTLEMENT CLASS SHOULD BE
APPROVED......................................................................................................23

IV.   PROPOSED SCHEDULE OF SETTLEMENT-RELATED
EVENTS............................................................................................................24

CONCLUSION ......................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Med. Sys. Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ............................................................................21

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................................17, 22, 23

*Beattie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007) ............................................................................20

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) .............................................................17, 19

*Dallas v. Alcatel-Lucent USA, Inc.*,
  No. 09-14596, 2013 WL 2197624 (E.D. Mich. May 20, 2013).........................6

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) .........................................................10, 19, 20

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)...........................................................................................23

*In re F&M Distribs., Inc. Sec. Litig.*,
  No. 95-CV-71778-DT, 1999 U.S. Dist. LEXIS 11090 (E.D. Mich.
  June 29, 1999)....................................................................................................15

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game
  Tech., Inc.*,
  No. 3:09–cv–00419–MMD–WGC,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) .....................................................13

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of
  Am. v. Ford Motor Co.*,Nos. 05-74730, 06-10331, 2006 WL
  1984363 (E.D. Mich. July 13, 2006), *aff'd sub nom.*, *Int'l Union,
  United Auto., Aerospace, & Agric. Implement Workers of Am. v.
  Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)...........................................5, 6

*Jenkins v. Macatawa Bank Corp.*,
   No. 1:03-CV-321, 2006 WL 3253305 (W.D. Mich. Nov. 9, 2006)...................18

*In re Nat. Century Fin. Enters., Inc. Inv. Litig.*,
   No. 2:03-MD-1565, 2009 WL 1473975 (S.D. Ohio May 27, 2009).................15

*N.Y. State Tchrs' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) ...............................................................*passim*

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13,
   2011) ...............................................................................................................5, 6

*Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*,
   Nos. 1:95-CV-141, 1:95-CV-290, 1996 WL 739170 (W.D. Mich.
   Sept. 27, 1996) ...........................................................................................18, 19

*Ross v. Abercrombie & Fitch Co.*,
   257 F.R.D. 435 (S.D. Ohio 2009).....................................................................18

*Salvagne v. Fairfield Ford, Inc.*,
   264 F.R.D. 321 (S.D. Ohio 2009).....................................................................22

*Sheick v. Auto. Component Carrier LLC*,
   No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ................10

*Swigart v. Fifth Third Bank*,
   288 F.R.D. 177 (S.D. Ohio 2012).....................................................................21

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*,
   262 F.3d 559 (6th Cir. 2001) .............................................................................6

*Wilkof v. Caraco Pharm. Labs., Ltd.*,
   280 F.R.D. 332 (E.D. Mich. 2012) .............................................................18, 20

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) ..............................................................................9

**Statutes**

15 U.S.C. § 78u-4(a)(4) ......................................................................................15, 16

15 U.S.C. § 78u-4(a)(7) ...........................................................................................23

iv

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................*passim*

Fed. R. Civ. P. 23(a) ......................................................................................17, 18

Fed. R. Civ. P. 23(a)(1) ..............................................................................................18

Fed. R. Civ. P. 23(a)(2) ..............................................................................................19

Fed. R. Civ. P. 23(a)(3) ..............................................................................................20

Fed. R. Civ. P. 23(a)(4) ..............................................................................................21

Fed. R. Civ. P. 23(b) ..............................................................................................17

Fed. R. Civ. P. 23(b)(3) ......................................................................................17, 22, 23

Fed. R. Civ. P. 23(e) ...........................................................................................1, 5, 17

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................7, 17

Fed. R. Civ. P. 23(e)(2) ...................................................................................*passim*

Fed. R. Civ. P. 23(e)(2)(A) ......................................................................................8

Fed. R. Civ. P. 23(e)(2)(B) ......................................................................................10

Fed. R. Civ. P. 23(e)(2)(C) ......................................................................................11

Fed. R. Civ. P. 23(e)(2)(C)(iii) .................................................................................15

Fed. R. Civ. P. 23(e)(2)(C)(iv) ..................................................................................15

Fed. R. Civ. P. 23(e)(3) ..............................................................................................7

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Should the Court preliminarily approve the proposed Settlement of this securities class action, which involves payment of $12 million in cash and satisfies Rule 23(e) approval factors and Sixth Circuit precedent?

