# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| PALM TRAN, INC. AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  v.<br><br>CREDIT ACCEPTANCE CORPORATION, BRETT A. ROBERTS, and KENNETH S. BOOTH,<br><br>        Defendants. | Case No. 20-cv-12698<br>Honorable Linda V. Parker |

# LEAD PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

Lead Plaintiffs Ontario Provincial Council of Carpenters' Pension Trust Fund and Millwright Regional Council of Ontario Pension Trust Fund (collectively, "Lead Plaintiffs"), on behalf of themselves and all other members of the proposed Settlement Class, through Court-appointed Lead Counsel Labaton Sucharow LLP, will hereby move this Court on December 7, 2022 at 1:00 p.m., before the Honorable Linda V. Parker, remotely via Zoom video conference from Courtroom 206 of the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, MI 48226, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of a Final Order and Judgment approving the proposed Settlement as fair, reasonable, and adequate and for entry of an Order approving the proposed Plan of Allocation for the proceeds of the Settlement as fair, reasonable, and adequate.

The Parties have conferred and Defendants will not oppose the relief requested by this motion.

In support of this motion, Lead Plaintiffs submit and are filing herewith: (i) Lead Plaintiffs' Memorandum of Law in Support of their Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (ii) the Declaration of Michael P. Canty in Support of (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Lead Counsel's

Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses, dated November 2, 2022, with annexed exhibits.

Proposed Orders will be submitted with the reply submission on or before November 30, 2022, after the deadline for objecting has passed.

Dated: November 2, 2022

Respectfully Submitted,

*/s/ Michael P. Canty*
**LABATON SUCHAROW LLP**
Michael P. Canty
Thomas G. Hoffman, Jr.
Charles J. Stiene
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
mcanty@labaton.com
thoffman@labaton.com
cstiene@labaton.com

*Lead Counsel for Lead Plaintiffs and the Proposed Class*

Kelly E. Kane (P81912)
**CLARK HILL PLC**
Woodward Ave
Suite 3500
Detroit, Michigan 48226
Tel.: (313) 309-9495
Fax: (313) 309-6875
Email: kkane@clarkhill.com

**CLARK HILL PLC**
Ronald A. King (P45088)
212 E. Cesar Chavez Ave
Lansing, Michigan 48906
Tel.: (517) 318-3015
Fax: (517) 318-3068
rking@clarkhill.com

*Liaison Counsel for Lead Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 2, 2022, I caused a copy of the foregoing document to be filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all registered users.

_/s/   Michael P. Canty_

MICHAEL P. CANTY

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PALM TRAN, INC. AMALGAMATED
TRANSIT UNION LOCAL 1577 PENSION
PLAN, Individually and On Behalf of All
Others Similarly Situated,

        Plaintiff,

    v.

CREDIT ACCEPTANCE CORPORATION,
BRETT A. ROBERTS, and KENNETH S.
BOOTH,

        Defendants.

Case No. 20-cv-12698
Honorable Linda V. Parker

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF ISSUES PRESENTED ................................................vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ vii

PRELIMINARY STATEMENT ................................................................1

ARGUMENT .........................................................................................3

I.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
       ADEQUATE, AND WARRANTS FINAL APPROVAL ...............................3

       A.  The Law Favors and Encourages Settlement of Class Actions ...............4

       B.  The Standards for Final Approval...............................................4

       C.  Lead Plaintiffs and Lead Counsel Have Adequately Represented
           the Settlement Class ...............................................................6

       D.  The Settlement Was Reached After Robust Arm's-Length
           Negotiations with No Risk of Fraud or Collusion ...................................8

       E.  The Relief Provided by the Settlement Is Adequate................................9

           1.  The Settlement Amount Is Fair and Adequate .................................10

           2.  The Complexity, Expense, and Likely Duration of the
               Litigation Support Approval of the Settlement ................................13

               (a)  Risks with Respect to Defendants' Motion to Dismiss ...........13

               (b)  Risks with Respect to Proving Liability ....................................14

               (c)  Risks with Respect to Loss Causation and Damages ..............16

       F.  The Effective Process for Distributing Relief to the Class ....................19

       G.  The Requested Attorneys' Fees and Expenses Are Reasonable.............21

       H.  The Relief Provided in the Settlement Is Adequate Taking Into
           Account All Agreements Related to the Settlement ................................21

I.    Application of the Remaining 6th Circuit Factors ...................................22

    1.   Lead Plaintiffs Have Thoroughly Investigated the Claims .............22

    2.   The Reaction of the Settlement Class to Date ..................................23

    3.   The Public Interest Warrants Approval of the Settlement ...............24

II.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ...............24

CONCLUSION .......................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ...........................................................................19

