**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| PALM TRAN, INC. AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>   v.<br><br>CREDIT ACCEPTANCE CORPORATION, BRETT A. ROBERTS, and KENNETH S. BOOTH,<br><br>      Defendants. | Case No. 20-cv-12698<br>Honorable Linda V. Parker |

**LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND PAYMENT OF LITIGATION EXPENSES**

Court-appointed Lead Counsel, Labaton Sucharow LLP, will hereby move this Court, on behalf of all Plaintiffs' Counsel, on December 7, 2022 at 1:00 p.m., before the Honorable Linda V. Parker, remotely via Zoom video conference from Courtroom 206 of the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, MI 48226, for entry of an Order, pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act, 15 U.S.C. §78u-4(a)(4) ("PSLRA"): (i) awarding attorneys' fees in the amount of 30% of the Settlement Fund; and (ii) paying Litigation Expenses in the amount of $59,615.60 incurred in prosecuting the Action.

In support of this motion, Lead Counsel submits and is filing herewith: (i) the Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses, dated November 2, 2022; and (ii) the Declaration of Michael P. Canty in Support of (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses, dated November 2, 2022, with annexed exhibits.

The Parties have conferred and Defendants do not take a position on the relief requested by this motion.

A proposed Order will be submitted with the reply submission on or before November 30, 2022, after the deadline for objecting has passed.

Dated:  November 2, 2022

/s/ Michael P. Canty
**LABATON SUCHAROW LLP**
Michael P. Canty
Thomas G. Hoffman, Jr.
Charles J. Stiene
140 Broadway
New York, New York 10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
mcanty@labaton.com
thoffman@labaton.com
cstiene@labaton.com

*Lead Counsel for Lead Plaintiffs and the Proposed Class*

Respectfully Submitted,

Kelly E. Kane (P81912)
**CLARK HILL PLC**
Woodward Ave
Suite 3500
Detroit, Michigan 48226
Tel.: (313) 309-9495
Fax: (313) 309-6875
Email: kkane@clarkhill.com

**CLARK HILL PLC**
Ronald A. King (P45088)
212 E. Cesar Chavez Ave
Lansing, Michigan 48906
Tel.: (517) 318-3015
Fax: (517) 318-3068
rking@clarkhill.com

*Liaison Counsel for Lead Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2022, I caused a copy of the foregoing document to be filed with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all registered users.

*/s/   Michael P. Canty*
MICHAEL P. CANTY

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| PALM TRAN, INC. AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN, Individually and On Behalf of All Others Similarly Situated, | Case No. 20-cv-12698 Honorable Linda V. Parker |
| Plaintiff, |  |
| v. |  |
| CREDIT ACCEPTANCE CORPORATION, BRETT A. ROBERTS, and KENNETH S. BOOTH, |  |
| Defendants. |  |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
PAYMENT OF LITIGATION EXPENSES**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

STATEMENT OF ISSUES PRESENTED............................................... vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ........................... viii

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT .............................................................................................. 4

I.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE
       AND WARRANT THE COURT'S APPROVAL ............................................ 4

       A.     The Settlement Creates a Common Fund from Which a
              "Percentage-of-the-Fund" Fee Would Be Appropriate ......................... 4

       B.     The Requested Fee of 30% Is Comparable to Awards in Similar
              Cases ........................................................................................... 7

       C.     Lead Counsel's Fee Request Is Fair and Reasonable under Sixth
              Circuit Authority ........................................................................... 9

              1.     The Value of the Benefit Rendered to the Class ......................... 9

              2.     The Value of Counsel's Services on an Hourly Basis, and
                     a Lodestar Cross-Check ............................................................. 13

              3.     The Contingent Nature of the Representation ......................... 15

              4.     Society's Stake in Rewarding Attorneys Who  Enforce
                     the Securities Laws ................................................................... 17

              5.     The Complexity of the Litigation ............................................. 18

              6.     The Professional Skill and Standing of Counsel ...................... 19

              7.     Reaction of the Settlement Class to Date................................. 20

II.    LEAD COUNSEL'S REQUEST FOR AN AWARD OF
       LITIGATION EXPENSES IS REASONABLE ......................................... 21

CONCLUSION ...............................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bailey v. AK Steel Corp.*,
No. 1:06-CV-468, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008) .......................15

*Barnes v. City of Cincinnati*,
401 F.3d 729 (6th Cir. 2005) .........................................................................13, 14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ...............................................................................................18

*Blum v. Stenson*,
465 U.S. 886 (1984) ............................................................................................5, 14

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ..................................................................................................4

*Bowling v. Pfizer, Inc.*,
922 F. Supp. 1261 (S.D. Ohio 1996) .................................................................15

*In re Broadwing Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) .......................................................................14

*In re Caraco Pharm. Labs Ltd., Sec. Litig.*,
No. 2:09-cv-12830, 2013 WL 3213328 (E.D. Mich. June 26, 2013) ...................8