2.      Should the Court certify the proposed Settlement Class for purposes of the Settlement only, appoint Lead Plaintiffs as Class Representatives, and appoint Labaton Sucharow LLP as Class Counsel?

3.      Should the Court approve the form and manner of notice to Settlement Class Members and approve the retention of JND Legal Administration as Claims Administrator?

4.      Should the Court set a hearing date for Lead Plaintiffs' motion for final approval of the Settlement and Lead Counsel's application for an award of attorneys' fees and payment of Litigation Expenses?

Lead Plaintiffs submit that the answers to all of these questions should be in the affirmative.

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 23(a)

Fed. R. Civ. P. 23(b)(3)

Fed. R. Civ. P. 23(e)(2)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008)

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.,* 315 F.R.D. 226 (E.D. Mich. 2016) (J. Parker)

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001)

Lead Plaintiffs Ontario Provincial Council of Carpenters' Pension Trust Fund and Millwright Regional Council of Ontario Pension Trust Fund (collectively, "Lead Plaintiffs"),[1] on behalf of themselves and all other members of the Settlement Class, submit this memorandum of law in support of their unopposed motion for preliminary approval of the proposed Settlement reached in the above-captioned action (the "Action"), pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). The terms of the proposed Settlement are set forth in the Stipulation, which was entered into by all Parties to the Action.

## PRELIMINARY STATEMENT

Pursuant to the Settlement, Defendants have agreed to pay, or cause to be paid, $12,000,000 in cash in exchange for the settlement of all claims asserted in the Action.  Lead Plaintiffs request that the Court preliminarily approve the proposed Settlement.   As explained herein, Lead Plaintiffs respectfully submit that the Settlement represents a favorable recovery for the Settlement Class and satisfies all of the Rule 23(e) approval factors and Sixth Circuit precedent.

---

[1]    All capitalized terms used and not otherwise defined in this memorandum of law have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated as of August 24, 2022 (the "Stipulation"), which is attached as Exhibit 1 to the Declaration of Thomas G. Hoffman, Jr. ("Hoffman Decl."), filed herewith. Defendants are Credit Acceptance Corporation ("Credit Acceptance" or the "Company"), Brett A. Roberts and Kenneth S. Booth (collectively, "Defendants," and together with Lead Plaintiffs, the "Parties").

Upon the Court's preliminary approval of the Settlement, Lead Plaintiffs will provide notice of the Settlement's terms and conditions to potential Settlement Class Members.  Following a final approval hearing (the "Settlement Hearing"), the Court will make a final determination as to whether the Settlement is fair, reasonable, and adequate.  At the Settlement Hearing, the Court will also be asked to approve the proposed Plan of Allocation for distributing Settlement proceeds among eligible Settlement Class Members and to consider Lead Counsel's request for an award of attorneys' fees and Litigation Expenses.

The proposed Preliminary Approval Order ("Preliminary Approval Order") negotiated by the Parties will, among other things: (i) preliminarily approve the Settlement on terms set forth in the Stipulation; (ii) approve the form and content of the Notice, Claim Form, and Summary Notice, attached as Exhibits 1, 2, and 3 to the Preliminary Approval Order; (iii) find that the procedures for disseminating notice constitute the best notice practicable under the circumstances and comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (iv) set a date and time for the Settlement Hearing and a schedule for various Settlement-related events; and (v) approve the retention of JND Legal Administration ("JND" or "Claims Administrator") to administer the Settlement process.

2

## FACTUAL AND PROCEDURAL BACKGROUND

## I.     PROCEDURAL HISTORY

This is a securities class action brought on behalf of all persons and entities that purchased or otherwise acquired Credit Acceptance common stock during the period from May 4, 2018 through August 28, 2020, inclusive, and were damaged thereby.  *See* Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint," ECF No. 31) at ¶ 1.  Credit Acceptance is a Michigan-based, national indirect financing company that accepts assignment of retail installment contracts entered into between used car dealers and consumers for the purchase of vehicles.  Credit Acceptance's financing programs are offered through a nationwide network of automobile dealers who benefit from, among other things, sales of vehicles to consumers who otherwise could not obtain financing.  *Id.* at ¶ 2.  On August 28, 2020, the Attorney General for the State of Massachusetts filed an enforcement action against the Company in Massachusetts Superior Court, alleging that Credit Acceptance engaged in unfair and deceptive trade practices in violation of Massachusetts consumer protection laws.  Lead Plaintiffs contend that this lawsuit revealed alleged practices that rendered misleading certain statements made in Credit Acceptance's public filings and elsewhere.  *Id. at* ¶ 3.  In the two days following the public disclosure of the Massachusetts Attorney General's lawsuit, Credit Acceptance's share price dropped 18%.  *Id.* at ¶ 125.