*Arledge v. Domino's Pizza, Inc.*,
    No. 16-cv-386, 2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) ........................8, 9

*In re Cardizem C.D. Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ..............................................................13, 24

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) .............................................................*passim*

*Ebbert v. Nassau Cnty.*,
    No. 05-5445, 2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011) .......................18, 19

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) .............................................................................5

*Griffin v. Flagstar Bancorp, Inc.*,
    No. 10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)............4, 9, 23

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game
Tech., Inc.*, No. 3:09–cv–00419, 2012 WL 5199742 (D. Nev. Oct.
    19, 2012) ............................................................................................................12

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of
Am. v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ....................................................................4, 6, 10

*In re KBC Asset Mgmt. N.V.*,
    572 F. App'x. 356 (6th Cir. 2014)............................................................17, 18

*Loc. 295/Loc. 851 IBT Emp. Grp. Pension Trust & Welfare Fund v.
Fifth Third Bancorp*,
    731 F. Supp. 2d 689 (S.D. Ohio 2010) ..............................................................15

*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp. 2d 766 (N.D. Ohio 2010) .............................................................24

*In re Nationwide Fin. Servs. Litig.*,
   No. 08-CV-00249, 2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) .........9, 18, 23

*N.Y. State Tchrs.' Ret. Sys Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) *aff'd sub nom. Marro v. New
   York State Tchrs. Ret Sys*. No. 16-1821, 2017 WL 6398014 (6th
   Cir. Nov. 27, 2017) ...........................................................................6, 12, 23, 24

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13,
   2011) ......................................................................................................4, 24, 25

*In re Polyurethane Foam Antitrust Litig.*,
   168 F. Supp. 3d 985 (N.D. Ohio 2016) .............................................................10

*Schuler v. Meds. Co.*,
   No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016) ...............12

*Sheick v. Auto. Component Carrier LLC*,
   No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ..................8

*In re Telectronics Pacing Sys. Inc. Accufix Atrial "J" Leads Prods.
   Liab. Litig.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) .............................................................13

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05-cv-01695, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .........................7

*In re: Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*,
   No. 1:08-WP-65000, 2016 WL 5338012 (N.D. Ohio Sept. 23,
   2016) .................................................................................................................10

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) ..............................................................................7

**Docketed Cases**

*In re Extreme Networks, Inc. Sec. Litig.*,
   No. 5:15-cv-04883-BLF (N.D. Cal. Jul. 22, 2019) ...........................................12

**Rules**

Fed. R. Civ. P. 23(a)............................................................................20

Fed. R. Civ. P. 23(c)(1)(C) ...............................................................18

Fed. R. Civ. P. 23(e)........................................................................4, 6

Fed. R. Civ. P. 23(e)(2)(A) .................................................................6

Fed. R. Civ. P. 23(e)(2)(B) .................................................................8

Fed. R. Civ. P. 23(e)(2)(C) ....................................................9, 19, 20

Fed. R. Civ. P. 23(e)(2)(C)(iv)..........................................................21

Fed. R. Civ. P. 23(e)(3).......................................................................5

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Should the Court finally approve the proposed Settlement of this securities class action, which involves payment of $12 million in cash and satisfies Rule 23(e) approval factors and Sixth Circuit precedent?

2. Should the Court finally certify the proposed Settlement Class for purposes of the Settlement only, appoint Lead Plaintiffs as Class Representatives, and appoint Labaton Sucharow LLP as Class Counsel?

3. Should the Court approve the proposed Plan of Allocation for distribution of the proceeds of the Settlement?

   Lead Plaintiffs submit that the answers to each of these questions should be in the affirmative.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Fed. R. Civ. P. 23(e)(2)

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008)

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007)

*N.Y. State Tchrs. Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226 (E.D. Mich. 2016) *aff'd sub nom. Marro v. N.Y. State Tchrs. Ret Sys*. No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017)

Lead Plaintiffs Ontario Provincial Council of Carpenters' Pension Trust Fund and Millwright Regional Council of Ontario Pension Trust Fund ("Lead Plaintiffs"),[1] on behalf of themselves and all other members of the Settlement Class, respectfully submit this memorandum of law in support of their motion for: (i) final approval of the Settlement of the above-captioned action (the "Action"); (ii) approval of the Plan of Allocation for distribution of the Net Settlement Fund; and (iii) final certification of the Settlement Class.

## PRELIMINARY STATEMENT

As set forth in the Stipulation, Lead Plaintiffs have agreed to settle all claims asserted, or that could have been asserted, against Defendants in the Action and related claims, in exchange for $12,000,000 (the "Settlement Amount"), for the

---

[1] All capitalized terms used and not defined herein have the meanings given them in the Stipulation and Agreement of Settlement, dated August 24, 2022 (the "Stipulation"), previously filed with the Court. ECF No. 42-2.