*In re Cardinal Health, Inc. Sec. Litigs.*
528 F. Supp. 2d 752 (S.D. Ohio 2007) ....................................................13, 15, 16

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ......................................................4, 5, 6, 19

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ............................................................*passim*

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 345 (2005) ............................................................................................10, 11

*Hicks v. Morgan Stanley*,
No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........13

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
   No. 3:09–cv–00419–MMD–WGC,
   2012 WL 5199742 (D. Nev. Oct. 19, 2012) .......................................................13

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)..........................................................................................14

*Moulton v. U.S. Steel Corp.*,
   581 F.3d 344 (6th Cir. 2009) ................................................................................9

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006),
   *aff'd, Fidel v. Farley,* 534 F.3d 508 (6th Cir. 2008)............................................18

*New York State Tchrs. Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016), *aff'd sub nom*,
   *Marro v. New York State Tchrs. Ret. Sys.*, No. 16-1821,
   2017 WL 6398014 (6th Cir. Nov. 27, 2017) ................................................*passim*

*In re Old CCA Sec. Litig./In re Prison Realty Sec. Litig.*,
   No. 3:99-458, 2001 U.S. LEXIS 21942 (M.D. Tenn. Feb. 9, 2001) ...................8

*In re Packaged Ice Antitrust Litig.*,
   No. 08–MDL–01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .........7, 13

*Palazzolo v. Fiat Chrysler Automobiles N.V. et al.*,
   No. 4:16-cv-12803-LVP-SDD,
   2019 WL 2957143 (E.D. Mich. June 5, 2019) ................................................7, 8

*In re Prandin Direct Purchaser Antitrust Litig.*,
   No. 2:10 cv 12141, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ....................8

*In re Prison Realty Sec. Litig.*,
   No. 3:99-458, 2001 U.S. LEXIS 21942 (M.D. Tenn. Feb. 9, 2001)....................8

*In re Proquest Co. Sec. Litig.*,
   No. 2:06-cv-10619, 2009 WL 10702449 (E.D. Mich. Mar. 30, 2009) ...............8

*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188 (6th Cir. 1974) .........................................................................9, 17

*Rawlings v. Prudential-Bache Props., Inc.*,
    9 F.3d 513 (6th Cir. 1993) ..............................................................................4, 5

*In re Regions Morgan Keegan Sec. Derivative & ERISA Litig.*,
    No. 09-2009, 2013 WL 12110279 (W.D. Tenn. Aug. 5, 2013) ...........................8

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ..........................................................................16

*In re Se. Milk Antitrust Litig.*,
    No. 2:07-MD-1000, 2013 WL 2155387 (E.D. Tenn. May 17, 2013) ..............6, 7

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    No. 12cv083, 2014 WL 2946459 (E.D. Tenn. June 30, 2014)........................6, 8

*Stanley v. U.S. Steel Co.*,
    No. 04-74654, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009).....................16, 17

*In re Telectronics Pacing Sys., Inc., Accutix Atrial "J" Leads Prods. Liab. Litig.*,
    137 F. Supp. 2d 1029 (S.D. Ohio 2001) .............................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)............................................................................................18

*Thorpe v. Walter Inv. Mgmt. Corp.*,
    No. 14-cv-20880-UU, 2016 WL 10518902 (S.D. Fla. Oct. 17, 2016)...............13

*In re: Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*,
    No. 1:08-WP-65000, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016)...............12

*Wong v. Arlo Tech, Inc.*,
    No. 19-cv-00372-BLF, 2021WL 1531171 (N.D. Cal. Apr. 19, 2020)...............12

**DOCKETED CASES**

*Dougherty v. Esperion Therapeutics, Inc. et al.*,
    No. 2:16-cv-10089, slip op. (E.D. Mich. Aug. 24, 2021)....................................8

*In re Extreme Networks, Inc. Sec. Litig.*,
    No. 5:15-cv-04883-BLF, slip op. (N.D. Cal. July 22, 2019).......................12, 13

*Zimmerman v. Diplomat Pharm., Inc., et al.*,
    No. 2:16-cv-14005-AC-SDD, slip op. (E.D. Mich. Aug. 20, 2019) ...................7

**STATUTES & RULES**

15 U.S.C. 78u-4(a)(6) ............................................................................6

Fed. R. Civ. P. 23(h) ............................................................................4

## STATEMENT OF ISSUES PRESENTED

1.     Should the Court approve Lead Counsel's request, on behalf of Plaintiffs' Counsel, for an award of attorneys' fees in the amount of 30% of the Settlement Fund?

2.     Should the Court approve Lead Counsel's request, on behalf of Plaintiffs' Counsel, for payment of Litigation Expenses in the amount of $59,615.60?