3

The Complaint asserts claims against the Defendants under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5, and against the Individual Defendants under Section 20(a) of the Exchange Act.  ECF No. 31 at ¶¶ 153-169.  The Complaint alleges that the price of Credit Acceptance common stock was artificially inflated as a result of Defendants' conduct, and declined when the truth was revealed, causing large losses to investors.  *Id.* at ¶¶ 1, 109, 112-113, 114-119, 149, 156, 159, 163.

On September 2, 2021, Defendants moved to dismiss all claims asserted against them in the Complaint pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4 *et seq.* (the "Motion to Dismiss").  ECF No. 35.  On October 14, 2021, Lead Plaintiffs opposed the Motion to Dismiss.  ECF No. 38.  On November 11, 2021, Defendants filed a reply in further support of their Motion to Dismiss.  ECF No. 40.

## II.   NEGOTIATION OF THE SETTLEMENT

In January 2022, Lead Plaintiffs and Defendants engaged Robert A. Meyer, a well-respected and highly experienced mediator, to assist them in exploring a potential negotiated resolution of the Action.  On April 1, 2022, Lead Plaintiffs and Defendants met with Mr. Meyer in an attempt to reach a settlement.  The mediation involved an extended effort to settle the claims and was preceded by the exchange

of mediation submissions and other information.  Lead Plaintiffs and Defendants

reached an agreement in principle to settle the claims against the Defendants on June

14, 2022, subject to the negotiation of the terms of a Stipulation and Agreement of

Settlement and approval by the Court.

The Parties subsequently negotiated the terms of the Stipulation, which sets

forth the final terms and conditions of the Settlement, including, among other things,

a dismissal with prejudice of all claims asserted against all Defendants in the Action,

along with a comprehensive release of any related claims, in return for a cash

payment of $12,000,000 for the benefit of the Settlement Class.

## ARGUMENT

## I.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   Standards Governing Review

Rule 23(e) provides that a class-action settlement must be presented to the

Court for approval, and should be approved if found to be "fair, reasonable, and

adequate." Fed. R. Civ. P. 23(e)(2).  Courts have long recognized a strong policy in

favor of class action settlements. *See Int'l Union, United Auto., Aerospace, & Agric.*

*Implement Workers of Am. v. Gen. Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007)

(in reviewing a settlement, courts should consider "the federal policy favoring

settlement of class actions"); *In re Packaged Ice Antitrust Litig*., No. 08-MDL-

01952, 2011 WL 6209188, at *7 (E.D. Mich. Dec. 13, 2011) (noting that the "Sixth

Circuit and courts in this district have recognized that the law favors the settlement

of class action lawsuits").[2]

The procedure for approval of a proposed class action settlement in the Sixth Circuit involves three steps: "(1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) the members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001). *See also* Fed. R. Civ. P. 23(e)(2). With respect to this first step, "the Settlement Agreement should be preliminarily approved if it "(1) 'does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class or excessive compensation for attorneys,' and (2) appears to fall within the range of possible approval.'" *Dallas v. Alcatel-Lucent USA, Inc*., No. 09-14596, 2013 WL 2197624, at *8 (E.D. Mich. May 20, 2013); *see also Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Ford Motor Co*., Nos. 05-74730, 06-10331, 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006), *aff'd sub nom.*, *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp*., 497 F.3d 615 (6th Cir. 2007).

---

[2]    Internal quotation marks and citations within quotations are omitted throughout unless otherwise specified.