Citations to "¶" in this memorandum refer to paragraphs of the Declaration of Michael P. Canty in Support of (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses (the "Canty Declaration" or "Canty Decl."), filed herewith, unless otherwise noted. The Canty Declaration is an integral part of this motion and the Court is respectfully referred to it for a description of: the history of the Action; the nature of the claims; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation, among other things.  All exhibits are annexed to the Canty Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___."  The first numerical reference is to the designation of the entire exhibit attached to the Canty Declaration and the second reference is

benefit of the Settlement Class.

As described below and in the accompanying Canty Declaration, the decision to settle was well-informed by almost two years of litigation that involved, among other things: (i) a comprehensive investigation that included interviews with 31 former Credit Acceptance employees and other persons (ten of whom were cited in the Complaint as confidential witnesses); (ii) a review of the Company's filings with the U.S. Securities and Exchange Commission ("SEC"), press releases and other publications disseminated by the Company, shareholder communications and conference calls, research reports issued by financial analysts concerning the Company, and an enforcement action filed against the Company by the Massachusetts Attorney General; (iii) the review of public records produced to Lead Counsel by the SEC and the Massachusetts Attorney General's Office, and other documents produced in response to public record requests; (iv) the filing of a comprehensive complaint drafted to survive the strictures of the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (v) opposing Defendants' motion to dismiss the Complaint, which was pending at the time the Settlement was reached; (vi) consulting with economic experts; and (vii) engaging in a robust arm's-length mediation process overseen by a well-respected and highly experienced mediator.

---

to the exhibit designation within the exhibit itself.

Lead Counsel, which has extensive experience in securities class actions, believes that the Settlement represents a favorable resolution of this complex litigation in light of the risks of continued litigation, particularly the risk that the Court may grant Defendants' pending motion to dismiss, the challenges inherent in certifying a contested class, the risks of failing to survive Defendants' likely summary judgment motions focused on falsity, scienter, and loss causation, and the risks of a lesser (or no) recovery after a trial and the inevitable appeals of even a favorable verdict, as discussed below. Lead Plaintiffs, sophisticated institutional investors that were actively involved throughout the litigation, diligently represented the class and have approved the Settlement. *See* Declaration of Tom Cardinal on Behalf of Ontario Provincial Council of Carpenters' Pension Trust Fund, Ex. 1, and the Declaration of Mark Beardsworth on Behalf of Millwright Regional Council of Ontario Pension Trust Fund, Ex. 2.   Accordingly, Lead Plaintiffs respectfully request that the Court approve the Settlement.

In addition, the Plan of Allocation for the proceeds of the Settlement, which was developed by Lead Counsel with the assistance of Lead Plaintiffs' consulting damages expert, is a fair and reasonable method for distributing the Net Settlement Fund and should also be approved by the Court.

## **ARGUMENT**

**I.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL**

## A.     The Law Favors and Encourages Settlement of Class Actions

Courts have long recognized a strong policy in favor of class action settlements. *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (in reviewing a settlement, courts should consider "the federal policy favoring settlement of class actions"); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *7 (E.D. Mich. Dec. 13, 2011) (noting that the "Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits"); *Griffin v. Flagstar Bancorp, Inc.*, No. 10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) (same).[2]  This policy would be well-served by approval of the Settlement of this Action.

## B.     The Standards for Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval.  The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In this regard, the Court's task "is not to decide whether one side is right or even whether one side has the better of [the] arguments. . . .  The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Gen. Motors Corp.*, 497 F.3d at 632; *cf. Granada*

4

*Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) ("Settlements are welcome in cases such as this . . . .  Absent evidence of fraud or collusion, such settlements are not to be trifled with.").

Pursuant to the amendments to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering the following:

(A)    whether the class representatives and class counsel have adequately represented the class;

(B)    whether the proposal was negotiated at arm's length;

(C)    whether the relief provided for the class is adequate, taking into account:

    i.    the costs, risks, and delay of trial and appeal;

    ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.    the terms of any proposed award of attorneys' fees, including timing of payment; and

    iv.    any agreement required to be identified under Rule 23(e)(3); and

(D)    whether the proposal treats class members equitably relative to each other.

The Court may also consider the factors set forth by the Sixth Circuit, which substantially overlap the Rule 23(e)(2) factors:

(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged

---

[2] All internal quotations and citations are omitted unless otherwise stated.

in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 235 (E.D. Mich. 2016) *aff'd sub nom. Marro v. N.Y. State Tchrs. Ret Sys*. No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) (citing *Moulton v. U.S. Steel Corp*., 581 F.3d 344, 349 (6th Cir. 2009)); *see also Gen. Motors Corp*., 497 F.3d at 631.