Lead Counsel submits that the answers to these questions should be in the affirmative.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 531-32 (E.D. Mich. 2003)

*In re Delphi Corp. Sec., Derivative & ERISA Litig*., 248 F.R.D. 483, 502 (E.D. Mich. 2008)

*New York State Tchrs. Ret. Sys. v. Gen. Motors Co*., 315 F.R.D. 226, 231 (E.D. Mich. 2016) *aff'd sub nom*, *Marro v. New York State Tchrs. Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017)

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194-97 (6th Cir. 1974)

Court-appointed Lead Labaton Sucharow LLP ("Lead Counsel" or "Labaton Sucharow") respectfully submits this memorandum of law in support of its motion, on behalf of all Plaintiffs' Counsel,[1] for an award of attorneys' fees in the amount of 30% of the Settlement Fund, or $3,600,000, plus accrued interest.  Lead Counsel also seeks payment of $59,615.60 plus accrued interest, in Litigation Expenses reasonably incurred by Plaintiffs' Counsel in prosecuting the Action.[2]

## PRELIMINARY STATEMENT

Following two years of dedicated litigation efforts, Lead Counsel successfully negotiated a settlement of the Action with Defendants.  The proposed Settlement, if approved by the Court, will resolve this litigation in its entirety in exchange for a cash payment of $12 million.  The Settlement not only eliminates the risks of continued litigation—*e.g.*, the possibility of an adverse ruling on Defendants' motion to dismiss the Complaint (pending when the Settlement was reached) and Defendants' likely continued challenges to liability, loss causation and damages through class certification, summary judgment, and trial—but also the delays and

---

[1]  "Plaintiffs' Counsel" refers collectively to (i) Lead Counsel, Labaton Sucharow LLP; (ii) Court-appointed Liaison Counsel, Clark Hill PLC; and (iii) Himelfarb Proszanski.

[2]  All capitalized terms used and not otherwise defined in this Memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated as of August 24, 2022 (the "Stipulation"), previously filed with the Court (ECF No. 42-2).

expense of expert discovery, summary judgment motions, trial, and post-trial appeals.

The $12 million recovery was achieved through the skill, experience, and effective advocacy of Lead Counsel in the face of considerable risk and an aggressive defense mounted by Defendants, who were represented by able and knowledgeable counsel. The Settlement was reached only after Lead Counsel had conducted an extensive investigation, prepared a detailed Complaint to withstand the requirements of the PSLRA, and opposed Defendants' motion to dismiss the Complaint. *See* Declaration of Michael P. Canty ("Canty Decl." or "Canty Declaration") filed herewith, §II.[3] Lead Counsel also engaged in rigorous settlement negotiations with Defendants, including the exchange of mediation briefing and participation in a full-day mediation session with an experienced and highly respected mediator, followed by continued negotiations with the mediator before the Parties reached an agreement in principle to resolve the Action. This dedication of effort has resulted in a very favorable and certain cash recovery for the Settlement

---

[3] Citations to "¶ __" are to paragraphs in the Canty Declaration. All exhibits referenced below are attached to the Canty Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Canty Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.
Emphasis is added and citations are omitted throughout unless otherwise noted.

Class.

As compensation for its efforts, Lead Counsel, on behalf of Plaintiffs' Counsel, respectfully requests an award of attorneys' fees in the amount of 30% of the Settlement Fund.   Lead Counsel's efforts to date have been without compensation of any kind and a fee has been wholly contingent upon the result achieved.  Since fee awards are designed to encourage counsel to achieve the best possible result for the class, the amount requested in this case is warranted, and is in line with awards regularly awarded in the Sixth Circuit in securities class actions with comparable recoveries.

In addition, Lead Counsel seeks payment of Litigation Expenses in the amount of $59,615.60.   The Litigation Expenses, as discussed below, were reasonable and necessary for the successful prosecution of the Action.

Lead Plaintiffs—institutional investors who oversaw the prosecution of the Action—approve of and endorse the requested fee.[4]   This endorsement is particularly significant because the PSLRA was enacted to encourage sophisticated institutional investors to seek lead plaintiff status and oversee securities class

---

[4]   *See* Declaration of Tom Cardinal on Behalf of Ontario Provincial Council of Carpenters' Pension Trust Fund, Ex. 1 ¶¶2, 5-6; and Declaration of Mark Beardsworth on Behalf of Millwright Regional Council of Ontario Pension Trust Fund, Ex. 1 ¶¶2, 5-6.

actions.  Moreover, although 65,513 Notices have been disseminated advising that

Lead Counsel would seek fees not to exceed 30% of the Settlement Fund and

expenses not to exceed $125,000, not a single Settlement Class Member has filed an

objection to these requests to date.

For the following reasons, Lead Counsel respectfully requests that the Court

approve the requested attorneys' fees and Litigation Expenses.

## ARGUMENT

I.     **THE REQUESTED ATTORNEYS' FEES ARE REASONABLE
       AND WARRANT THE COURT'S APPROVAL**

A.     **The Settlement Creates a Common Fund from Which a
       "Percentage-of-the-Fund" Fee Would Be Appropriate**

Under Rule 23(h), "[i]n a certified class action, the court may award

reasonable attorney's fees and nontaxable costs that are authorized by law or by the

parties' agreement."  Fed. R. Civ. P. 23(h).  As the Supreme Court has recognized,

a "lawyer who recovers a common fund for the benefit of persons other than himself

or his client is entitled to a reasonable attorney's fee from the fund as a whole."