In determining whether notice should be provided to the class, the reviewing court considers whether the court "*will likely be able to*" finally approve the settlement, given the factors enumerated in Rule 23(e)(2).   Fed. R. Civ. P. 23(e)(1)(B) (emphasis added).   Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)   class representatives and counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2).  Rule 23, as amended in December 2018, has not changed the established standard for approving a proposed class settlement, *i.e.*, evaluating

7

whether it is fair, adequate, and reasonable.[3]

## B.   Approval of the Settlement Is Likely Under Rule 23(e)(2)

### 1.   Lead Plaintiffs and Lead Counsel Have Zealously Represented the Settlement Class

In determining whether to approve a class action settlement, courts consider

whether "the class representative and class counsel have adequately represented the

class." Fed. R. Civ. P. 23(e)(2)(A).  Since their initial appointment, Lead Plaintiffs

and Lead Counsel have adequately represented the Settlement Class in both their

vigorous prosecution of the Action and in their negotiation of the Settlement.  Lead

Plaintiffs — sophisticated institutional investors — have been active and informed

participants in the litigation.  Since their initial appointment, Lead Plaintiffs and

Lead Counsel have adequately represented the Settlement Class in both their

vigorous prosecution of the Action and in their negotiation of the Settlement.  Lead

Plaintiffs — sophisticated institutional investors — have been active and informed

participants in the litigation throughout the investigation, drafting of the Complaint,

and opposition to Defendants' motion to dismiss.  Lead Plaintiffs were kept apprised

of the course of settlement discussions and mediation efforts and approved the terms

---

[3]     At final approval, the Court will also consider the factors set forth by the Sixth Circuit, which substantially overlap the Rule 23(e)(2) factors.  The Sixth Circuit factors include consideration of: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 235 (E.D. Mich. 2016) (J. Parker) (citing *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009)).

of the Settlement.   Additionally, Lead Plaintiffs' claims are typical of other Settlement Class Members and, as such, they have an interest in obtaining the largest possible recovery on behalf of the Settlement Class.

Likewise, Lead Counsel, who are experienced in prosecuting complex class actions (*see* Hoffman Decl., Ex. 2), had a clear view of the strengths and risks of the case and were equipped to make an informed decision regarding the reasonableness of a potential settlement.  *See Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.").  Prior to reaching the Settlement, Lead Counsel developed a deep understanding of the facts of this case through an extensive investigation, that included, among other things: (a) interviews with 31 former Credit Acceptance employees and other persons with potentially relevant knowledge (ten of whom were cited in the Complaint as confidential witnesses); and (b) a review of the Company's filings with the U.S. Securities and Exchange Commission ("SEC"), press releases and other publications disseminated by the Company, shareholder communications and conference calls, research reports issued by financial analysts concerning the Company, an enforcement action filed against the Company by the Massachusetts Attorney General, public records produced by the SEC and the Massachusetts Attorney General's Office, and documents produced in response to public record requests.  Additionally, Lead

9

Counsel drafted the comprehensive Complaint and opposed Defendants' motion to dismiss.   In consultation with Lead Plaintiffs' damages expert, Lead Counsel evaluated the potential damages in the case and negotiated with Defendants to secure the $12 million recovery.   Lead Plaintiffs and Lead Counsel "had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement." *Gen. Motors Co.*, 315 F.R.D. at 237.

### 2.   The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

In weighing whether to approve a class action settlement, the Court must consider whether the settlement "was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  "[C]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."  *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *19 (E.D. Mich. Oct. 18, 2010).

Additionally, the settlement negotiations were facilitated by a well-respected and experienced mediator.  *See In re Delphi Corp. Sec.*, *Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (approving settlement negotiated by mediator).  The Parties participated in a full-day mediation before Mr. Meyer on April 1, 2022.  The mediation was preceded by the exchange of detailed submissions addressing liability and damages. During the mediation, Lead Counsel and

Defendants' Counsel zealously negotiated on behalf of their clients' best interests. This factor favors approval of the Settlement.

### 3.    Rule 23(e)(2)(C): The Settlement Provides Significant and Certain Benefits to the Class

The Settlement also satisfies Rule 23(e)(2)(C).  In assessing this factor, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement.  This Settlement provides for a certain near-term recovery of $12 million to be allocated among Settlement Class Members following the deduction of Court-approved fees and expenses.  This is a substantial benefit compared to the risk that a smaller recovery, or no recovery, might be achieved after a trial and appeals.  *See Gen. Motors Co*., 315 F.R.D. at 236 ("As the Settlement provides an immediate, significant, and certain recovery for Class Members, this factor favors the Court's approval of the Settlement.").