The Advisory Committee Notes to the 2018 amendments to Rule 23(e) indicate that the Rule 23(e) factors are not intended to "displace" any factor previously adopted by a Court of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendments.

Accordingly, Lead Plaintiffs will discuss approval of the Settlement principally in relation to the Rule 23(e)(2) factors and will also discuss the application of non-duplicative factors traditionally considered by the Sixth Circuit.

## C.  Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

In determining whether to approve a class action settlement, the Court should consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). There can be little doubt that Lead Plaintiffs and Lead Counsel have done so. Lead Plaintiffs, like all

other members of the Settlement Class, were allegedly defrauded when purchasing Credit Acceptance common stock during the Class Period. Thus, the claims of the Settlement Class and Lead Plaintiffs would prevail or fail in unison, and the common objective of maximizing recovery from Defendants aligns the interests of Lead Plaintiffs and all members of the Settlement Class.

Lead Plaintiffs, sophisticated pension funds, were informed participants and, among other things: (i) regularly communicated with Lead Counsel regarding the posture and progress of the Action; (ii) reviewed pleadings and motions filed in the Action; and (iii) participated in settlement discussions and evaluated and approved the proposed Settlement. *See* Exs. 1 ¶3, 2 ¶3. A settlement reached "with the endorsement of a sophisticated institutional investor…is entitled to an even greater presumption of reasonableness." *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-cv-01695, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007).

Additionally, throughout the Action, Lead Plaintiffs had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). During the course of the litigation, Lead Counsel developed a full understanding of the facts of the case and the merits of the claims. *See generally* Canty Declaration. Moreover, Labaton

Sucharow is highly qualified and experienced in securities litigation, as set forth in its firm resume (*see* Ex. 6-C) and was able to successfully conduct the litigation against skilled opposing counsel.[3]   Accordingly, the Settlement Class has been, and remains, well represented.

### D.      The Settlement Was Reached After Robust Arm's-Length Negotiations with No Risk of Fraud or Collusion

In weighing approval of a class-action settlement, the Court must consider whether the settlement "was negotiated at arm's length."   Fed. R. Civ. P. 23(e)(2)(B).   This assessment overlaps with the Sixth Circuit factor of whether there is a risk of fraud or collusion underlying the settlement.   Indeed, "courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."   *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *19 (E.D. Mich. Oct. 18, 2010).

The Settlement here merits a presumption of fairness because it was achieved after thorough arm's-length negotiations between well-informed and experienced counsel, under the supervision of an experienced mediator.   Canty Decl. ¶¶36-40; *see In re Delphi Corp. Sec.*, *Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (approving settlement negotiated by mediator); *Arledge v. Domino's Pizza, Inc.*, No. 16-cv-386, 2018 WL 5023950, at *2 (S.D.

---

[3] Defendants were represented by two well-regarded firms, Skadden, Arps,

Ohio Oct. 17, 2018) ("[P]articipation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion . . . ."). The Parties participated in a full-day mediation before Mr. Meyer on April 1, 2022. The mediation was preceded by the exchange of detailed submissions. During the mediation, and thereafter, Lead Counsel and Defendants' Counsel zealously negotiated on behalf of their clients' best interests.

As discussed in the Canty Declaration, the Parties and their counsel had a well-honed understanding of the strengths and weaknesses of the case before agreeing to settle.  The judgment of Lead Counsel—a law firm that is highly experienced in securities litigation—that the Settlement is in the best interests of the Settlement Class—is also entitled to "great weight."  *Griffin* 2013 WL 6511860, at *5; *In re Nationwide Fin*. *Servs*. *Litig*., No. 08-CV-00249, 2009 WL 8747486, at *5 (S.D. Ohio Aug. 19, 2009) ("The view of experienced counsel favoring the settlement is entitled to great weight.").

### E.   The Relief Provided by the Settlement Is Adequate

The Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other factors discussed below. Fed. R. Civ. P. 23(e)(2)(C). This assessment overlaps with the Sixth Circuit factors of: (i) the complexity, expense, and likely

---

Slate, Meagher & Flom LLP and Dickinson Wright PLLC.

duration of the litigation; and (ii) the likelihood of success on the merits.

### 1.   The Settlement Amount Is Fair and Adequate

In evaluating the fairness of a settlement, the fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay and expense. *Gen. Motors Corp.*, 497 F.3d at 631. "The propriety of a settlement must be assessed as a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery)." *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016).  Moreover, "[i]t is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair. Indeed, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *In re: Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *17 (N.D. Ohio Sept. 23, 2016).