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Cardizem CD Antitrust

Litig.,* 218 F.R.D. 508, 531-32 (E.D. Mich. 2003).  In common fund cases, the Sixth

Circuit has held that "a court must make sure that counsel is fairly compensated for

the amount of work done as well as for the results achieved." *Rawlings v. Prudential-*

*Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). The standard for an award of attorneys' fees in common fund cases in the Sixth Circuit is that they be "reasonable under the circumstances." *Id*.; *see In re Cardizem*, 218 F.R.D. at 531.

The Supreme Court has also suggested that percentage-of-recovery is the appropriate method for awarding fees under the common fund doctrine. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class . . . ."). Although the Sixth Circuit has granted trial courts the discretion to utilize either the lodestar or the percentage of the fund method when awarding attorney fees (*see Rawlings*, 9 F.3d at 516), the "Sixth Circuit has observed a 'trend towards adoption of a percentage of the fund method in [common fund] cases.'" *New York State Tchrs. Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 231 (E.D. Mich. 2016) (J. Parker) ("*GM*"), *aff'd sub nom*, *Marro v. New York State Tchrs. Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

The percentage method of awarding attorneys' fees has a number of advantages in that it "is easy to calculate; it establishes reasonable expectations on the part of [the] plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *GM*, 315 F.R.D. at 243; *Rawlings*, 9.F.3d at 515; *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248

F.R.D. 483, 502 (E.D. Mich. 2008).  Additionally, the percentage of the fund method "more accurately reflects the result achieved" and "has the virtue of reducing the incentive for plaintiffs' attorneys' to over-litigate or 'churn' cases.  *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12cv083, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014).  In other words, the percentage of the fund method "provides a powerful incentive for the efficient prosecution of and early resolution of litigation." *In re Se. Milk Antitrust Litig.*, No. 2:07-MD-1000, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013).[5]

District Courts in the Sixth Circuit have now almost uniformly shifted to the percentage method in awarding fees in common fund cases.  *See Skelaxin,* 2014 WL 2946459, at *1 ("The court recognizes that the trend in common fund cases has been toward use of the percentage method"); *In re Cardizem*, 218 F.R.D. at 532 (courts in the Sixth Circuit have "indicated a preference for the percentage-of-the-fund method in common fund cases"); *In re Delphi*, 248 F.R.D. at 502 (same).

---

[5]  Since this is a securities case, it is important to recognize that the use of the percentage method is consistent with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff shall not exceed a ***reasonable percentage*** of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6).  In fact, several courts have concluded that Congress, in using this language, expressed a preference for the percentage method when determining attorneys' fees in securities class actions." *See, e.g.*, *In re Delphi*, 248 F.R.D. at 502.

As explained below, the factors courts consider when assessing percentage-of-recovery requests also demonstrate the reasonableness of Lead Counsel's requested fee.

**B.    The Requested Fee of 30% Is Comparable to Awards in Similar Cases**

The requested fee of 30% is a reasonable percentage of the Settlement Fund under the percentage-of-recovery method.  *See In re Packaged Ice Antitrust Litig.*, No. 08–MDL–01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions."); *In re Se. Milk*, 2013 WL 2155387, at *2 (finding that 33% "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit").

A review of percentage fee awards approved by courts within this District in securities common fund cases with comparable recoveries confirms that a 30% fee here would be fair and reasonable. *See, e.g.*, *Zimmerman v. Diplomat Pharm., Inc., et al.*, No. 2:16-cv-14005-AC-SDD, slip op. at 2 (E.D. Mich. Aug. 20, 2019) (awarding 30% of $14 million settlement) (Ex. 10)[6]; *Palazzolo v. Fiat Chrysler*

---

[6]    All unreported decisions are submitted herewith in a compendium attached to the Canty Declaration as Exhibit 10.

*Automobiles N.V. et al*., No. 4:16-cv-12803-LVP-SDD, 2019 WL 2957143, at *1-2 (E.D. Mich. June 5, 2019) (J. Parker) (awarding 30% $14.75 million settlement) *Dougherty v. Esperion Therapeutics, Inc. et al*., No. 2:16-cv-10089, slip op. at 2 (E.D. Mich. Aug. 24, 2021) (awarding 32.5% of $18.25 million settlement) (Ex. 10); *In re Proquest Co. Sec. Litig*., No. 2:06-cv-10619, 2009 WL 10702449, at *4 (E.D. Mich. Mar. 30, 2009) (awarding 30% of $20 million settlement and noting that the fees were "fair and reasonable and consistent with similar cases"); *see also In re Caraco Pharm. Labs Ltd., Sec. Litig*., No. 2:09-cv-12830, 2013 WL 3213328, at *4 (E.D. Mich. June 26, 2013) (awarding 33% of $2.975 million settlement); *In re Prandin Direct Purchaser Antitrust Litig*., No. 2:10 cv 12141, 2015 WL 1396473, at *4-5 (E.D. Mich. Jan. 20, 2015) (awarding 33.3% of $19 million settlement).