While Lead Plaintiffs are confident in their claims, further litigation – including with respect to Defendants' motion to dismiss, class certification, fact and expert discovery, summary judgment, and winning at trial – presents clear risks.  *Id.* ("The issues asserted in this PSLRA class action raise many complex issues").  Here, Lead Plaintiffs faced challenges in proving falsity, scienter and loss causation at the pleading stage.  Defendants have strenuously argued that the alleged misstatements constitute inactionable omissions, statements of puffery, and generic risk warnings, and that Lead Plaintiffs have not pled sufficient facts to demonstrate that any alleged

misstatement was false when made.  Defendants have also argued that Lead Plaintiffs did not allege facts supporting a strong inference that Defendants knowingly misrepresented or omitted material facts, and that Lead Plaintiffs have failed to plead loss causation.

Moreover, even if the Action had progressed beyond the motion to dismiss, Lead Plaintiffs would still have to prove falsity, scienter and loss causation with sufficient evidence, and face additional risks relating to their ability to prove reliance and damages.  Defendants would be able to strongly argue that the declines in Credit Acceptance's stock price were not caused by the truth concerning Defendants' alleged false statements being revealed.  Had any of these arguments been accepted in whole or in part, that could have eliminated or, at a minimum, drastically limited potential recovery for Lead Plaintiffs and the Settlement Class.  Lead Plaintiffs also faced the substantial burdens of a class certification motion, summary judgment motions, trial and likely appeals—a process which could extend for years and might lead to a smaller recovery, or no recovery at all.

In contrast, the Settlement avoids the potential impact of each of these challenges and risks, and achieves a fair and certain result.  Indeed, the Settlement represents a meaningful portion of the Settlement Class's reasonably recoverable damages, as estimated under potential scenarios analyzed by financial economists retained by Lead Plaintiffs.  If the Settlement Class's claims survived the motion to

dismiss, class certification, and summary judgment completely intact, and liability and damages were found 100% supported at trial, then aggregate damages were estimated at approximately $370 million.  However, this outcome was far from likely or the most reasonable damages outcome to assess given, *inter alia*, the strength of Defendants' arguments with respect to the first alleged corrective disclosure that was issued on January 30, 2020.  Assuming that the first alleged corrective disclosure was dismissed, estimated aggregate damages would be approximately $260 million. Under this scenario, the Settlement represents approximately 4.6% of estimated damages.  This percentage is in line with other court-approved securities settlements. *See, e.g.*, *Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09–cv–00419–MMD–WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering 3.5% of maximum damages and noting the amount is within the median recovery in securities class actions settled in the last few years).[4]

In addition to the substantial risks and uncertainty inherent in continued litigation, further litigation of the Action would also be expensive and time consuming for both sides.  The fact that the Settlement eliminates this delay and expense, along with the risks discussed above, strongly favors preliminary approval.

---

[4]    The $12 million Settlement also exceeds the $8.3 million median recovery in securities class actions in 2021. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2021 Review and Analysis*, at 1 (Cornerstone Research 2022).  *See* Hoffman Decl., Ex. 3.

### 4.     The Effective Process for Distributing Relief

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator. The Claims Administrator will employ a well-tested protocol for processing claims in a securities class action. A potential Settlement Class Member will submit a claim, either by mail or online. Based on the Claimant's trade information, the Claims Administrator will determine each Claimant's eligibility to participate in the Settlement by calculating each Claimant's "Recognized Claim" under the Court-approved Plan of Allocation. *See* Stipulation at ¶21. Lead Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility in their Claims and will be given the chance to contest the rejection of their claims. *Id*. at ¶27(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court. *Id*.