The proposed Settlement provides for a certain near-term recovery of $12 million to be allocated among Settlement Class Members following the deduction of Court-approved fees and expenses.  The Settlement is greater than the median value of securities class action settlements in federal actions asserting claims under Section 10(b) of the Exchange Act.  For the ten years from 2012 through 2021, the

median settlement amount in Section 10(b) cases was $7.9 million and $8.3 million in 2021. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements –2021 Review and Analysis*, at 1 & 7 (Cornerstone Research 2022) ("Cornerstone Report"), Ex. 3.

As detailed in the Canty Declaration, the Settlement here also represents a meaningful portion of the Settlement Class's reasonably recoverable damages, as estimated under potential scenarios analyzed by Lead Plaintiffs' consulting damages expert. ¶¶32-34. If the Settlement Class's claims survived the motion to dismiss, class certification, and summary judgment completely intact, and liability and damages were proven at trial, then aggregate damages were estimated to be approximately $370 million, after the removal of Class Period gains, and the Settlement represents a 3.2% recovery of these estimated damages. *Id*. However, this outcome was far from likely or the most reasonable damages outcome to assess given, *inter alia*, the strength of Defendants' arguments with respect to the first alleged corrective disclosure on January 30, 2020, discussed further below. Assuming that the first alleged corrective disclosure was dismissed, estimated aggregate damages would decrease to approximately $260 million. *Id*. Under this scenario, the Settlement represents approximately 4.6% of estimated damages.

These percentages of recovery are in line with other court-approved securities settlements. *See, e.g.*, *In re Delphi Corp. Sec., Derivative & "ERISA"*

*Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) (observing that the average securities class action settles for between 3% and 15% of estimated damages); Cornerstone Report, Ex. 3 (the median recovery in Section 10(b) cases from 2012 through 2021 as a percentage of simplified statutory damages was 4.8%); *see also Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09–cv–00419, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering 3.5% of damages and noting amount is within the median recovery in securities class actions settled); *Schuler v. Meds. Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (approving settlement representing approximately 4% of estimated damages, noting that the recovery "fell squarely within the range of previous settlement approvals"); and *In re Extreme Networks, Inc. Sec. Litig.*, No. 5:15-cv-04883-BLF (N.D. Cal. Jul. 22, 2019) – ECF Nos. 155 & 182 (approving settlement representing recovery between approximately 3% and 7% of estimated damages) (Ex. 10)[4].

Accordingly, the Settlement provides a substantial benefit compared to the risk that a smaller recovery, or no recovery, might be achieved after a trial and appeals. *See N.Y. State Tchrs. Ret. Sys.*, 315 F.R.D. at 236 ("As the Settlement provides an immediate, significant, and certain recovery for Class Members, this

---

[4] Unreported slip opinions are submitted herewith in a compendium annexed as Exhibit 10 to the Canty Declaration.

factor favors the Court's approval of the Settlement.").

### 2. The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem C.D. Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). Without a settlement, the anticipated complexity, cost and duration of continued litigation here would be considerable. These are "major factors" to be considered in assessing approval, *Delphi*, 248 F.R.D. at 497, and, indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys. Inc. Accufix Atrial "J" Leads Prods. Liab. Litig.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). This case was no exception.

### (a) Risks with Respect to Defendants' Motion to Dismiss

As discussed in the Canty Declaration, Lead Plaintiffs faced significant challenges with respect to pleading falsity, scienter and loss causation and overcoming Defendants' motion to dismiss. ¶¶25-35. Defendants have strenuously argued that the alleged misstatements are inactionable statements of opinion, puffery or generic risk warnings, and that Lead Plaintiffs have not even pled sufficient facts to demonstrate that any alleged misstatement was false when made.

¶26.   Defendants have also argued that Lead Plaintiffs did not allege facts supporting a strong inference that Defendants knowingly misrepresented or omitted material facts, and that Lead Plaintiffs have failed to plead loss causation. *Id*. Such risks were not academic. According to analyses of federal securities class actions conducted by NERA Consulting, in 2020, 77% of filed cases were dismissed, and in 2021, 64% were dismissed. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA 2022), Ex. 4 at 11.  Moreover, motions to dismiss securities class actions from 2012 to 2021 were denied in full only 19% of the time.  *Id*. at 14.

Even if the Action had progressed beyond the motion to dismiss, Lead Plaintiffs would of course still have to prove falsity, materiality, and scienter with sufficient evidence, and faced additional risks relating to their ability to prove loss causation and damages.

### (b)   Risks with Respect to Proving Liability

Defendants would likely move for summary judgment following discovery, arguing, among other things, that there was no evidence that there was anything false or misleading to investors about the way Credit Acceptance was employing its business practices. Defendants likely would have sought to separate Credit Acceptance's allegedly predatory practices with respect to consumers, from misstatements to investors, and would argue that Lead Plaintiffs improperly rely on

"unproven consumer protection allegations" to prove securities fraud. ¶¶26-29.