Awards of 30% or more have also been given in common fund cases with larger settlement amounts in courts within the Sixth Circuit. *See, e.g*., *In re Regions Morgan Keegan Sec. Derivative & ERISA Litig*., No. 09-2009, 2013 WL 12110279, at *7-8 (W.D. Tenn. Aug. 5, 2013) (awarding 30% of $62 million settlement); *In re Old CCA Sec. Litig./In re Prison Realty Sec. Litig*., No. 3:99-458, 2001 U.S. LEXIS 21942, at *3 (M.D. Tenn. Feb. 9, 2001) (awarding 30% of $104 million); *Skelaxin*, 2014 WL 2946459, at *1 (awarding one-third of $73 million settlement).

Thus, it is respectfully submitted that Lead Counsel's 30% fee request is

reasonable and comparable to customary fees awarded in these types of cases.

**C.      Lead Counsel's Fee Request Is Fair and Reasonable under Sixth Circuit Authority**

In reviewing the reasonableness of the requested award, the Sixth Circuit requires district courts to consider six factors, known as the *Ramey* factors:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194-97 (6th Cir. 1974); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).  These factors fully support the requested attorneys' fee.

### 1.      The Value of the Benefit Rendered to the Class

"The primary factor in determining a reasonable fee is the result achieved on behalf of the class." *In re Delphi*, 248 F.R.D. at 503.  Here, the $12 million cash recovery for the Settlement Class is a very favorable result in light of the risks of ahead—prevailing on Defendants' motion to dismiss the Complaint, securing class certification, the difficulties of a summary judgment challenge and establishing liability for securities violations, and the risks in establishing the Settlement Class's full amount of damages, or prevailing after trial in a likely appeal.

- 9 -

Indeed, at the time the Parties reached an agreement to settle, the Court had not yet ruled on Defendants' motion to dismiss.  While Lead Counsel believes that the motion would have been denied, it also understood that Defendants raised arguments that could have been credited by the Court concerning whether the alleged misstatements constitute inactionable omissions, statements of puffery, or generic risk warnings, and whether Lead Plaintiffs had pled sufficient facts to demonstrate that any alleged misstatement was false when made.  ¶¶26-28.  Defendants also challenged whether Lead Plaintiffs had alleged sufficient facts supporting a strong inference of scienter, and whether Lead Plaintiffs had pled loss causation.  ¶¶29-35. Negative rulings with respect to any of the foregoing could have radically weakened Lead Plaintiffs' claims or terminated the Action altogether, and there is simply no guarantee that Lead Plaintiffs would have prevailed at the pleading stage.  Even assuming that Lead Plaintiffs survived the motion to dismiss, each of these elements of Lead Plaintiffs' claims would likely have been challenged at summary judgment and trial.

Moreover, if liability were established, Defendants would have persisted in challenging Lead Plaintiffs' assertions of loss causation and damages.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 345-46 (2005) (plaintiffs bear the burden of proving that the defendant's misrepresentation 'caused the loss for which the

- 10 -

plaintiff seeks to recovery'"). Here, Defendants would have sought to establish that none of the alleged declines in Credit Acceptance's stock price, in connection with the Company's January 30, 2020 announcement of its 4Q2019 and full year 2019 financial results or the August 2020 disclosures of the Massachusetts Attorney General's enforcement action against the Company, were caused by the truth concerning Defendants' alleged false statements being revealed. ¶31.

The Settlement avoids the potential impact of each of these challenges and risks, and achieves a fair and certain result.[7] The Settlement represents a meaningful portion of the Settlement Class's reasonably recoverable damages, as estimated under potential scenarios analyzed by consulting damages experts retained by Lead Plaintiffs. If the Settlement Class's claims survived the motion to dismiss, class certification, and summary judgment completely intact, and liability and damages were found 100% supported at trial, then aggregate damages were estimated at approximately $370 million. ¶32. However, this outcome was far from likely or the most reasonable damages outcome given, *inter alia*, the strength of Defendants' arguments with respect to the first alleged corrective disclosure on January 30, 2020,

_____

[7]   For the ten years from 2012 through 2021, the median settlement amount in Section 10(b) cases was $7.9 million and it was $8.3 million in 2021. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2021 Review and Analysis*, at 1 (Cornerstone Research 2022). *See* Ex. 3.

which would have been challenging to tie to the alleged fraud.[8]  Assuming that the first alleged corrective disclosure was dismissed, estimated aggregate damages would be approximately $260 million. ¶33. Under this scenario, the Settlement represents approximately 4.6% of estimated damages.  *Id*.