### (a)     The Settlement Does Not Excessively Compensate Lead Counsel

The reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files its motion for attorneys' fees and expenses. The Settlement does not contemplate a specific award. Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be separately compensated by Defendants. As set forth in the Notice, Lead Counsel will seek fees in an amount not to exceed 30% of the Settlement Fund, an amount well-within

14

percentages that courts in the Sixth Circuit have approved in class actions with comparable recoveries. *See, e.g.*, *In re Nat. Century Fin. Enterprises, Inc. Inv. Litig.*, No. 2:03-MD-1565, 2009 WL 1473975, at *5 (S.D. Ohio May 27, 2009) (granting plaintiff's motion for an award of attorneys' fees equal to 30% of the settlement fund); *In re F&M Distribs., Inc. Sec. Litig.*, No. 95-CV-71778-DT, 1999 U.S. Dist. LEXIS 11090, at *21 (E.D. Mich. June 29, 1999) (same).  Counsel will also seek payment of Litigation Expenses incurred during the litigation, which may include awards to Lead Plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(4) of the Private Securities Litigation Reform Act of 1995, in an amount not to exceed $125,000.[5] Further, Settlement Class Members will have an opportunity to weigh-in on Lead Counsel's fee and expense request before the Settlement Hearing.  Accordingly, the Settlement satisfies Rule 23(e)(2)(C)(iii).

### (b)   The Relief Provided Is Adequate Taking Into Account All Agreements Related to the Settlement

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the Parties in connection with the Settlement.  In addition to the Stipulation, the Parties have also entered into a confidential agreement regarding requests for exclusion dated August 24, 2022 ("Supplemental Agreement").  *See* Stipulation at ¶38.  The Supplemental Agreement sets forth the conditions under which Defendants have the

---

[5]   Pursuant to the Stipulation, Court-awarded attorneys' fees and expenses will be paid upon issuance of such an award.  *See* Stipulation at ¶12.

option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain threshold.   As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Settlement Class.   Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.   The Supplemental Agreement and the Stipulation are the only agreements concerning the Settlement entered into by the Parties.

### 5.   Settlement Class Members Are Treated Equitably

The Settlement does not improperly grant preferential treatment to Lead Plaintiffs or any segment of the Settlement Class.   Rather, all members of the Settlement Class, including Lead Plaintiffs, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[6]   Lead Counsel developed the proposed Plan of Allocation with the assistance of Lead Plaintiffs' damages expert and it is consistent with the Settlement Class's theories of damages under the Exchange Act.   All Settlement Class Members that were allegedly harmed as a result of the alleged wrongdoing, and that have an eligible

---

[6]     Lead Plaintiffs may seek reimbursement of their "reasonable costs and expenses (including lost wages) directly relat[ed]" to their participation in the Action, pursuant to the PSLRA.   This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net

Settlement Fund based on their "Recognized Claim" under the plan.  Notice at ¶50.

## II.   PRELIMINARY CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE

Lead Plaintiffs respectfully request that the Court certify – for settlement

purposes only – the proposed Settlement Class pursuant to Rules 23(a) and (b)(3) of

the Federal Rules of Civil Procedure.  The proposed Settlement Class is defined in

the Stipulation.  *See* Stipulation at ¶1(ll).  Rule 23(e) requires that Lead Plaintiffs

demonstrate that the Court "will likely be able to [] certify the class for purposes of

judgment on the proposal."   Fed. R. Civ. P. 23(e)(1)(B).   Courts have long

acknowledged the propriety of settlement classes.  *See, e.g.*, *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591 (1997); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508,

517 (E.D. Mich. 2003).

Rule 23(a) establishes four prerequisites to class certification: (i)

"numerosity," (ii) "commonality," (iii) "typicality," and (iv) "adequacy of

representation." *Amchem*, 521 U.S. 591 at 613.  In addition, a class must meet one

of the three requirements of Rule 23(b), namely here, that "questions of law or fact

common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The proposed

Settlement Class meets all requirements of Rules 23(a) and 23(b)(3).

**A.    The Settlement Class Meets the Requirements of Rule 23(a)**

**1.    Rule 23(a)(1) – Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "There is no bright line numerical test by which the district court can determine when the numerosity requirement is satisfied."  *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009).  And, "[c]ourts have generally held that numerosity is presumed for a class with more than forty members."  *Jenkins v. Macatawa Bank Corp.*, No. 1:03-CV-321, 2006 WL  3253305, at *3 (W.D. Mich. Nov. 9, 2006).  Numerosity is, therefore, "generally assumed to have been met in class action suits involving nationally traded securities."  *Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332, 338 (E.D. Mich. 2012).