Regarding falsity, Defendants would likely have contended that the alleged misstatements are inactionable as a matter of law. In particular, Defendants likely would have continued to maintain that the Company made robust disclosures about the risks of the regulatory environments that it operated in, as well as about ongoing investigations into those practices. With respect to the alleged misrepresentations concerning Credit Acceptance's compliance with applicable laws and regulations, loan offerings, and risk warnings, Defendants would have likely continued to maintain that such statements were either true, inactionable puffery, or opinions that were "fully explained" to investors. ¶28.

Moreover, scienter would have remained a key issue. Specifically, Defendants likely would have continued to argue, among other things, that they did not knowingly misrepresent or omit any material facts to investors. *See, e.g.*, *Loc. 295/Loc. 851 IBT Emp. Grp. Pension Trust & Welfare Fund v. Fifth Third Bancorp*, 731 F. Supp. 2d 689, 727 (S.D. Ohio 2010) ("[C]utting strongly against a finding of scienter is the fact that much of the information that Plaintiffs claim was concealed was actually reported."). Moreover, Defendants would likely seek to establish that they did not profit from the alleged fraud, including, for example, by showing that Defendant Kenneth S. Booth purchased many shares of Credit Acceptance stock during the Class Period and that his net holdings increased

during that same period, even while the value of his holdings declined. ¶29.

### (c)     Risks with Respect to Loss Causation and Damages

Here, Defendants would have sought to establish that the declines in Credit Acceptance's stock price were not caused by the truth concerning Defendants' alleged false statements being revealed.  If Lead Plaintiffs did not meet their burden of establishing causation by a preponderance of the evidence for at least one alleged corrective disclosure, then the class would have recovered nothing.

As mentioned above, Lead Plaintiffs' consulting damages expert has estimated that if liability were established with respect to both allegedly corrective disclosures (the Company's January 30, 2020 announcement of its 4Q2019 and full year 2019 financial results and the August 2020 disclosures of the Massachusetts Attorney General's enforcement action against the Company), maximum aggregate damages recoverable at trial, based on stock price declines on the three alleged disclosures dates and with netting of gains on pre-class period purchases, would be approximately $370 million. ¶¶30-35.  However, Defendants were certain to attack the alleged disclosures underlying this estimate.

For instance, Defendants would likely argue throughout continued litigation, and at trial if the allegation survived a summary judgment challenge, that the stock price drop on January 31, 2020 was not attributable to the alleged fraud at all. Specifically, Defendants would likely contend that the Company's stock price

declined on that day primarily because it had "reported disappointing loan unit and dollar growth," "loss of market share, decreased loan volume, lower dealer signups despite a relation of signup requirements, and higher than expected loan provisions," which were unrelated to the alleged fraud.  They also would have likely challenged the price impact of the announcement of the Company's "adoption of new accounting standards," which Lead Plaintiffs alleged was a materialization of risks that had not been disclosed to investors. Proving damages related to this disclosure would have involved a complex and challenging, expert-driven disaggregation analysis and losing this disclosure would decrease Lead Plaintiffs' estimated aggregate damages by approximately $100 million. ¶33.

With respect to the August 2020 disclosures concerning the Massachusetts' Attorney General's lawsuit, Defendants would likely seek to present evidence at summary judgment and trial that the disclosures were not corrective because they did not reveal any new information to the market.  They would likely argue that the Massachusetts' Attorney General's views concerning the Company's business practices and alleged violations of Massachusetts' laws were known to the market because the Company had disclosed, in January 2019 before the start of the Class Period, that the Attorney General's Office was conducting an investigation relating to the Company's sub-prime loan origination and collection.  *See, e.g.*, *In re KBC Asset Mgmt. N.V.*, 572 F. App'x. 356, 360 (6th Cir. 2014) (no loss causation when

alleged corrective disclosure was "old news").  If this argument were credited by the Court at summary judgment, or the jury at trial, recoverable damages would have been significantly decreased or eliminated altogether. ¶34.

As the case continued, the Parties' respective damages experts would strongly disagree with each other's assumptions and their respective methodologies.  *See In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *3 ("Acceptance of expert testimony is always far from certain, no matter how qualified the expert, inevitably leading to a battle of the experts."). The risk that the Court or a jury would credit Defendants' expert's anticipated damages positions over those of Lead Plaintiffs would have considerable consequences in terms of the amount of recovery for the Settlement Class, even assuming liability were proven. If these arguments prevailed at summary judgment, or trial, the Settlement Class could have recovered significantly less or, indeed, nothing.