This percentage is in line with other court-approved securities settlements in courts within the Sixth Circuit.  *See, e.g.*, *In re Delphi*, 248 F.R.D. at 497 (observing that the average securities class action settles for between 3% and 15% of estimated damages); *see also In re: Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *17 (N.D. Ohio Sept. 23, 2016) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair. Indeed, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").[9]

---

[8]  Specifically, Defendants would likely contend that the Company's stock price declined primarily because the Company had "reported disappointing loan unit and dollar growth," "loss of market share, decreased loan volume, lower dealer signups despite a relation of signup requirements, and higher than expected loan provisions," which were unrelated to the alleged fraud.  ¶33.

[9]  Courts in other jurisdictions have approved similar ranges in other securities class actions with similar settlement amounts. *See, e.g.*, *Wong v. Arlo Tech,, Inc.*, No. 19-cv-00372-BLF, 2021WL 1531171, at *9 (N.D. Cal. Apr. 19, 2020) (approving $1.25 million settlement representing 2.35% of estimated damages); *In re Extreme Networks, Inc. Sec. Litig.*, No. 5:15-cv-04883-BLF, slip op. at 14 (N.D. Cal. July 22,

### 2. The Value of Counsel's Services on an Hourly Basis, and a Lodestar Cross-Check

When applying the percentage of the fund method, courts will look at the hours expended by counsel, either as a factor in the fee analysis, or as an independent cross-check to prevent consumer from receiving a windfall. *See In re Cardinal Health*, *Inc. Sec. Litigs*. 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *18. Counsel's lodestar is determined by multiplying "the number of hours reasonably expended on the case by a reasonable hourly rate." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005).

Here, a lodestar cross-check supports Lead Counsel's fee request. As detailed in the Canty Declaration, Lead Counsel, *inter alia*: (i) conducted a comprehensive factual investigation of the claims at issue in the Action, including 31 interviews with former Credit Acceptance employees and other persons with potentially

---

2019) (Ex. 10) (approving $7 million settlement representing recovery between approximately 3% and 7% of estimated damages); *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 14-cv-20880-UU, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) (approving $24 million settlement representing 5.5% of best-case scenario); *Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09–cv–00419–MMD–WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering 3.5% of maximum damages and noting the amount is within the median recovery in securities class actions settled in the last few years); *Hicks v. Morgan Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005) (approving $10 million settlement representing 3.8% of estimated damages).

relevant knowledge, ten of whom were cited in the Complaint; (ii) drafted the detailed Complaint crafted to survive the strictures of the PSLRA; (iii) researched and drafted an opposition to Defendants' comprehensive motion to dismiss the Complaint; (iv) consulted with experts regarding loss causation, damages, and liability issues; and (v) engaged in extensive settlement negotiations and formal mediation. *See* Canty Decl. §§II and IV.

Plaintiffs' Counsel expended 2,542.7 hours in connection with the prosecution and resolution of the Action resulting in a "lodestar" of $1,512,963.50. ¶63; *see also* Exs. 6-A, 7-A, and Ex. 8 (Summary Table of Lodestars and Expenses). Here, based on the $12 million Settlement, a 30% fee award would result in a "multiplier" of approximately 2.4.[10]   Moreover, Lead Counsel's work will continue beyond approval of the Settlement, with no additional compensation.

---

[10] The multiplier is calculated by dividing the $3,600,000 fee request by the $1,512,963.50 lodestar. It is appropriate to use counsel's current hourly rates in order to compensate for the delay in payment and inflation. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)). Courts in this Circuit also have stated that it is proper to compensate counsel for delay by using current hourly rates in examining lodestar. *See Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005); *In re Broadwing Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006). Plaintiffs' Counsel's rates are comparable to those used in other securities or shareholder litigation. They are also commensurate with rates used by peer defense-side law firms litigating matters of a similar magnitude. *See* sample of defense firm hourly rates compiled by Labaton Sucharow from bankruptcy court filings in 2021 (Ex. 9). *See also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (explaining that courts should consider whether "the

It is appropriate to apply a multiplier to counsel's lodestar to reflect factors such as the contingency risks of the litigation and the quality of the work performed. *See Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996). Courts within the Sixth Circuit have awarded fees with much higher multipliers than counsel is seeking here. *See, e.g., Cardinal Health*, 528 F. Supp. 2d at 767 (approving multiplier of 6 and noting that "[m]ost courts agree that the typical lodestar multiplier on a large class action ranges from 1.3 to 4.6"); *Gen. Motors Co.,* 315 F.R.D. at 235 (J. Parker), (multiplier of 1.9, which "the Court finds to be well within an acceptable range"); *Bailey v. AK Steel Corp.*, No. 1:06-CV-468, 2008 WL 553764, at *2 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.04, noting that "[c]ourts typically . . . increase[e] the lodestar amount by a multiplier of several times itself" and identifying a "normal range of between two and five").