Here, throughout the Class Period, Credit Acceptance's common stock was actively traded on the NASDAQ (an open and efficient market) under the symbol "CACC."  *See* Complaint at ¶ 106.  Millions of Credit Acceptance shares were traded publicly during the Class Period on the NASDAQ.  *Id*.  As of September 30, 2020, Credit Acceptance had over 17 million shares of common stock outstanding.  *Id*. There are likely hundreds, if not thousands, of Settlement Class Members geographically dispersed throughout the United States, making joinder of all class members impracticable.  *See Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*,

18

Nos. 1:95-CV-141, 1:95-CV-290, 1996 WL 739170, at *3 (W.D. Mich. Sept. 27, 1996) (finding numerosity where company had over 75 million shares of stock outstanding during the class period and was actively traded on the NASDAQ).  The numerosity requirement is therefore met.

### 2.    Rule 23(a)(2) – Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A finding of commonality does not "require[] that all questions of law and fact be common."  *See Cardizem CD*, 218 F.R.D. at 518.  "Instead, the requirement is only that there be at least one common question of law or fact."  *In re Delphi Corp.*, 248 F.R.D. at 493-94.  Furthermore, "[f]ederal securities cases easily satisfy the commonality requirement of Rule 23(a)(2)."  *Id.* at 494.

As alleged in the Complaint, the common questions of law and fact include, among others: (1) whether the federal securities laws were violated by Defendants' acts and omissions; (2) whether press releases and other statements disseminated to the investing public during the Class Period misrepresented material facts about the business, finances, and prospects of Credit Acceptance; (3) whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of Credit Acceptance; (4) whether the market price of Credit

Acceptance common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations; and (5) the extent to which the members of the class have sustained damages and the proper measure of damages. *See* Complaint at ¶ 109. The commonality requirement is met.

### 3.    Rule 23(a)(3) – Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 561 (6th Cir. 2007).

Here, Lead Plaintiffs' claims and the claims of Settlement Class Members arise from the same alleged conduct by Defendants.  Lead Plaintiffs, like all other members of the Settlement Class, purchased Credit Acceptance common stock during the Class Period at allegedly inflated prices and suffered damages when the alleged fraud was revealed through the alleged corrective disclosures. *See Wilkof*, 280 F.R.D. at 339 (finding typicality where "[a]ll class members will have the same central argument:  That they relied on the false representation of Defendant to their detriment").  Lead Plaintiffs' claims are typical of the claims of the Settlement Class and typicality is satisfied. *See Delphi*, 248 F.R.D. at 494.

### 4.     Rule 23(a)(4) – Adequacy of Representation

Lead Plaintiffs also meet the "adequacy" requirement of Rule 23(a)(4) because they have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The test for adequacy requirement is two-pronged: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).  This calls for an examination of "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 185-86 (S.D. Ohio 2012).

Both prongs of the "adequacy" test are met here.  Based upon their purchases of Credit Acceptance common stock during the Class Period, Lead Plaintiffs' interests are directly aligned with those of Settlement Class Members who were injured by the same allegedly materially untrue statements and omissions. Additionally, as set forth above, Lead Plaintiffs have demonstrated their commitment to vigorously prosecuting this case to achieve the best possible recovery on behalf of the Settlement Class.   Lead Plaintiffs have retained experienced counsel, received regular status updates, reviewed court submissions, and participated in strategic decisions, including the decision to resolve the Action.

Finally, Lead Plaintiffs' chosen counsel, Labaton Sucharow LLP, is highly qualified and fully capable of prosecuting the Action.  Adequacy is satisfied.

### 5.    Rule 23(b)(3) – Predominance and Superiority

The Settlement Class satisfies Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  As the Supreme Court recognized in *Amchem*, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud."  521 U.S. at 625.  Here, the predominance test is satisfied because Lead Plaintiffs alleged a "common course of conduct" of misrepresentations and omissions that affect all members of the Settlement Class in the same manner.  *See Salvagne v. Fairfield Ford, Inc.*, 264 F.R.D. 321, 329 (S.D. Ohio 2009) ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification.").