There was also significant uncertainty with respect to how the Court would rule on these issues in connection with class certification or whether certification would be maintained through a potential appeal and a trial, militating in favor of settlement.  Class certification can be reviewed and modified at any time by a court before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").  The Settlement avoids any uncertainty in this regard.  *See Ebbert v. Nassau Cnty.*, No.

05-5445, 2011 WL 6826121, at *12 (E.D.N.Y. Dec. 22, 2011) (risk of de-certification of the certified class supported approval of Settlement).[5]

Moreover, even if Lead Plaintiffs had prevailed at summary judgment and then trial, it is virtually certain that appeals would be taken, which would have, at best, delayed any recovery. At worst, there was of course the possibility that the verdict could be reversed by the trial court or on appeal. *See, e.g.*, *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation).

### F.   The Effective Process for Distributing Relief to the Class

Rule 23(e)(2)(C) instructs courts to consider whether the relief provided to the class is adequate in light of the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."   Here, the proceeds of the Settlement will be distributed with the assistance of an experienced claims administrator, JND Legal Administration ("JND"). The Claims Administrator is employing a well-tested protocol for the processing of claims in a securities class action.   Specifically, a claimant will

---

[5] In the Preliminary Approval Order (ECF No. 48), the Court preliminarily certified the Settlement Class.  There have been no developments in the case that would undermine that determination and, for all the reasons stated in the Memorandum of Law in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Approval of Notice to the Settlement Class (ECF No. 42), Lead Plaintiffs now request that the Court reiterate

submit, either by mail or online using the Settlement website, the Court-approved Claim Form.  Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to recover by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible claimant's *pro rata* portion of the Net Settlement Fund.  *See* ¶¶49-52.  Lead Plaintiffs' claims will be reviewed in the same manner.  Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims.  Stipulation ¶27(d)-(e).  Any claim disputes that cannot be resolved will be presented to the Court.  *Id*.  (Lead Plaintiffs will report on the claims received to date in their reply papers due on November 30, 2022.)

After the Settlement reaches its Effective Date (*id*. ¶36) and the claims process is completed, Authorized Claimants will be issued payments.  If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions.  Thereafter, Lead Plaintiffs

its prior certification of the Settlement Class pursuant to Fed. R. Civ. P. 23(a).

recommend that any *de minimis* balance that still remains in the Net Settlement Fund, after payment of any outstanding Notice and Administration Expenses, shall be contributed to Consumer Federation of America, or such other secular, non-profit organization approved by the Court. *Id*. ¶24.

### G. The Requested Attorneys' Fees and Expenses Are Reasonable

As discussed in the accompanying Fee Memorandum, the proposed attorneys' fees of 30% of the Settlement Fund, to be paid as ordered by the Court, are reasonable in light of the efforts of Lead Counsel and the risks in the litigation. Approval of attorneys' fees is entirely separate from approval of the Settlement, and the Settlement cannot be terminated based on this Court's or any appellate court's ruling about the fees or expenses.

### H. The Relief Provided in the Settlement Is Adequate Taking Into Account All Agreements Related to the Settlement

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the Parties in connection with a settlement. On August 24, 2022, the Parties entered into the Stipulation and a confidential Supplemental Agreement, which has been provided to the Court *in camera*. The Supplemental Agreement sets forth the conditions under which Defendants may terminate the Settlement if requests for exclusion exceed a certain agreed-upon threshold. As is standard, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger

individual settlement, to the detriment of the Settlement Class.

## I.    Application of the Remaining 6th Circuit Factors

### 1.    Lead Plaintiffs Have Thoroughly Investigated the Claims

Lead Plaintiffs negotiated the Settlement on a well-informed basis and with a thorough understanding of the merits and value of the Parties' claims and defenses. Lead Plaintiffs, through Lead Counsel, among other things: (i) identified 162 former employees of Credit Acceptance with potentially relevant information, of whom 143 were contacted and 31 were interviewed on a confidential basis; (ii) reviewed and analyzed the Company's filings with the SEC, press releases and other publications disseminated by the Company, shareholder communications and conference calls, research reports issued by financial analysts concerning the Company; and (iii) reviewed and analyzed documents relating to the enforcement action filed against the Company by the Massachusetts Attorney General, public records produced by the SEC and the Massachusetts Attorney General's Office. Additionally, Lead Counsel drafted a comprehensive Complaint and opposed Defendants' motion to dismiss.  In consultation with Lead Plaintiffs' damages expert, Lead Counsel also evaluated the potential damages in the case and Defendants' loss causation and damages arguments. Finally, Lead Plaintiffs, through Lead Counsel, prepared for and participated in a rigorous mediation process overseen by a highly experienced third-party neutral. *See* Canty Decl. §§II

& IV. "[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties." *Griffin,* 2013 WL 6511860, at \*3. In sum, Lead Plaintiffs and Lead Counsel "had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement." *N.Y. State Tchrs. Ret. Sys.*, 315 F.R.D. at 237.