### 3.      The Contingent Nature of the Representation

"Whether counsel's services were undertaken on a contingent fee basis is another factor for the Court to consider in evaluating a fee request." *In re Delphi*, 248 F.R.D. at 503-04.  Fees in class action lawsuits of this nature are typically contingent because virtually no individual possesses a large enough stake in the

---

requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation").

litigation to justify paying attorneys on an hourly basis.  Courts have recognized that the contingency risk is a major factor in determining the award of fees.  *See, e.g.*, *Cardinal Health*, 528 F. Supp. 2d at 766 ("[s]everal courts consider the risk of non-recovery the most important factor in the fee determination").

Success in contingent litigation is never guaranteed. Plaintiffs' counsel in securities litigation often spend years in litigation, expending thousands of hours and millions of dollars, yet receiving no compensation.  Even a victory at the trial stage is not a guarantee of success.  *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing jury verdict of $81.3 million in securities class action on loss causation grounds and judgment entered for defendant).  Here, as explained above, Lead Plaintiffs faced a number of hurdles that could have resulted in a smaller recovery for the Settlement Class, or no recovery.  Indeed, because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result, and this risk justifies the requested fee.  This supports a finding that the fee request is reasonable.  *See GM,* 315 F.R.D. at 244 (approving requested fee and noting that "counsel has received no compensation during the almost two years this action has been pending, despite the lack of any guarantee that it would ever be reimbursed for these costs or the payment of any fee"); *Stanley v. U.S. Steel Co.*, No. 04-74654, 2009 WL 4646647, at *3 (E.D.

Mich. Dec. 8, 2009) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

### 4. Society's Stake in Rewarding Attorneys Who Enforce the Securities Laws

Without adequate compensation, it would be difficult to retain the caliber of lawyers necessary, willing, and able to properly prosecute to a favorable conclusion complex, risky, and extremely expensive securities class actions such as this. Indeed, the "federal securities laws are remedial in nature and adequate compensation is necessary to encourage attorneys to assume the risk of litigating private lawsuits to protect investors." *GM*, 315 F.R.D. at 244.

Further, "[a]ttorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources." *In re Telectronics Pacing Sys., Inc., Accutix Atrial "J" Leads Prods. Liab. Litig.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001). Thus, "[i]n evaluating the reasonableness of a fee request, the court also must consider society's stake in rewarding attorneys who produce a common benefit for class members in order to maintain an incentive to others." *In re Delphi*, 248 F.R.D. at 503; *Ramey*, 508 F.2d at 1196.

As the Supreme Court has acknowledged, private securities class actions are an important supplement to the work of the U.S. Securities and Exchange

- 17 -

Commission ("SEC") and the Department of Justice ("DOJ").  *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308 (2007); *see also Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'").

### 5.    The Complexity of the Litigation

The complexity of the litigation is a significant factor to be considered in determining the reasonableness of an attorneys' fee award.  *See In re Delphi*, 248 F.R.D. at 504.  As numerous courts have recognized, "Securities litigation class actions are inherently complex."  *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634 (W.D. Ky. 2006), *aff'd, Fidel v. Farley* 534 F.3d 508 (6th Cir. 2008).

This case was no different.  The Action involved a number of complex and disputed questions of law and fact that placed the ultimate outcome of the case in doubt. As detailed in the Canty Declaration and noted above, Defendants strenuously argued that the alleged misstatements constitute inactionable omissions, statements of puffery, and generic risk warnings, and that Lead Plaintiffs have not pled and could not prove sufficient facts to demonstrate that any alleged misstatement was false when made. There were also significant obstacles with respect to Lead

Plaintiffs' claims being able to survive challenges to the element of scienter, and whether the Complaint sufficiently alleged Defendants' knowledge, or Lead Plaintiffs could prove it. ¶¶26-29. Even assuming that the claims survived these risks, Lead Plaintiffs would have confronted considerable additional challenges in establishing loss causation and damages. ¶¶30-35. Had any of these arguments been accepted in whole or in part, they could have eliminated or, at a minimum, drastically limited the potential recovery for Lead Plaintiffs and the Settlement Class. Lead Plaintiffs also faced the substantial burdens of a class certification motion, summary judgment motions, trial and likely appeals.

Lead Counsel dedicated significant time and resources to crafting rebuttals to Defendants' arguments in this regard. Accordingly, this factor also supports the requested fee award.

### 6. The Professional Skill and Standing of Counsel

In determining a reasonable fee, the Court should evaluate the professional skill and standing of counsel. *See Cardizem*, 218 F.R.D. at 533. Lead Counsel is among the nation's preeminent law firms in this area of practice and has served as lead or co-lead counsel on behalf of major institutional investors in numerous class litigations since the enactment of the PSLRA. ¶¶64-65; Ex. 6-C.

The quality of opposing counsel is also important in evaluating the services

rendered by Lead Counsel.  *See In re Delphi*, 248 F.R.D. at 504. Defendants are represented by Skadden, Arps, Slate Meagher & Flom LLP and Dickinson Wright PLLC, experienced and recognized defense firms.  The ability of Lead Counsel to obtain such a favorable Settlement for the Settlement Class in light of such qualified legal opposition confirms the quality of Lead Counsel's representation.  This factor supports Lead Counsel's fee request.