Further, resolution of this case through a class action is far superior to litigating thousands of individual claims where the expense for a single investor could exceed the individual's loss.  There is no evidence that putative class members have any interest in bringing separate individual actions, and the Parties are not aware of any other litigation involving the same issues.  Additionally, since this is a request for class certification only for purposes of settlement, the Court need not

inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 593.

Lead Plaintiffs believe that the Settlement Class meets all of the requirements of Rule 23(a) and (b)(3) and should be certified for settlement purposes.

## III.   NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

The threshold requirement for approval of class notice is whether the proposed notice program is reasonably calculated to apprise the class of the pendency of the action, the proposed settlement, and the class members' rights to opt out of the class or object. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Notice must also satisfy the requirements set forth in the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(7).

The Notice to be mailed to potential Settlement Class Members is written in simple language and advises Members of the Settlement Class of: (i) the essential terms of the Settlement; (ii) the proposed Plan of Allocation; and (iii) information regarding Lead Counsel's application for an award of attorneys' fees and expenses. The Notice also provides specifics on the date, time, and place of the Settlement Hearing; and the procedures for submitting Claim Forms, exclusion requests and objections.

As outlined in the Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exs. 1 and 2 to the Preliminary Approval Order) to all Settlement Class Members identified

with reasonable effort, including through the use of Credit Acceptance's shareholder lists.[7]   The Claims Administrator will also utilize a proprietary list of banks, brokerage firms, and nominees.  The mailed Notice will be supplemented with the publication of the Summary Notice in *The Wall Street Journal* and over *PR Newswire*.  This combination of individual first-class mailed notice to all reasonably identifiable potential Settlement Class Members and publication of summary notice satisfies Rule 23 and due process.  *See, e.g., Gen. Motors Co*., 315 F.R.D. at 242 (dissemination of notice by first-class mail to all class members who could be identified by reasonable effort along with publication of summary notice in national newspapers and transmission over the PR Newswire, satisfied Rule 23's notice requirement.).   Accordingly, the proposed method of providing notice here is appropriate and should be approved.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

The Parties respectfully propose the schedule of settlement-related events set forth in Appendix A hereto, which are based on the date the Preliminary Approval Order is entered by the Court and the date the Settlement Hearing is held.

---

[7]    Lead Plaintiffs request that the Court approve retention of JND as the Claims Administrator for the Settlement.  JND was selected after a competitive bidding process.  JND is a nationally recognized notice and claims administration firm and has extensive relevant experience. *See* Hoffman Decl., Ex. 4.

## **CONCLUSION**

For the forgoing reasons, Lead Plaintiffs respectfully request that the Court grant the requested relief.  The Parties' agreed-upon proposed Preliminary Approval Order, with exhibits, is attached to the accompanying Motion.

Dated:  August 24, 2022

Respectfully Submitted,

*/s/ Thomas G. Hoffman, Jr.*
**LABATON SUCHAROW LLP**
Michael P. Canty
Thomas G. Hoffman, Jr.
Charles J. Stiene
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
mcanty@labaton.com
thoffman@labaton.com
cstiene@labaton.com

*Lead Counsel for Lead Plaintiffs and the Proposed Class*

Kelly E. Kane (P81912)
**CLARK HILL PLC**
Woodward Ave
Suite 3500
Detroit, Michigan 48226
Tel.: (313) 309-9495
Fax: (313) 309-6875
Email: kkane@clarkhill.com

**CLARK HILL PLC**
Ronald A. King (P45088)
212 E. Cesar Chavez Ave
Lansing, Michigan 48906
Tel.: (517) 318-3015
Fax: (517) 318-3068
rking@clarkhill.com

*Liaison Counsel for Lead Plaintiffs*

# APPENDIX A

| Event | Proposed Timing |
|---|---|
| Deadline for commencing the mailing of the Notice and Claim Form to Settlement Class Members ("Notice Date") | Not later than 10 business days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice | Not later than 14 calendar days after the Notice Date |
| Deadline for filing papers in support of final approval of the Settlement, the Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | Approximately 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms | 5 calendar days before the Settlement Hearing |

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2022, I caused a copy of the foregoing document to be filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all registered users.

<u>/s/Thomas G. Hoffman, Jr.</u><br>
THOMAS G. HOFFMAN, JR.