### 2. The Reaction of the Settlement Class to Date

"In considering a class action settlement, the Court should also look to the reaction of the class members." *Nationwide*, 2009 WL 8747486, at \*7. Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator mailed copies of the Notice Packet (consisting of the Notice and Claim Form) to potential Settlement Class Members and their nominees. *See* Declaration of Luiggy Segura of JND Legal Administration ("Mailing Decl."), Ex. 5 ¶¶3-12. As of October 31, 2022, JND has mailed 65,513 copies of the Notice Packet. *Id.* ¶12. On October 17, 2022, the Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PR Newswire. Id.* ¶13.

While the deadline set by the Court for Settlement Class Members to object (November 16, 2022) has not yet passed, to date, no objections to the Settlement or Plan of Allocation have been received and no requests for exclusion have been received. *See N.Y. State Tchrs. Ret. Sys.*, 315 F.R.D. at 241 ("the small number of

objections received from absent Class members . . . weigh in favor of approving the Settlement"). The Settlement also has the full support of Lead Plaintiffs. *See* Ex. 1 ¶4; Ex. 2 ¶4.  Lead Plaintiffs will file reply papers no later than November 30, 2022, addressing any objections and any requests for exclusion.

### 3.      The Public Interest Warrants Approval of the Settlement

Finally, the Settlement is consistent with the public interest.  There is a well-recognized public interest in the settlement of disputed claims that, like the claims asserted here, require substantial federal judicial resources to supervise and resolve.  *See, e.g.*, *Delphi*, 248 F.R.D. at 501; *Cardizem*, 218 F.R.D. at 530 (noting "strong public interest" in settling class actions because they are "notoriously difficult and unpredictable").  This Settlement will conclude what would have proven to be a lengthy and complex litigation, and will provide a certain recovery to thousands of class members whose investment losses would not otherwise justify individual action.  *See Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 782 (N.D. Ohio 2010) (public interest served by classwide recovery "that, but for this litigation, would almost certainly have gone uncompensated").

## II.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Approval of a plan of allocation is governed by the same standards of fairness and reasonableness applicable to the settlement as a whole.  *See, e.g.*, *Packaged Ice*, 2011 WL 6209188, at *15. "Courts generally consider plans of

allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Packaged Ice*, 2011 WL 6209188, at *15.

Here, the proposed Plan, which was developed by Lead Counsel in consultation with Lead Plaintiffs' damages expert, provides for distribution of the Net Settlement Fund on a *pro rata* basis based on claimants' "Recognized Loss Amounts," calculated according to the Plan's formulas, which are based on the amount of alleged artificial inflation in the share prices, as calculated by Lead Plaintiffs' consulting damages expert. *See* Ex. 5-A ¶¶47-66. Recognized losses will be calculated by the Claims Administrator and are based on the number of shares purchased and sold or held during the Class Period and the PSLRA 90-day look back period after the end of the Class Period. Canty Decl. §VI.

The sum of a claimant's Recognized Loss Amounts will be the claimant's "Recognized Claim." If the aggregate amount of Recognized Claims is greater than the Net Settlement Fund, each eligible claimant will receive a payment equal to their *pro rata* share of the Net Settlement Fund, assuming it is $10.00 or greater. Lead Counsel respectfully submits that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund. Moreover, as noted above, to date, no objections to the proposed plan have been received.

## **CONCLUSION**

Lead Plaintiffs respectfully request that the Court grant final approval of the

proposed Settlement, approve the proposed Plan of Allocation, and finally certify the Settlement Class for purposes of the Settlement only.  Proposed orders will be submitted with the reply papers, after the deadline for objecting has passed.

Dated:  November 2, 2022

/s/ Michael P. Canty
**LABATON SUCHAROW LLP**
Michael P. Canty
Thomas G. Hoffman, Jr.
Charles J. Stiene
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
mcanty@labaton.com
thoffman@labaton.com
cstiene@labaton.com

*Lead Counsel for Lead Plaintiffs and the Proposed Class*

Respectfully Submitted,

Kelly E. Kane (P81912)
**CLARK HILL PLC**
Woodward Ave
Suite 3500
Detroit, Michigan 48226
Tel.: (313) 309-9495
Fax: (313) 309-6875
Email: kkane@clarkhill.com

**CLARK HILL PLC**
Ronald A. King (P45088)
212 E. Cesar Chavez Ave
Lansing, Michigan 48906
Tel.: (517) 318-3015
Fax: (517) 318-3068
rking@clarkhill.com

*Liaison Counsel for Lead Plaintiffs*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 2, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

/s/ *Michael P. Canty*
MICHAEL P. CANTY