### 7.     Reaction of the Settlement Class to Date

"The Class's reaction to the requested fee award is also important evidence of the fairness and reasonableness of the fee request.  *In re Delphi*, 248 F.R.D. at 504.

As of October 31, 2022, 65,513 copies of the Notice have been provided to potential Settlement Class Members and known brokers and nominees.  *See* Declaration of Luiggy Segura Regarding (A) Mailing of The Notice Packet; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion to Date ("Mailing Decl."), Ex. 5 ¶¶3-12.  Additionally, the Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PR Newswire* on October 17, 2022.  *Id.* ¶13.

The Notice states that Lead Counsel will apply for fees not to exceed 30% of the Settlement Fund and payment of Litigation Expenses in an amount not to exceed $125,000, plus interest on both amounts, and that the deadline for filing objections

to Lead Counsel's request for fees and expenses is November 16, 2022.  *See* Ex. 5-A ¶¶4 and 34.  To date, not a single objection to the fee and expense amounts set forth in the Notice has been received.[11]

* * *

For all the foregoing reasons, Lead Counsel respectfully requests that the Court award an attorneys' fee of 30% of the Settlement Fund.

## II.   LEAD COUNSEL'S REQUEST FOR AN AWARD OF LITIGATION EXPENSES IS REASONABLE

Lead Counsel also requests an award of reasonable and necessary Litigation Expenses incurred by Plaintiffs' Counsel to prosecute the Action.  Since the inception of the case, Plaintiffs' Counsel have incurred $59,615.60 in expenses. "Under the common fund doctrine, 'class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses.'"  *GM*, 315 F.R.D. at 244.

The amount requested is detailed in Plaintiffs' Counsel's individual fee and expense declarations.  *See* Exs. 6-B, 7-B, and 9 (Summary Table).  Lead Counsel

---

[11]  Should any objections be filed, they will be addressed in Lead Counsel's reply papers due November 30, 2022.

- 21 -

submits that the expenses, which include expert and professional fees, mediation fees, electronic research, duplicating, overnight delivery, work-related meals, and transportation, were reasonably and necessarily incurred in prosecuting and resolving the Action.

The main expense here relates to the retention of Lead Plaintiffs' consulting experts. This expense totals $22,387.50, or approximately 38% of the total litigation expenses. ¶76; Ex. 6-B. Principally, Lead Plaintiffs retained loss causation and damages experts who analyzed causation and damages issues, including in connection with the Parties' mediation, and developed the proposed Plan of Allocation.

Computerized research costs total $21,989.10, or approximately 37% of total expenses. ¶77; Ex. 6-B. These are the charges for computerized factual and legal research services, including PACER, Westlaw, Thomson Research, and LexisNexis. These services allowed counsel to perform media searches on the Company, obtain analyst reports and financial data for the Company, and conduct legal research. *Id*.

Lead Counsel also paid $8,475.00 in mediation fees assessed by the mediator in this matter (approximately 14% of total expenses). ¶78.

Lead Counsel also retained counsel for confidential witnesses who provided information used in the Amended Complaint ($1,309.00). ¶79.

The remaining expenses for which Lead Counsel seeks payment were necessary for the successful prosecution and settlement of the claims and are of the type for which payment is routinely ordered.  *See GM,* 315 F.R.D. at 245.

The amount of Litigation Expenses requested is less than the $125,000 maximum amount stated in the Notice.  *See* 5-A ¶¶4 and 34.  And, as set forth above, to date, there have been no objections to the maximum expense amount set forth in the Notice.

## CONCLUSION

For the reasons discussed above, Lead Counsel respectfully requests that the Court award: (i) Lead Counsel 30% of the Settlement Fund as attorneys' fees; and (ii) Litigation Expenses incurred by Plaintiffs' Counsel in the amount of $59,615.60, plus accrued interest.

Dated:  November 2, 2022                      Respectfully submitted,

*/s/ Michael P. Canty*                         Kelly E. Kane (P81912)
**LABATON SUCHAROW LLP**        **CLARK HILL PLC**
Michael P. Canty                               Woodward Ave
Thomas G. Hoffman, Jr.                     Suite 3500
Charles J. Stiene                                Detroit, Michigan 48226
140 Broadway                                    Tel.: (313) 309-9495
New York, New York 10005               Fax: (313) 309-6875
Tel.: (212) 907-0700                           Email: kkane@clarkhill.com
Fax: (212) 818-0477
mcanty@labaton.com                         **CLARK HILL PLC**
thoffman@labaton.com                       Ronald A. King (P45088)

- 23 -

- 24 -

cstiene@labaton.com

*Lead Counsel for Lead Plaintiffs and the Proposed Class*

212 E. Cesar Chavez Ave
Lansing, Michigan 48906
Tel.: (517) 318-3015
Fax: (517) 318-3068
rking@clarkhill.com

*Liaison Counsel for Lead Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*s/ Michael P. Canty*
Michael P. Canty
