# Exhibit 5

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| **PALM TRAN, INC. AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CREDIT ACCEPTANCE CORPORATION, BRETT A. ROBERTS, and KENNETH S. BOOTH,**<br><br>**Defendants.** | **Case No.: 2:20-cv-12698LVP-EAS** |

### DECLARATION OF LUIGGY SEGURA REGARDING (A) MAILING OF THE NOTICE PACKET; (B) PUBLICATION OF THE SUMMARY NOTICE; AND (C) REPORT ON REQUESTS FOR EXCLUSION TO DATE

I, Luiggy Segura, declare as follows:

1.     I am the Vice President of Securities Class Actions at JND Legal Administration ("JND").  Pursuant to paragraph 8 of the Court's September 19, 2022 Order Granting Motion for Preliminary Approval of Class Action Settlement (ECF No. 42) and Certifying Settlement Class (the "Preliminary Approval Order"), JND was appointed to act

as the Claims Administrator in connection with the above-captioned Action.[1]  I submit this Declaration in order to provide the Court and the Parties with information regarding the mailing of the Notice of Pendency and Proposed Settlement of Class Action and Motion for Attorneys' Fees and Expenses (the "Notice"), the Proof of Claim and Release Form (the "Claim Form" and collectively with the Notice the "Notice Packet"); the publication of the Summary Notice of Pendency and Proposed Settlement of Class Action and Motion for Attorneys' Fees and Expenses ("Summary Notice"); as well as other status updates regarding the settlement-administration process, including a report on exclusions received to date.

2.      I am over 21 years of age and am not a party to the Action.  I am very familiar with all of JND's work on this administration. The following statements are based on my personal knowledge and information provided to me by other experienced JND employees. If called as a witness, I could and would testify competently thereto.

## DISSEMINATION OF THE NOTICE PACKET

3.      Pursuant to the Preliminary Approval Order, JND was responsible for disseminating the Notice Packet to potential members of the Settlement Class.  A copy of the Notice Packet is attached hereto as Exhibit A.

---

[1]  All capitalized terms unless defined herein are defined in the Stipulation and Agreement of Settlement ("Stipulation"), dated August 24, 2022, and the Preliminary Approval Order, dated September 19, 2022.

4. On September 23, 2022, JND received two files from Lead Counsel, forwarded from counsel for the Defendants, containing transfer agent records for Credit Acceptance, which identified shareholders of Credit Acceptance common stock during the Class Period (*i.e.*, the period of May 4, 2018 through August 28, 2020, inclusive). JND extracted mailing records from the files received and, after clean-up and de-duplication, there remained a total of 342 unique names and addresses (the "Class List"). Prior to mailing the Notice Packet to the Class List, JND verified the mailing records through the National Change of Address ("NCOA") database to ensure the most current address was being used.

5. JND also researched filings with the U.S. Securities and Exchange Commission ("SEC") on Forms 13-F to identify additional institutions or entities that may have purchased Credit Acceptance publicly traded common stock during the Class Period. As a result of these efforts, an additional 527 address records were added to the Class List.

6. On October 3, 2022, JND caused the Notice Packet to be mailed via First-Class mail, postage prepaid, to the 869 names and addresses contained on the Class List.

7. As in most securities class actions, a large majority of potential Settlement Class Members are beneficial purchasers whose securities are held in "street name," *i.e.*, the securities are purchased by brokerage firms, banks, institutions, or other third-party nominees in the name of the nominee, on behalf of the beneficial purchasers. JND maintains a proprietary database with the names and addresses of the most common banks and

brokerage firms, nominees and known third party filers ("Broker Database").  At the time of the initial mailing, the Broker Database contained 4,078 mailing addresses.  On October 3, 2022, JND caused the Notice Packet to be mailed via First-Class mail, postage prepaid, to the 4,078 mailing records contained in the Broker Database.

8.     In total, 4,947 Notice Packets were mailed via First-Class mail to potential Settlement Class Members and nominees in connection with the above-described initial mailing process (the "Initial Mailing").

9.     JND also provided a copy of the Notice Packet to the Depository Trust Company ("DTC") for posting on its Legal Notice System ("LENS").  The LENS may be accessed by any broker or other nominee that is a participant in DTC's security system.  The Notice was posted on DTC's LENS on September 30, 2022.

10.    The Notice directed all those who purchased or otherwise acquired shares of Credit Acceptance publicly traded common stock during the period from May 4, 2018 through August 28, 2020, inclusive for the benefit of individuals or entities other than themselves to either; (a) within ten (10) calendar days of receipt of the Notice, provide a list of the names and addresses of all such beneficial owners to the Claims Administrator; or (b) within ten (10) calendar days of receipt of the Notice, request from the Claims Administrator sufficient copies of the Notice Packet to forward to all such beneficial owners and within ten (10) calendar days of receipt of those Notice Packets, forward them to all such beneficial owners.

4

11.     Since the Initial Mailing, JND has received an additional 27,197 unique names and addresses of potential Settlement Class Members from individuals, entities or nominees requesting that the Notice Packet be mailed to such persons or entities.  JND has also received requests from nominees for 33,369 Notice Packets, in bulk, for forwarding directly by the nominees to their customers.  All requests have been, and will continue to be, complied with and addressed in a timely manner.

12.     As a result of the efforts described above, as of October 31, 2022, an aggregate of 65,513 Notice Packets have been disseminated to potential Settlement Class Members and nominees.

## PUBLICATION OF THE SUMMARY NOTICE

13.     Pursuant to Paragraph 11 of the Preliminary Approval Order, the Summary Notice was to be published in *The Wall Street Journal* and be transmitted over *PR Newswire* within fourteen (14) days of the Notice Date.  Accordingly, JND caused the Summary Notice (a) to be published in *The Wall Street Journal* on October 17, 2022 and (b) to be transmitted over *PRNewswire* on October 17, 2022.  Attached hereto as Exhibit B are confirmations of *The Wall Street Journal* and *PRNewswire* publications.

## ESTABLISHMENT OF CALL CENTER

14.     Beginning on or about September 30, 2022, JND established and continues to maintain a toll-free telephone number, 877-654-1993, for Settlement Class Members to call and obtain information about the Settlement and/or request a Notice Packet. As of October

31, 2022, JND received a total of 39 calls to the telephone hotline. JND has promptly responded to each telephone inquiry and will continue to address potential Settlement Class Members' inquiries.

## ESTABLISMENT OF THE SETTLEMENT WEBSITE

15.     To further assist potential Settlement Class Members, JND, in coordination with Lead Counsel, designed, implemented and currently maintains a website dedicated to the Settlement, www.CreditAcceptanceSecuritiesSettlement.com (the "Settlement Website").  The Settlement Website became operational on or about September 30, 2022, and is accessible 24 hours a day, 7 days a week.  Among other things, the Settlement Website includes general information regarding the litigation and advises potential Settlement Class Members of the exclusion, objection and claims filling deadlines.  Visitors to the Settlement Website can download copies of the Notice and Claim Form and relevant Court documents.  JND will continue operating, maintaining and, as appropriate, updating the Settlement Website.  As of October 31, 2022, the Settlement Website has received 754 visitors.

## REPORT ON EXCLUSION REQUESTS RECEIVED TO DATE

16.     The Notice informed potential Settlement Class Members that requests for exclusion from the Settlement Class are to be mailed to Credit Acceptance Securities Litigation, c/o JND Legal Administration, P.O. Box 91300, Seattle, WA 98111, such that they are received no later than November 16, 2022.  The Notice also set forth the

information that must be included in each request for exclusion. JND monitors all mail delivered to the P.O. Box for the Settlement. As of October 31, 2022, JND has not received any requests for exclusion.

17. JND will submit a supplemental declaration after the November 16, 2022 exclusion deadline addressing any requests for exclusion received.

## CLAIM FILING STATUS

18. The Notice informed Settlement Class Members that in order to qualify for a payment from the Net Settlement Fund, a Claim Form must be submitted by December 2, 2022. JND is currently processing Claim Forms received and will provide information regarding the claims submitted in our supplemental declaration, which will be filed with the Court on or before November 30, 2022.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on November 2, 2022 at New Hyde Park New York.

_____
Luiggy Segura

7

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| PALM TRAN, INC. AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>CREDIT ACCEPTANCE CORPORATION, BRETT A. ROBERTS, and KENNETH S. BOOTH,<br><br>        Defendants. | Case No. 20-cv-12698<br>Honorable Linda V. Parker |

**NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION AND**
**MOTION FOR ATTORNEYS' FEES AND EXPENSES**

If you purchased or otherwise acquired the publicly traded common stock of Credit Acceptance Corporation during the period from May 4, 2018 through August 28, 2020, inclusive (the "Class Period") and were damaged thereby, you may be entitled to a payment from a class action settlement.

*A Federal Court authorized this Notice.  This is **not** a solicitation from a lawyer.*

- This Notice describes important rights you may have and what steps you must take if you wish to participate in the Settlement of this securities class action, wish to object, or wish to be excluded from the Settlement Class.[1]

- If approved by the Court, the proposed Settlement will create a $12 million cash fund, plus earned interest, if any, for the benefit of Settlement Class Members after the deduction of Court-approved fees, expenses, and Taxes.  This is an average recovery of approximately $1.95 per allegedly damaged share before deductions for awarded attorneys' fees and litigation expenses, and $1.34 per allegedly damaged share after deductions for awarded attorneys' fees and Litigation Expenses, as discussed more below.

- The Settlement resolves claims by Court-appointed Lead Plaintiffs Ontario Provincial Council of Carpenters' Pension Trust Fund and Millwright Regional Council of Ontario Pension Trust Fund ("Lead Plaintiffs") that have been asserted on behalf of the Settlement Class (defined below) against Defendants Credit Acceptance Corporation ("Credit Acceptance" or the "Company"), Brett A. Roberts and Kenneth S. Booth (collectively, the "Individual Defendants" and, with Credit Acceptance, "Defendants" and, together with Lead Plaintiffs, the

---

[1] The terms of the Settlement are in the Stipulation and Agreement of Settlement, dated as of August 24, 2022 (the "Stipulation"), which can be viewed at www.CreditAcceptanceSecuritiesSettlement.com.  All capitalized terms not defined in this Notice have the same meanings as in the Stipulation.

1

"Parties").  It avoids the costs and risks of continuing the litigation; pays money to eligible investors; and releases the Released Defendant Parties (defined below) from liability.

**If you are a Settlement Class Member, your legal rights will be affected by this Settlement whether you act or do not act.**

**Please read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM ON OR BEFORE DECEMBER 2, 2022** | The only way to get a payment.  *See* Question 8 for details. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS ON OR BEFORE NOVEMBER 16, 2022** | Get no payment.  This is the only option that, assuming your claim is timely brought, might allow you to ever bring or be part of any other lawsuit against Defendants and/or the other Released Defendant Parties concerning the Released Claims.  *See* Question 10 for details. |
| **OBJECT ON OR BEFORE NOVEMBER 16, 2022** | Write to the Court about why you do not like the Settlement, the Plan of Allocation for distributing the proceeds of the Settlement, and/or Lead Counsel's Fee and Expense Application.  If you object, you will still be in the Settlement Class.  *See* Question 14 for details. |
| **PARTICIPATE IN A HEARING ON DECEMBER 7, 2022 AND FILE A NOTICE OF INTENTION TO APPEAR BY NOVEMBER  16, 2022** | Ask to speak to the Court at the Settlement Hearing about the Settlement.  *See* Question 18 for details. |
| **DO NOTHING** | Get no payment.  Give up rights.  Still be bound by the terms of the Settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained below.

- The Court in charge of this case still has to decide whether to approve the proposed Settlement. Payments will be made to Settlement Class Members who timely submit valid Claim Forms, if the Court approves the Settlement and after any appeals are resolved.

## PSLRA SUMMARY OF THE NOTICE

### Statement of the Settlement Class's Recovery

1.      Lead Plaintiffs have entered into the proposed Settlement with Defendants which, if approved by the Court, will resolve the Action in its entirety.  Subject to Court approval, Lead Plaintiffs, on behalf of the Settlement Class, have agreed to settle the Action in exchange for a payment of $12,000,000 in cash (the "Settlement Amount"), which will be deposited into an interest-bearing Escrow Account (the "Settlement Fund").  Based on Lead Plaintiffs' damages expert's estimate of the number of shares of Credit Acceptance publicly traded common stock eligible to participate in the Settlement, and assuming that all investors eligible to participate in the Settlement do so, it is estimated that the average recovery, before deduction of any Court-approved fees and expenses, such as attorneys' fees, Litigation Expenses, awards to Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Taxes, and Notice and Administration Expenses, would be approximately $1.95 per allegedly damaged share.[2]  If the Court approves Lead Counsel's Fee and Expense Application (discussed below), the average recovery would be approximately $1.34 per allegedly damaged share.  **These average recovery amounts are only estimates and Settlement Class Members may recover more or less than these estimates.**  A Settlement Class Member's actual recovery will depend on, for example: (i) the number of claims submitted; (ii) the amount of the Net Settlement Fund; (iii) when and how many shares of Credit Acceptance publicly traded common stock the Settlement Class Member purchased during the Class Period; and (iv) whether and when the Settlement Class Member sold Credit Acceptance publicly traded common stock.  *See* the Plan of Allocation beginning on page 14 for information on the calculation of your Recognized Claim.

### Statement of Potential Outcome of Case if the Action Continued to Be Litigated

2.      The Parties disagree about both liability and damages and do not agree about the amount of damages that would be recoverable if Lead Plaintiffs were to prevail on each claim. The issues that the Parties disagree about include, for example: (i) whether Defendants made any statements or omitted any facts that were materially false or misleading, or otherwise actionable under the federal securities laws; (ii) whether any such statements or omissions were made with the requisite level of intent or recklessness; (iii) the amounts by which the price of Credit Acceptance publicly traded common stock was allegedly artificially inflated, if at all, during the Class Period; and (iv) the extent to which factors unrelated to the alleged statements or omissions, such as general market, economic, and industry conditions, influenced the trading prices of Credit Acceptance publicly traded common stock during the Class Period.

3.      Defendants have denied and continue to deny any and all allegations of wrongdoing or fault asserted in the Action, deny that they have committed any act or omission giving rise to any liability or violation of law, and deny that Lead Plaintiffs and the Settlement Class have suffered any loss attributable to Defendants' actions or omissions.

---

[2] An allegedly damaged share might have been traded, and potentially damaged, more than once during the Class Period, and the average recovery indicated above represents the estimated average recovery for each share that allegedly incurred damages.

**Statement of Attorneys' Fees and Expenses Sought**

4.        Lead Counsel will apply to the Court, on behalf of all Plaintiffs' Counsel, for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 30% of the Settlement Fund, *i.e.,* $3,600,000.00, plus accrued interest at the same rate earned by the Settlement Fund, if any.[3]   Lead Counsel will also apply for payment of Litigation Expenses incurred in prosecuting the Action in an amount not to exceed $125,000, plus accrued interest at the same rate earned by the Settlement Fund, which may include an application pursuant to the PSLRA for the reasonable costs and expenses (including lost wages) of Lead Plaintiffs directly related to their representation of the Settlement Class.  If the Court approves Lead Counsel's Fee and Expense Application in full, the average amount of fees and expenses is estimated to be approximately $0.61 per allegedly damaged share of Credit Acceptance publicly traded common stock.   A   copy   of   the   Fee   and   Expense   Application   will   be   posted   on www.CreditAcceptanceSecuritiesSettlement.com after it has been filed with the Court.

**Reasons for the Settlement**

5.        For Lead Plaintiffs, the principal reason for the Settlement is the guaranteed cash benefit to the Settlement Class.  This benefit must be compared to the uncertainty of being able to prove the allegations in the Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"); the risk that the Court may grant the motion to dismiss filed by Defendants; the uncertainty of a greater recovery after a trial and appeals; and the difficulties and delays inherent in such litigation.

6.        For Defendants, who deny all allegations of wrongdoing or liability whatsoever and deny that Settlement Class Members were damaged, the principal reasons for entering into the Settlement are to end the burden, expense, uncertainty, and risk of further litigation.

**Identification of Representatives**

7.        Lead Plaintiffs and the Settlement Class are represented by Lead Counsel: Michael P. Canty, Esq., Labaton Sucharow LLP, 140 Broadway, New York, NY 10005, (888) 219-6877, settlementquestions@labaton.com.

8.        Further information regarding the Action, the Settlement, and this Notice may be obtained by contacting the Claims Administrator: info@CreditAcceptanceSecuritiesSettlement.com, (877) 654-1993, www.CreditAcceptanceSecuritiesSettlement.com.

**Please Do Not Call the Court with Questions About the Settlement.**

**BASIC INFORMATION**

| 1. **Why did I get this Notice?** |
| --- |

9.        The Court authorized that this Notice be sent to you because you or someone in your family may have purchased or otherwise acquired Credit Acceptance publicly traded common stock during the period from May 4, 2018 through August 28, 2020, inclusive (the "Class Period"). **Receipt of this Notice does not mean that you are a Member of the Settlement Class or that you will be entitled to receive a payment.  The Parties do not have access to your individual**

---

[3]    Plaintiffs' Counsel are Labaton Sucharow LLP, Clark Hill PLC, and Himelfarb Proszanski.

4

Questions? Visit www.CreditAcceptancesSecuritiesSettlement.com or call toll-free at (877) 654-1993

investment information.  **If you wish to be eligible for a payment, you are required to submit the Claim Form that is being distributed with this Notice.**  *See* **Question 8 below.**

10.     The Court directed that this Notice be sent to Settlement Class Members because they have a right to know about the proposed Settlement of this class action lawsuit, and about all of their options, before the Court decides whether to approve the Settlement.

11.     The Court in charge of the Action is the United States District Court for the Eastern District of Michigan, and the case is captioned *Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan v. Credit Acceptance Corporation,* No. 2:20-cv-12698-LVP-EAS.  The Action is assigned to the Honorable Linda V. Parker, United States District Judge.

### 2.   How do I know if I am part of the Settlement Class?

12.     By the Preliminary Approval Order, the Court preliminarily certified the Action as a class action on behalf of the Settlement Class.  Everyone who fits the following description is a Settlement Class Member and subject to the Settlement unless they are an excluded person (*see* Question 3 below) or take steps to exclude themselves from the Settlement Class (*see* Question 10 below):

**All persons and entities who or which purchased or otherwise acquired the publicly traded common stock of Credit Acceptance during the period from May 4, 2018 through August 28, 2020, inclusive, and who were damaged thereby.**

13.     If one of your mutual funds purchased Credit Acceptance publicly traded common stock during the Class Period, that does not make you a Settlement Class Member, although your mutual fund may be.  You are a Settlement Class Member only if you individually purchased Credit Acceptance publicly traded common stock during the Class Period.  Check your investment records or contact your broker to see if you have any eligible purchases.  The Parties do not independently have access to your trading information.

### 3.   Are there exceptions to being included?

14.     Yes.   There are some individuals and entities who are excluded from the Settlement Class by definition.  Excluded from the Settlement Class are: (i) Defendants; (ii) members of the Immediate Family of each of the Individual Defendants; (iii) any person who was an employee, officer or director of Credit Acceptance during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has a controlling interest; (v) any subsidiary or affiliate of Credit Acceptance; and (vi) the legal representatives, heirs, successors-in-interest, or assigns of any such excluded person or entity, in their respective capacity as such.  Also excluded from the Settlement Class are any persons or entities who or which exclude themselves by submitting a timely and valid request for exclusion in accordance with the procedures described in Question 10 below.

### 4.   Why is this a class action?

15.     In a class action, one or more persons or entities (in this case, Lead Plaintiffs), sue on behalf of people and entities who have similar claims.  Together, these people and entities are a "class," and each is a "class member."  A class action allows one court to resolve, in a single case, many similar claims that, if brought separately by individual people, might be too small

5

Questions? Visit www.CreditAcceptancesSecuritiesSettlement.com or call toll-free at (877) 654-1993

economically to litigate.  One court resolves the issues for all class members at the same time, except for those who exclude themselves, or "opt-out," from the class.  In this Action, the Court has appointed Ontario Provincial Council of Carpenters' Pension Trust Fund and Millwright Regional Council of Ontario Pension Trust Fund to serve as Lead Plaintiffs and Labaton Sucharow LLP to serve as Lead Counsel.

---

**5.  What is this case about and what has happened so far?**

16.  On October 2, 2020, a securities class action complaint was filed in this Court by Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan on behalf of investors in Credit Acceptance common stock, styled *Palm Tran, Inc. Amalgamated Transit Union Loc. 1577 Pension Plan v. Credit Acceptance Corp.*, No. 20-CV-12698 (E.D. Mich.) (the "Action").  The complaint asserted claims: (i) against all Defendants for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder; and (ii) against all Individual Defendants for violations of Section 20(a) of the Exchange Act.

17.  On December 1, 2020, Ontario Provincial Council of Carpenters' Pension Trust Fund and Millwright Regional Council of Ontario Pension Trust Fund filed a Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel.  On May 28, 2021, the Court issued an Opinion and Order (i) appointing Ontario Provincial Council of Carpenters' Pension Trust Fund and Millwright Regional Council of Ontario Pension Trust Fund as Lead Plaintiffs; and (ii) appointing Labaton Sucharow as Lead Counsel and Clark Hill as Liaison Counsel.

18.  Lead Plaintiffs maintain that, through Lead Counsel, they continued their investigation into the claims alleged in the initial complaint, for the purpose of drafting a comprehensive consolidated complaint and otherwise.  This process included, among other things, a comprehensive review of: (i) the Company's filings with the U.S. Securities and Exchange Commission ("SEC"); (ii) press releases and other publications disseminated by the Company; (iii) shareholder communications, conference calls and postings on Credit Acceptance's website concerning the Company's public statements; (iv) research reports issued by financial analysts concerning the Company; (v) an enforcement action filed against the Company by the Massachusetts Attorney General; (vi) public records produced by the SEC and the Massachusetts Attorney General's Office; (vii) documents produced in response to public record requests; (viii) other publicly available information concerning Defendants; and (ix) the applicable law governing the claims and potential defenses.  Additionally, as part of its investigation, Lead Counsel maintains that it contacted 143 former Credit Acceptance employees who potentially had knowledge of the alleged events, and conducted interviews with 31 of them.  Lead Counsel also maintains that it consulted with an expert on valuation and damages and loss causation issues.

19.  On July 22, 2021, Lead Plaintiffs filed an Amended Class Action Complaint for Violations of the Federal Securities Laws (the Complaint), which is the operative complaint in this Action.  The Complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC.

20.  In January 2022, Lead Plaintiffs and Defendants engaged Robert A. Meyer, a well-respected and highly experienced mediator, to assist them in exploring a potential negotiated resolution of the Action.  On April 1, 2022, Lead Plaintiffs and Defendants met with Mr. Meyer in an attempt to reach a settlement.  The mediation involved an extended effort to settle the claims and was preceded by the exchange of mediation submissions and other information.  Lead

Plaintiffs and Defendants reached an agreement in principle to settle the claims against the Defendants on June 14, 2022, subject to the negotiation of the terms of a Stipulation and Agreement of Settlement and approval by the Court.

21.     The Stipulation (together with the exhibits thereto) reflects the final and binding agreement between the Parties.

**6.   What are the reasons for the Settlement?**

22.     The Court did not finally decide in favor of Lead Plaintiffs or Defendants.  Instead, both sides agreed to a settlement.  Lead Plaintiffs and Lead Counsel believe that the claims asserted in the Action have merit.  They recognize, however, the expense and length of continued proceedings needed to pursue the claims through trial and appeals, as well as the difficulties in establishing liability.  Assuming the claims proceeded to trial, the Parties would present factual and expert testimony on each of the disputed issues, and there is risk that the Court or jury would resolve these issues unfavorably against Lead Plaintiffs and the Settlement Class.  In light of the Settlement and the guaranteed cash recovery to the Settlement Class, Lead Plaintiffs and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

23.     Throughout the litigation, Defendants have denied and continue to deny any and all wrongdoing whatsoever, including each and every one of the claims alleged by Lead Plaintiffs in the Action, all claims in the Complaint, and any allegation that they have committed any act or omission giving rise to any liability or violation of law.  Defendants deny the allegations that they made any material misstatements or omissions; that any Member of the Settlement Class has suffered damages; that the prices of Credit Acceptance publicly traded common stock were artificially inflated by reason of the alleged misrepresentations, omissions, or otherwise; or that Members of the Settlement Class were harmed by the conduct alleged.  Nonetheless, Defendants have agreed to the Settlement to eliminate the burden and expense of continued litigation, and the Settlement may not be construed as an admission of any wrongdoing by Defendants in this or any other action or proceeding.

**THE SETTLEMENT BENEFITS**

**7.   What does the Settlement provide?**

24.     In exchange for the Settlement and the release of the Released Claims against the Released Defendant Parties (*see* Question 9 below), Defendants have agreed to cause a $12 million cash payment to be made, which, along with any interest earned, will be distributed after deduction of Court-awarded attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court (the "Net Settlement Fund"), to Settlement Class Members who submit valid and timely Claim Forms and are found to be eligible to receive a distribution from the Net Settlement Fund.

**8.   How can I receive a payment?**

25.     To qualify for a payment from the Net Settlement Fund, you must submit a timely and valid Claim Form.  A Claim Form is included with this Notice.  You may also obtain one from the website dedicated to the Settlement: www.CreditAcceptanceSecuritiesSettlement.com, or submit

7

a claim online at www.CreditAcceptanceSecuritiesSettlement.com.  You can also request that a Claim Form be mailed to you by calling the Claims Administrator toll-free at (877) 654-1993.

26.        Please read the instructions contained in the Claim Form carefully, fill out the Claim Form, include all the documents the form requests, sign it, and mail or submit it to the Claims Administrator so that it is **postmarked or received no later than December 2, 2022.**

| **9.  What am I giving up to receive a payment and by staying in the Settlement Class?** |
| --- |

27.        If you are a Settlement Class Member and do not timely and validly exclude yourself from the Settlement Class, you will remain in the Settlement Class and that means that, upon the "Effective Date" of the Settlement, you and the other "Releasing Plaintiff Parties" will release all "Released Claims" against the "Released Defendant Parties."  All of the Court's orders in the Action, whether favorable or unfavorable, will apply to you and legally bind you.

(a)        **"Released Claims"** means, to the fullest extent that the law permits their release, any and all claims, rights, liabilities, suits, actions, appeals, debts, obligations, demands, damages (including, without limitation, compensatory, punitive, exemplary, rescissory, direct, consequential, or special damages, and restitution and disgorgement), losses, penalties, costs, expenses, injunctive relief, attorneys' fees, expert or consulting fees, prejudgment interest, indemnities, judgments and causes of action of any nature whatsoever, whether known or Unknown (as defined below), contingent or absolute, mature or not mature, liquidated or unliquidated, accrued or not accrued, concealed or hidden, regardless of legal or equitable theory and whether arising under federal, state, local, common, statutory, administrative, or foreign law, including federal securities laws and any state disclosure laws, any other law, rule, ordinance, administrative provision or regulation, whether individual, direct, class, representative, legal, equitable, or any other type or in any other capacity, that:  (a) were set forth, alleged or referred to in the Action; or (b) could have been asserted in the Action or in any forum, domestic or foreign, by Lead Plaintiffs or any other Settlement Class Member arising out of, based upon, or relating in any way to both (i) the purchase, acquisition, sale, or disposition of Credit Acceptance publicly traded common stock during the Class Period and (ii) any of the allegations, acts, transactions, facts, events, matters, occurrences, statements, representations, or omissions involved, set forth, alleged or referred to in the Action.  For the avoidance of doubt, Released Claims do not include: (i) claims to enforce the Settlement; (ii) claims or rights to a recovery from any governmental investigation or proceeding, if any, in any criminal or civil action against any of the Released Defendant Parties; or (iii) the claims of any Person who timely and validly requests exclusion from the Settlement Class.

(b)        **"Released Defendant Parties"** means Defendants and each of their respective former, present or future parents, subsidiaries, divisions, controlling persons, associates, related entities and affiliates and each and all of their respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors (including financial or investment advisors), accountants, auditors, consultants, underwriters, investment bankers, commercial bankers, general or limited partners or partnerships, limited liability companies, members, joint ventures and insurers and reinsurers of each of them, in their capacities as such; and the predecessors, successors, assigns, estates, Immediate Family, heirs, executors, trusts, trustees, administrators, agents, legal representatives, and assignees of each of them, in their capacities as such.

(c)      "**Unknown Claims**" means any and all Released Claims that the Releasing Plaintiff Parties do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, and any and all Released Defendants' Claims that any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Plaintiff Parties, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including the decision to object to the terms of the Settlement or to exclude himself, herself, or itself from the Settlement Class.  With respect to any and all Released Claims and Released Defendants' Claims, the Parties stipulate and agree that, upon the Effective Date, Lead Plaintiffs and Defendants shall expressly, and each Releasing Plaintiff Party shall be deemed to have, and by operation of the Judgment or Alternative Judgment shall have expressly waived and relinquished any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or foreign law, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Releasing Plaintiff Parties or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows, suspects, or believes to be true with respect to the Action, the Released Claims, or the Released Defendants' Claims, but the Lead Plaintiffs and Defendants shall expressly, fully, finally, and forever settle and release, and each Releasing Plaintiff Party shall be deemed to have fully, finally, and forever settled and released, and upon the Effective Date and by operation of the Judgment or Alternative Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims and Released Defendants' Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.  Lead Plaintiffs and Defendants acknowledge, and all Releasing Plaintiff Parties by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Released Defendants' Claims was separately bargained for and was a material element of the Settlement.

28.      The "Effective Date" will occur when an Order entered by the Court approving the Settlement becomes Final and is not subject to appeal.  Upon the "Effective Date," the Released Defendant Parties will also provide a release of any claims against the Released Plaintiff Parties arising out of or related to the institution, prosecution, or settlement of the claims in the Action.

## EXCLUDING YOURSELF FROM THE SETTLEMENT CLASS

29.      If you want to keep any right you may have to sue or continue to sue Defendants and the other Released Defendant Parties on your own concerning the Released Claims, then you must take steps to remove yourself from the Settlement Class.  This is called excluding yourself or "opting out."  **Please note:** If you decide to exclude yourself from the Settlement Class, there is a risk that any lawsuit you may file may be dismissed, including because the suit is not filed within the applicable time periods required for filing suit.  Defendants have the option to terminate the Settlement if a certain amount of Settlement Class Members request exclusion.

| 10. How do I exclude myself from the Settlement Class? |
|---|

30.     To exclude yourself from the Settlement Class, you must mail a signed letter stating that you request to be "excluded from the Settlement Class in *Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan v. Credit Acceptance Corporation,* No. 2:20-cv-12698-LVP-EAS (E.D. Mich.)."  You cannot exclude yourself by telephone or e-mail.  Each request for exclusion must also: (i) state the name, address, and telephone number of the person or entity requesting exclusion; (ii) state the number of shares of Credit Acceptance publicly traded common stock the person or entity purchased, acquired, and sold during the Class Period, as well as the dates and prices of each such purchase, acquisition, and sale; and (iii) be signed by the Person requesting exclusion or an authorized representative.  A request for exclusion must be mailed so that it is **received no later than November 16, 2022** at:

> Credit Acceptance Securities Litigation
> c/o JND Legal Administration
> P.O. Box 91300
> Seattle, WA 98111

This information is needed to determine whether you are a member of the Settlement Class.  Your exclusion request must comply with these requirements in order to be valid.

31.     If you ask to be excluded, do not submit a Claim Form because you cannot receive any payment from the Net Settlement Fund.  Also, you cannot object to the Settlement because you will not be a Settlement Class Member and the Settlement will not affect you.  If you submit a valid exclusion request, you will not be legally bound by anything that happens in the Action, and you may be able to sue (or continue to sue) Defendants and the other Released Defendant Parties in the future.

| 11. If I do not exclude myself, can I sue Defendants and the other Released Defendant Parties for the same reasons later? |
|---|

32.     No.  Unless you properly exclude yourself, you will give up any rights to sue Defendants and the other Released Defendant Parties for any and all Released Claims.  If you have a pending lawsuit against any of the Released Defendant Parties, **speak to your lawyer in that case immediately**.  You must exclude yourself from this Class to continue your own lawsuit, assuming that lawsuit was timely brought.  Remember, the exclusion deadline is **November 16**, **2022.**

## THE LAWYERS REPRESENTING YOU

| 12. Do I have a lawyer in this case? |
|---|

33.     Labaton Sucharow LLP is Lead Counsel in the Action and represents all Settlement Class Members.  You will not be separately charged for the work of Lead Counsel and the other Plaintiffs' Counsel.  The Court will determine the amount of attorneys' fees and Litigation Expenses, which will be paid from the Settlement Fund.  If you want to be represented by your own lawyer, you may hire one at your own expense.

**13. How will the lawyers be paid?**

34.     Lead Counsel, together with other Plaintiffs' Counsel, has been prosecuting the Action on a contingent basis and has not been paid for any of their work.  Lead Counsel will apply to the Court, on behalf of itself and the other Plaintiffs' Counsel firms, for an award of attorneys' fees of no more than 30% of the Settlement Fund, which will include any accrued interest.  Lead Counsel has agreed to share the awarded attorneys' fees with Plaintiffs' Counsel.  Payment to the other Plaintiffs' Counsel firms will in no way increase the fees that are deducted from the Settlement Fund.  Lead Counsel will also seek payment of Litigation Expenses incurred by Plaintiffs' Counsel in the prosecution and settlement of the Action of no more than $125,000, plus accrued interest, if any, which may include an application in accordance with the PSLRA for the reasonable costs and expenses (including lost wages) of Lead Plaintiffs directly related to their representation of the Settlement Class.  As explained above, any attorneys' fees and expenses awarded by the Court will be paid from the Settlement Fund.  Settlement Class Members are not personally liable for any such fees or expenses.

## OBJECTING TO THE SETTLEMENT, THE PLAN OF ALLOCATION, OR THE FEE AND EXPENSE APPLICATION

**14. How do I tell the Court that I do not like something about the proposed Settlement?**

35.     If you are a Settlement Class Member, you can object to the Settlement or any of its terms, the proposed Plan of Allocation of the Net Settlement Fund, and/or Lead Counsel's Fee and Expense Application.  You may write to the Court about why you think the Court should not approve any or all of the Settlement terms or related relief.  If you would like the Court to consider your views, you must file a proper objection within the deadline, and according to the following procedures.

36.     To object, you must send a signed letter stating that you object to the proposed Settlement, the Plan of Allocation, and/or the Fee and Expense Application in "*Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan v. Credit Acceptance Corporation,* No. 2:20-cv-12698-LVP-EAS (E.D. Mich.)."  The objection must also: (i) state the name, address, telephone number, and e-mail address of the objector and must be signed by the objector; (ii) contain a statement of the Settlement Class Member's objection or objections and the specific reasons for the objection, including whether it applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, and any legal and evidentiary support (including witnesses) the Settlement Class Member wishes to bring to the Court's attention; and (iii) include documents sufficient to show the objector's membership in the Settlement Class, including the number of shares of Credit Acceptance publicly traded common stock purchased, acquired, and sold during the Class Period, as well as the dates and prices of each such purchase, acquisition, and sale.  Unless otherwise ordered by the Court, any Settlement Class Member who does not object in the manner described in this Notice will be deemed to have waived any objection and will be foreclosed from making any objection to the proposed Settlement, the Plan of Allocation, and/or Lead Counsel's Fee and Expense Application.  Your objection must be filed with the Court **no later than November 16, 2022 and** be mailed or delivered to the following counsel so that it is **received no later than November 16, 2022.**

| Court | Lead Counsel | Defendants' Counsel Representative |
|---|---|---|
| **Clerk of the Court** <br> United States District Court <br> Eastern District of Michigan <br> Theodore Levin <br> U.S. Courthouse <br> 231 W. Lafayette Blvd. <br> Room 599 <br> Detroit, MI 48226 | **Labaton Sucharow LLP** <br> Michael P. Canty, Esq. <br> 140 Broadway <br> New York, NY 10005 | **Skadden, Arps, Slate Meagher & Flom LLP** <br> Robert A. Fumerton, Esq. <br> Patrick G. Rideout, Esq. <br> One Manhattan West <br> New York, NY 10001 |

37.     You do not need to attend the Settlement Hearing to have your written objection considered by the Court.  However, any Settlement Class Member who has complied with the procedures described in this Question 14 and below in Question 18 may appear at the Settlement Hearing and be heard, to the extent allowed by the Court.  An objector may appear themselves or arrange, at his, her, or its own expense, for a lawyer to represent him, her, or it at the Settlement Hearing. Instructions for participating in the remote Settlement Hearing will be posted at www.CreditAcceptanceSecuritiesSettlement.com and www.labaton.com.

### 15. What is the difference between objecting and seeking exclusion?

38.     Objecting is telling the Court that you do not like something about the proposed Settlement, Plan of Allocation, or Lead Counsel's Fee and Expense Application.  You can still recover money from the Settlement.  You can object *only* if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class.  If you exclude yourself from the Settlement Class, you have no basis to object because the Settlement and the Action no longer affect you.

### THE SETTLEMENT HEARING

### 16. When and where will the Court decide whether to approve the Settlement?

39.     The Court will hold the Settlement Hearing on **December 7, 2022 at 1:00 p.m.**, remotely via Zoom video conference from the Courtroom 206 of the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, MI, 48226. Instructions to join the video conference will be posted on www.CreditAcceptanceSecuritiesSettlement.com and www.labaton.com.

40.     At this hearing, the Honorable Linda V. Parker will consider whether: (i) the Settlement is fair, reasonable, adequate, and should be approved; (ii) the Plan of Allocation is fair and reasonable, and should be approved; and (iii) the application of Lead Counsel for an award of attorneys' fees and payment of Litigation Expenses is reasonable and should be approved.  The Court will take into consideration any written objections filed in accordance with the instructions in Question 14 above.  We do not know how long it will take the Court to make these decisions.

41.     The Court may change the date and time of the Settlement Hearing without another individual notice being sent to Settlement Class Members.  If you want to attend the hearing, you should check with Lead Counsel beforehand to be sure that the date and/or time and procedures

12

for participating have not changed, or periodically check the Settlement website at www.CreditAcceptanceSecuritiesSettlement.com to see if the Settlement Hearing stays as scheduled or is changed.

**17. Do I have to come to the Settlement Hearing?**

42.     No.  Lead Counsel will answer any questions the Court may have.  But, you are welcome to attend at your own expense.  If you submit a valid and timely objection, the Court will consider it and you do not have to come to Court to discuss it.  You may have your own lawyer attend (at your own expense), but it is not required.  If you do hire your own lawyer, he or she must file and serve a Notice of Appearance in the manner described in the answer to Question 18 below **no later than November 16, 2022**.

**18. May I speak at the Settlement Hearing?**

43.     You may ask the Court for permission to speak at the Settlement Hearing.  To do so, you must, **no later than November 16, 2022,** submit a statement that you, or your attorney, intend to appear in "*Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan v. Credit Acceptance Corporation,* No. 2:20-cv-12698-LVP-EAS (E.D. Mich.)."  If you intend to present evidence at the Settlement Hearing, you must also include in your objection (prepared and submitted according to the answer to Question 14 above) the identities of any witnesses you may wish to call to testify and any exhibits you intend to introduce into evidence at the Settlement Hearing.  You may not speak at the Settlement Hearing if you exclude yourself from the Settlement Class or if you have not provided written notice of your intention to speak at the Settlement Hearing in accordance with the procedures described in this Question 18 and Question 14 above.

**IF YOU DO NOTHING**

**19. What happens if I do nothing at all?**

44.     If you do nothing and you are a member of the Settlement Class, you will receive no money from this Settlement and you will be precluded from starting a lawsuit, continuing with a lawsuit, or being part of any other lawsuit against Defendants and the other Released Defendant Parties concerning the Released Claims.  To share in the Net Settlement Fund, you must submit a Claim Form (*see* Question 8 above).  To start, continue, or be a part of any other lawsuit against Defendants and the other Released Defendant Parties concerning the Released Claims, you must exclude yourself from the Settlement Class (*see* Question 10 above).

**GETTING MORE INFORMATION**

**20. Are there more details about the Settlement?**

45.     This Notice summarizes the proposed Settlement.  More details are contained in the Stipulation.  You may review the Stipulation filed with the Court or other documents in the case during business hours at the office of the Clerk of the Court, United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Room 599, Detroit, MI 48226.  (Please check the Court's website, www.mied.uscourts.gov, for information about Court closures before visiting.)  Subscribers to PACER, a fee-based service, can

13

Questions? Visit www.CreditAcceptancesSecuritiesSettlement.com or call toll-free at (877) 654-1993

also view the papers filed publicly in the Action through the Court's on-line Case Management/Electronic Case Files System at https://www.pacer.gov.

46.     You can also get a copy of the Stipulation, and other documents related to the Settlement, as well as additional information about the Settlement by visiting the website dedicated to the Settlement, www.CreditAcceptanceSecuritesSettlement.com.  You may also call the Claims Administrator toll free at (877) 654-1993 or write to the Claims Administrator at Credit Acceptance Securities Litigation, c/o JND Legal Administration, P.O. Box 91300, Seattle, WA 98111.

**Please do not call the Court with questions about the Settlement.**

**PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND**

**21. How will my claim be calculated?**

47.     The Plan of Allocation set forth below is the plan for calculating claims and distributing the proceeds of the Settlement that is being proposed by Lead Plaintiffs and Lead Counsel to the Court for approval.  The Court may approve this Plan of Allocation or modify it without additional notice to the Settlement Class.  Any order modifying the Plan of Allocation will be posted on the Settlement website at: www.CreditAcceptanceSecuritiesSettlement.com.

48.     As noted above, the Settlement Amount and the interest it earns is the "Settlement Fund."  The Settlement Fund, after deduction of Court-approved attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court, is the "Net Settlement Fund."  The Net Settlement Fund will be distributed to members of the Settlement Class who timely submit valid Claim Forms that show a "Recognized Claim" according to the Court-approved Plan of Allocation.  Settlement Class Members who do not timely submit valid Claim Forms will not share in the Net Settlement Fund but will still be bound by the Settlement.

49.     The objective of this Plan of Allocation is to distribute the Net Settlement Fund among those Settlement Class Members who allegedly suffered economic losses as a result of the alleged wrongdoing.  To design this plan, Lead Counsel conferred with Lead Plaintiffs' damages expert.  This plan is intended to be generally consistent with an assessment of, among other things, the damages that Lead Plaintiffs and Lead Counsel believe were recoverable in the Action.  The Plan of Allocation, however, is not a formal damages analysis and the calculations made pursuant to the plan are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial.  The calculations pursuant to the Plan of Allocation are also not estimates of the amounts that will be paid to Authorized Claimants.  An individual Settlement Class Member's recovery will depend on, for example: (i) the total number and value of claims submitted; (ii) when the Claimant purchased Credit Acceptance publicly traded common stock; and (iii) whether and when the Claimant sold his, her, or its shares of Credit Acceptance publicly traded common stock.  The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.  The Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim."

50.     For losses to be compensable damages under the federal securities laws, the disclosure of the allegedly misrepresented information must be the cause of the decline in the price

14

Questions? Visit www.CreditAcceptancesSecuritiesSettlement.com or call toll-free at (877) 654-1993

of the securities at issue.  Lead Plaintiffs allege that Defendants issued false statements and omitted material facts during the Class Period, which allegedly artificially inflated the price of Credit Acceptance publicly traded common stock.  Defendants deny the allegations and the assertion that any damages were suffered by any members of the Settlement Class as a result of their conduct.

51.     In this Action, Lead Plaintiffs allege that corrective information allegedly impacting the price of Credit Acceptance common stock (which is referred to as a "corrective disclosure") was released to the market on January 30, 2020 and August 31, 2020, and allegedly impacted the price of Credit Acceptance common stock on January 31, 2020 and August 31, 2020 in a statistically significant manner by removing the alleged artificial inflation from the share price on those days.  Accordingly, in order to have a compensable loss in this Settlement, shares of Credit Acceptance common stock must have been purchased or otherwise acquired during the Class Period and held through at least one of the alleged corrective disclosure dates listed above.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

52.     Based on the formulas stated below, a "Recognized Loss Amount" will be calculated for each purchase/acquisition of Credit Acceptance publicly traded common stock during the Class Period that is listed on the Claim Form and for which adequate documentation is provided.  If a Recognized Loss Amount calculates to a negative number or zero under the formulas below, that Recognized Loss Amount will be zero.  The sum of a Claimant's Recognized Loss Amounts will be the Claimant's "Recognized Claim."

53.     For purposes of determining whether a Claimant has a "Recognized Claim," if a Claimant has more than one purchase/acquisition or sale of Credit Acceptance publicly traded common stock during the Class Period, all purchases/acquisitions and sales will be matched on a "First In First Out" (FIFO) basis.  Class Period sales will be matched first against any holdings at the beginning of the Class Period and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period.

54.     For each share of Credit Acceptance common stock purchased or otherwise acquired during the Class Period and sold before the close of trading on November 27, 2020, an "Out of Pocket Loss" will be calculated.  Out of Pocket Loss is defined as the purchase price (excluding all fees, taxes, and commissions) minus the sale price (excluding all fees, taxes, and commissions).  To the extent that the calculation of the Out of Pocket Loss results in a negative number, that number shall be set to zero.

55.     **For each share of Credit Acceptance common stock purchased or acquired from May 4, 2018 through and including January 30, 2020, and**:

- A.  Sold before January 31, 2020, the Recognized Loss Amount for each such share shall be zero.
- B.  Sold from January 31, 2020 through August 28, 2020, the Recognized Loss Amount for each such share shall be *the lesser of*:
  1.  $28.65; or
  2.  the Out of Pocket Loss.
- C.  Sold after the close of trading on August 28, 2020 and before the close of trading on November 27, 2020, the Recognized Loss Amount for each such share shall be *the least of*:

1. $91.40; or
2. the actual purchase/acquisition price of each such share *minus* the average closing price from August 31, 2020, up to the date of sale as set forth in **Table 1** below; or
3. the Out of Pocket Loss.

D. Held as of the close of trading on November 27, 2020, the Recognized Loss Amount for each such share shall be *the lesser of*:

1. $91.40; or
2. the actual purchase/acquisition price of each such share *minus* $329.22.[4]

56.     **For each share of Credit Acceptance common stock purchased or acquired from January 31, 2020 through and including August 28, 2020, and**:

A. Sold before August 31, 2020, the Recognized Loss Amount for each such share shall be zero.

B. Sold from August 31, 2020 through the close of trading on November 27, 2020, the Recognized Loss Amount for each such share shall be *the least of*:

1. $62.75; or
2. the actual purchase/acquisition price of each such share *minus* the average closing price from August 31, 2020 up to the date of sale as set forth in **Table 1** below; or
3. the Out of Pocket Loss.

C. Held as of the close of trading on November 27, 2020, the Recognized Loss Amount for each such share shall be *the lesser of*:

1. $62.75; or
2. the actual purchase/acquisition price of each such share *minus* $329.22.[5]

## ADDITIONAL PROVISIONS OF THE PLAN OF ALLOCATION

57.     An Authorized Claimant's Recognized Claim shall be the amount used to calculate the Authorized Claimant's *pro rata* share of the Net Settlement Fund.  If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net

---

[4] Pursuant to Section 21D(e)(1) of the Exchange Act, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the Exchange Act, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Credit Acceptance common stock during the "90-day look-back period," August 31, 2020 through November 27, 2020.  The mean (average) closing price for Credit Acceptance common stock during this 90-day look-back period was $329.22.

[5] As explained in footnote 4 above, pursuant to the Exchange Act, Recognized Loss Amounts are reduced to an appropriate extent by taking into account the closing prices of Credit Acceptance common stock during the 90-day look-back period, August 31, 2020 through November 27, 2020.  The mean (average) closing price for Credit Acceptance common stock during this 90-day look-back period was $329.22.

16

Questions? Visit www.CreditAcceptancesSecuritiesSettlement.com or call toll-free at (877) 654-1993

Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. The *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

58.      If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund shall be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

59.      The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $10.00 or greater. If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

60.      Purchases and sales of Credit Acceptance publicly traded common stock will be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant of shares of Credit Acceptance publicly traded common stock by gift, inheritance, or operation of law during the Class Period will not be deemed an eligible purchase or sale of Credit Acceptance publicly traded common stock for the calculation of a Claimant's Recognized Claim, nor will the receipt or grant be deemed an assignment of any claim relating to the purchase of Credit Acceptance common stock unless (i) the donor or decedent purchased or otherwise acquired the shares during the Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to those shares; and (iii) it is specifically so provided in the instrument of gift or assignment.

61.      In accordance with the Plan of Allocation, the Recognized Loss Amount on any portion of a purchase or acquisition that matches against (or "covers") a "short sale" is zero. The Recognized Loss Amount on a "short sale" is zero that is not covered by a purchase or acquisition is also zero.

62.      In the event that a Claimant has an opening short position in Credit Acceptance common stock at the start of the Class Period, the earliest Class Period purchases or acquisitions shall be matched against such opening short position in accordance with the FIFO matching described above and any portion of such purchases or acquisition that covers such short sales will not be entitled to recovery. In the event that a Claimant newly establishes a short position during the Class Period, the earliest subsequent Class Period purchase or acquisition shall be matched against such short position on a FIFO basis and will not be entitled to a recovery.

63.      Credit Acceptance common stock is the only security eligible for recovery under the Plan of Allocation. With respect to Credit Acceptance common stock purchased or sold through the exercise of an option, the purchase/sale date of the Credit Acceptance common stock is the exercise date of the option and the purchase/sale price is the exercise price of the option.

64.      If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after a reasonable amount of time from the date of initial distribution of the Net Settlement Fund, and after payment of outstanding Notice and Administration Expenses, Taxes, attorneys' fees and expenses, and any awards to Lead Plaintiffs, the Claims Administrator shall, if feasible, reallocate (which reallocation may occur on multiple occasions) such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion until it is no longer economically feasible to do so. Thereafter,

17

any *de minimis* balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses and any awards to Lead Plaintiffs, shall be donated to Consumer Federation of America, or such other secular, non-profit approved by the Court.

65.     Payment pursuant to the Plan of Allocation or such other plan of allocation as may be approved by the Court will be conclusive against all claimants.  No person will have any claim against Lead Plaintiffs, Plaintiffs' Counsel, Lead Plaintiffs' damages expert, the Claims Administrator, or other agent designated by Lead Counsel, arising from determinations or distributions to claimants made substantially in accordance with the Stipulation, the Plan of Allocation approved by the Court, or further orders of the Court.  Lead Plaintiffs, Defendants, Defendants' Counsel, and all other Released Parties will have no responsibility for or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation or the determination, administration, calculation, or payment of any Claim Form or non-performance of the Claims Administrator, the payment or withholding of Taxes owed by the Settlement Fund or any losses incurred in connection therewith.

66.     Each Claimant is deemed to have submitted to the jurisdiction of the United States District Court for the Eastern District of Michigan with respect to his, her, or its claim.

### SPECIAL NOTICE TO SECURITIES BROKERS AND NOMINEES

67.     If you purchased or otherwise acquired Credit Acceptance publicly traded common stock during the Class Period for the beneficial interest of a person or entity other than yourself, the Court has directed that **WITHIN TEN (10) CALENDAR DAYS OF YOUR RECEIPT OF THIS NOTICE**, **YOU MUST EITHER**: (a) provide a list of the names and addresses of all such beneficial owners to the Claims Administrator and the Claims Administrator is ordered to send the Notice and Claim Form promptly to such identified beneficial owners; or (b) request additional copies of this Notice and the Claim Form from the Claims Administrator, which will be provided to you free of charge, and **WITHIN TEN (10) CALENDAR DAYS** of receipt, mail the Notice and Claim Form directly to all the beneficial owners of those shares.  If you choose to follow procedure (b), the Court has also directed that, upon making that mailing, **YOU MUST SEND A STATEMENT** to the Claims Administrator confirming that the mailing was made as directed and keep a record of the names and mailing addresses used.  Nominees shall also provide email addresses for all such beneficial owners to the Claims Administrator, to the extent they are available.  You are entitled to reimbursement from the Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing, including reimbursement of postage expense and the cost of ascertaining the names and addresses of beneficial owners.  Those expenses will be paid upon request and submission of appropriate supporting documentation and timely compliance with the above directives.  All communications concerning the foregoing should be addressed to the Claims Administrator:

Credit Acceptance Securities Litigation
c/o JND Legal Administration
P.O. Box 91300
Seattle, WA 98111

Dated: October 3, 2022                                          BY ORDER OF THE UNITED STATES
                                                                              DISTRICT COURT EASTERN
                                                                              DISTRICT OF MICHIGAN

## TABLE 1

**Credit Acceptance Common Stock Closing Price and Average Closing Price**
**August 31, 2020 – November 27, 2020**

| Date | Closing Price | Average Closing Price Between August 31, 2020 and Date Shown | Date | Closing Price | Average Closing Price Between August 31, 2020 and Date Shown |
|---|---|---|---|---|---|
| 8/31/2020 | $386.80 | $386.80 | 10/15/2020 | $343.63 | $342.28 |
| 9/1/2020 | $374.07 | $380.44 | 10/16/2020 | $333.62 | $342.02 |
| 9/2/2020 | $385.70 | $382.19 | 10/19/2020 | $333.00 | $341.76 |
| 9/3/2020 | $373.95 | $380.13 | 10/20/2020 | $340.03 | $341.72 |
| 9/4/2020 | $375.55 | $379.21 | 10/21/2020 | $337.97 | $341.61 |
| 9/8/2020 | $362.37 | $376.41 | 10/22/2020 | $336.15 | $341.47 |
| 9/9/2020 | $361.14 | $374.23 | 10/23/2020 | $339.64 | $341.42 |
| 9/10/2020 | $343.70 | $370.41 | 10/26/2020 | $334.54 | $341.25 |
| 9/11/2020 | $337.85 | $366.79 | 10/27/2020 | $324.58 | $340.84 |
| 9/14/2020 | $343.56 | $364.47 | 10/28/2020 | $313.36 | $340.19 |
| 9/15/2020 | $336.60 | $361.94 | 10/29/2020 | $318.82 | $339.69 |
| 9/16/2020 | $339.53 | $360.07 | 10/30/2020 | $298.12 | $338.75 |
| 9/17/2020 | $329.68 | $357.73 | 11/2/2020 | $303.13 | $337.96 |
| 9/18/2020 | $319.64 | $355.01 | 11/3/2020 | $301.70 | $337.17 |
| 9/21/2020 | $308.95 | $351.94 | 11/4/2020 | $305.57 | $336.50 |
| 9/22/2020 | $306.43 | $349.10 | 11/5/2020 | $311.11 | $335.97 |
| 9/23/2020 | $297.31 | $346.05 | 11/6/2020 | $312.36 | $335.49 |
| 9/24/2020 | $297.84 | $343.37 | 11/9/2020 | $317.10 | $335.12 |
| 9/25/2020 | $303.29 | $341.26 | 11/10/2020 | $315.66 | $334.74 |
| 9/28/2020 | $321.00 | $340.25 | 11/11/2020 | $314.91 | $334.36 |
| 9/29/2020 | $333.00 | $339.90 | 11/12/2020 | $304.56 | $333.79 |
| 9/30/2020 | $338.64 | $339.85 | 11/13/2020 | $313.28 | $333.41 |
| 10/1/2020 | $347.13 | $340.16 | 11/16/2020 | $315.76 | $333.09 |
| 10/2/2020 | $353.93 | $340.74 | 11/17/2020 | $314.18 | $332.75 |
| 10/5/2020 | $350.00 | $341.11 | 11/18/2020 | $311.62 | $332.38 |
| 10/6/2020 | $334.91 | $340.87 | 11/19/2020 | $307.60 | $331.96 |
| 10/7/2020 | $342.85 | $340.94 | 11/20/2020 | $293.31 | $331.30 |
| 10/8/2020 | $356.44 | $341.50 | 11/23/2020 | $288.29 | $330.58 |
| 10/9/2020 | $353.82 | $341.92 | 11/24/2020 | $307.71 | $330.21 |
| 10/12/2020 | $345.59 | $342.04 | 11/25/2020 | $298.34 | $329.70 |
| 10/13/2020 | $343.48 | $342.09 | 11/27/2020 | $299.55 | $329.22 |
| 10/14/2020 | $346.72 | $342.23 | | | |

Questions? Visit www.CreditAcceptancesSecuritiesSettlement.com or call toll-free at (877) 654-1993

# PROOF OF CLAIM AND RELEASE FORM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**Credit Acceptance Securities Litigation**
**c/o JND Legal Administration**
**P.O. Box 91300**
**Seattle, WA 98111**
**Toll-Free Number: 877-654-1993**
**Email:  info@CreditAcceptanceSecuritiesSettlement.com**
**Website: www.CreditAcceptanceSecuritiesSettlement.com**

# CONTENTS

**02**  **GENERAL INSTRUCTIONS**

**04**  **PART I – CLAIMANT IDENTIFICATION**

**05**  **PART II – SCHEDULE OF TRANSACTIONS IN CREDIT ACCEPTANCE PUBLICLY TRADED COMMON STOCK**

**06**  **CERTIFICATION**

## I.      GENERAL INSTRUCTIONS

1.      To recover as a member of the Settlement Class based on your claims in the class action entitled *Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan v. Credit Acceptance Corporation,* No. 2:20-cv-12698-LVP-EAS (E.D. Mich.) (the "Action"), you must complete and, on page 6 below, sign this Proof of Claim and Release form ("Claim Form").  If you fail to submit a timely and properly addressed (as explained in paragraph 2 below) Claim Form, your claim may be rejected and you may not receive any recovery from the Net Settlement Fund created in connection with the proposed Settlement.  Submission of this Claim Form, however, does not assure that you will share in the proceeds of the Settlement of the Action.

2.      **THIS CLAIM FORM MUST BE SUBMITTED ONLINE AT WWW.CREDITACCEPTANCESECURITIESSETTLEMENT.COM NO LATER THAN DECEMBER 2, 2022 OR, IF MAILED, BE POSTMARKED NO LATER THAN DECEMBER 2, 2022, ADDRESSED AS FOLLOWS:**

Credit Acceptance Securities Litigation
c/o JND Legal Administration
P.O. Box 91300
Seattle, WA 98111

3.      If you are a member of the Settlement Class and you do not timely request exclusion in response to the Notice dated October 3, 2022, you are bound by and subject to the terms of any judgment entered in the Action, including the releases provided therein, WHETHER OR NOT YOU SUBMIT A CLAIM FORM OR RECEIVE A PAYMENT.

## II.     CLAIMANT IDENTIFICATION

4.      If you purchased shares of the publicly traded common stock of Credit Acceptance Corporation ("Credit Acceptance" or the "Company") during the period from May 4, 2018 through August 28, 2020, inclusive (the "Class Period") and held the stock in your name, you are the beneficial owner as well as the record owner. If, however, you purchased Credit Acceptance publicly traded common stock during the Class Period through a third party, such as a brokerage firm, you are the beneficial owner and the third party is the record owner.

5.      Use **Part I** of this form entitled "Claimant Identification" to identify each beneficial owner of Credit Acceptance publicly traded common stock that forms the basis of this claim, as well as the owner of record if different.  THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL OWNERS OR THE LEGAL REPRESENTATIVE OF SUCH OWNERS.

6.      All joint owners must sign this claim.  Executors, administrators, guardians, conservators, legal representatives, and trustees must complete and sign this claim on behalf of persons represented by them and their authority must accompany this claim and their titles or capacities must be stated.  The Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim.  Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

## III.    IDENTIFICATION OF TRANSACTIONS

7.      Use **Part II** of this form entitled "Schedule of Transactions in Credit Acceptance Publicly Traded Common Stock" to supply all required details of your transaction(s) in Credit Acceptance publicly traded common stock.  If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form.  Sign and print or type your name on each additional sheet.

8.      On the schedule(s), provide all of the requested information with respect to your holdings, purchases, and sales of Credit Acceptance publicly traded common stock, whether the transactions resulted in a profit or a loss.  Failure to report all such transactions may result in the rejection of your claim.

9.      The date of covering a "short sale" is deemed to be the date of purchase of Credit Acceptance publicly traded common stock.  The date of a "short sale" is deemed to be the date of sale.

10.     Copies of broker confirmations or other documentation of your transactions must be attached to your claim.  Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.  **THE PARTIES DO NOT HAVE INFORMATION ABOUT YOUR TRANSACTIONS IN CREDIT ACCEPTANCE PUBLICLY TRADED COMMON STOCK.**

11.     **NOTICE REGARDING ELECTRONIC FILES**: Certain Claimants with large numbers of transactions may request to, or may be asked to, submit information regarding their transactions in electronic files.  (This is different than the online claim portal on the Settlement website.)   All such Claimants MUST submit a manually signed paper Claim Form whether or not they also submit electronic copies.  If you wish to submit your claim electronically, you must contact the Claims Administrator at (877) 654-1993 to obtain the required file layout.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues to the claimant a written acknowledgment via email of receipt and acceptance of electronically submitted data with Claim numbers. **Do not assume that your file has been received or processed until you receive this email. If you do not receive such an email within 10 days of your submission, you should contact the electronic filing department at CACSecurities@JNDLA.COM to inquire about your file and confirm it was received and is acceptable.**

# PART I – CLAIMANT IDENTIFICATION

The Claims Administrator will use this information for all communications regarding this Claim Form.  If this information changes, you MUST notify the Claims Administrator in writing at the address above.  Complete names of all persons and entities must be provided.

Beneficial Owner's First Name

MI

Beneficial Owner's Last Name

Co-Beneficial Owner's First Name (if applicable)

MI

Co-Beneficial Owner's Last Name (if applicable)

Entity Name (if claimant is not an individual)

Representative or Custodian Name (if different from Beneficial Owner(s) listed above)

Address1 (street name and number)

Address2 (apartment, unit, or box number)

City

State

ZIP/Postal Code

Foreign Country (only if not USA)

Foreign County (only if not USA)

Social Security Number (last four digits only)

Taxpayer Identification Number (last four digits only)

Telephone Number (home)

Telephone Number (work)

Email Address

Account Number (if filing for multiple accounts, file a separate Claim Form for each account)

Claimant Account Type (check appropriate box):

☐ Individual (includes joint owner accounts)   ☐ Pension Plan   ☐ Trust   ☐ Corporation

☐ Estate   ☐ IRA/401K   ☐ Other (please specify): _____

4

# PART II – SCHEDULE OF TRANSACTIONS IN CREDIT ACCEPTANCE PUBLICLY TRADED COMMON STOCK

| 1. | **BEGINNING HOLDINGS:** State the total number of shares of Credit Acceptance common stock held at the close of trading on May 3, 2018.  If none, write "0" or "Zero." (Must submit documentation.) | | |
|---|---|---|---|

**2. PURCHASES DURING CLASS PERIOD:** Separately list each and every purchase/acquisition of Credit Acceptance common stock from May 4, 2018 through and including August 28, 2020.  (Must submit documentation.)

| Date of Purchase (List Chronologically) (MM/DD/YY) | Number of Shares Purchased | Purchase Price Per Share | Total Purchase Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| /   / | | $ | $ |
| /   / | | $ | $ |
| /   / | | $ | $ |
| /   / | | $ | $ |

| 3. | **PURCHASES DURING 90-DAY LOOKBACK PERIOD:** State the total number of shares of Credit Acceptance common stock purchased/acquired from August 31, 2020 through and including November 27, 2020.[1]  (Must submit documentation.) | | |
|---|---|---|---|

**4. SALES DURING THE CLASS PERIOD AND DURING THE 90-DAY LOOKBACK PERIOD:** Separately list each and every sale of Credit Acceptance common stock from May 4, 2018 through and including the close of trading on November 27, 2020.  (Must submit documentation.)

| Date of Sale (List Chronologically) (MM/DD/YY) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions and fees) |
|---|---|---|---|
| /   / | | $ | $ |
| /   / | | $ | $ |
| /   / | | $ | $ |
| /   / | | $ | $ |

| 5. | **ENDING HOLDINGS:** State the total number of shares of Credit Acceptance common stock held as of the close of trading on November 27, 2020.  If none, write "0" or "Zero." (Must submit documentation.) | | |
|---|---|---|---|

☐ **IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX**

---

[1] Information requested in this Claim Form with respect to your purchases/acquisitions on August 31, 2020 through and including the close of trading on November 27, 2020, is needed only in order for the Claims Administrator to confirm that you have reported all relevant transactions.  Purchases/acquisitions during this period, however, are not eligible for a recovery because they are outside the Class Period and will not be used for purposes of calculating your Recognized Claim pursuant to the Plan of Allocation.

**IV.     SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS**

12.     By signing and submitting this Claim Form, the claimant(s) or the person(s) acting on behalf of the claimant(s) certify(ies) that: I (We) submit this Claim Form under the terms of the Plan of Allocation described in the accompanying Notice.  I (We) also submit to the jurisdiction of the United States District Court for the Eastern District of Michigan (the "Court") with respect to my (our) claim as a Settlement Class Member(s) and for purposes of enforcing the releases set forth herein.  I (We) further acknowledge that I (we) will be bound by and subject to the terms of any judgment entered in connection with the Settlement in the Action, including the releases set forth therein.  I (We) agree to furnish additional information to the Claims Administrator to support this claim, such as additional documentation for transactions in publicly traded Credit Acceptance common stock, if required to do so.  I (We) have not submitted any other claim covering the same transactions in publicly traded Credit Acceptance common stock during the Class Period and know of no other person having done so on my (our) behalf.

**V.     RELEASES, WARRANTIES, AND CERTIFICATION**

13.     I (We) hereby warrant and represent that I am (we are) a Settlement Class Member as defined in the Notice, that I am (we are) not excluded from the Settlement Class, that I am (we are) not one of the "Released Defendant Parties" as defined in the accompanying Notice.

14.     As a Settlement Class Member, I (we) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally, and forever compromise, settle, release, resolve, relinquish, waive, and discharge with prejudice the Released Claims as to each and all of the Released Defendant Parties (as these terms are defined in the accompanying Notice).  This release shall be of no force or effect unless and until the Court approves the Settlement and it becomes effective on the Effective Date.

15.     I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

16.     I (We) hereby warrant and represent that I (we) have included information about all of my (our) purchases/acquisitions and sales of publicly traded Credit Acceptance common stock that occurred during the time periods requested and the number of shares held by me (us), to the extent requested.

17.     I (We) certify that I am (we are) NOT subject to backup tax withholding.  (If you have been notified by the Internal Revenue Service that you are subject to backup withholding, please strike out the prior sentence.)

I (We) declare under penalty of perjury under the laws of the United States of America that all of the foregoing information supplied by the undersigned is true and correct.

Executed this _____ day of _____, 2022

_____          _____
Signature of Claimant                                               Type or print name of Claimant

_____          _____
Signature of Joint Claimant, if any                            Type or print name of Joint Claimant, if any

_____          _____
Signature of person signing on behalf of Claimant       Type or print name of person signing on behalf of Claimant

_____
Capacity of person signing on behalf of Claimant, if other than an individual (e.g., Administrator, Executor, Trustee, President, Custodian, Power of Attorney, etc.)

# REMINDER CHECKLIST



1.  Please sign this Claim Form.

2.  DO NOT HIGHLIGHT THE CLAIM FORM OR YOUR SUPPORTING DOCUMENTATION.





3.  Attach only copies of supporting documentation as these documents will not be returned to you.

4.  Keep a copy of your Claim Form for your records.





5.  The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days. **Your claim is not deemed submitted until you receive an acknowledgment postcard.** If you do not receive an acknowledgment postcard within 60 days, please call the Claims Administrator toll free at 877-654-1993.

6.  If you move after submitting this Claim Form please notify the Claims Administrator of the change in your address, otherwise you may not receive additional notices or payment.



Questions? Visit www.CreditAcceptanceSecuritiesSettlement.com or call toll-free 1-877-654-1993
To view JND's privacy policy, please visit https://www.jndla.com/privacy-policy

# EXHIBIT B

# Labaton Sucharow LLP Announces a Notice of Pendency and Proposed Settlement of Class Action in Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan v. Credit Acceptance Corporation

NEWS PROVIDED BY
**JND Legal Administration →**
Oct 17, 2022, 09:17 ET

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MICHIGAN**

**SOUTHERN DIVISION**

| | |
|---|---|
| PALM TRAN, INC. AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>CREDIT ACCEPTANCE CORPORATION, BRETT A. ROBERTS, and KENNETH S. BOOTH,<br><br>        Defendants. | Case No. 20-cv-12698<br><br>Honorable Linda V. Parker |

**SUMMARY NOTICE OF PENDENCY AND PROPOSED**

**SETTLEMENT OF CLASS ACTION AND MOTION FOR**

**ATTORNEYS' FEES AND EXPENSES**

SEATTLE, Oct. 17, 2022 /PRNewswire/ -- To: All persons and entities that purchased or otherwise acquired the publicly traded common stock of Credit Acceptance Corporation during the period from May 4, 2018 through August 28, 2020, inclusive, and were damaged thereby (the "Settlement Class").

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Eastern District of Michigan, that Lead Plaintiffs Ontario Provincial Council of Carpenters' Pension Trust Fund and Millwright Regional Council of Ontario Pension Trust Fund ("Lead Plaintiffs"), on behalf of themselves and all members of the Settlement Class, and Defendants Credit Acceptance Corporation ("Credit Acceptance"), Brett A. Roberts and Kenneth S. Booth (collectively, the "Individual Defendants" and, with Credit Acceptance, "Defendants" and, together with Lead Plaintiffs, the "Parties") have reached a proposed settlement of the claims in the above-captioned class action (the "Action") and related claims in the amount of $12,000,000 (the "Settlement").

A hearing will be held before the Honorable Linda V. Parker on December 7, 2022, at 1:00 p.m. via Zoom video conference from Courtroom 206 of the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, MI, 48226 (the "Settlement Hearing") to determine whether the Court should: (i) approve the proposed Settlement as fair, reasonable, and adequate; (ii) dismiss the Action with prejudice as provided in the Stipulation and Agreement of Settlement, dated August 24, 2022; (iii) approve the proposed Plan of Allocation for distribution of the proceeds of the Settlement (the "Net Settlement Fund") to Settlement Class Members; and (iv) approve Lead Counsel's Fee and Expense Application. The Court may change the date of the Settlement Hearing without providing another notice. You do NOT need to attend the Settlement Hearing to receive a distribution from the Net Settlement Fund. Instructions to join the video conference will be posted on the Settlement website and Lead Counsel's website.

**IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS, YOUR RIGHTS WILL BE AFFECTED BY THE PROPOSED SETTLEMENT AND YOU MAY BE ENTITLED TO A MONETARY PAYMENT.**  If you have not yet received a full Notice and Claim Form, you may obtain copies of these documents by visiting the website for the Settlement, www.CreditAcceptanceSecuritiesSettlement.com, or by contacting the Claims Administrator at:

Credit Acceptance Securities Litigation

c/o JND Legal Administration

P.O. Box 91300

Seattle, WA 98111

www.CreditAcceptanceSecuritiesSettlement.com

(877) 654-1993

Inquiries, other than requests for information about the status of a claim, may also be made to Lead Counsel:

**LABATON SUCHAROW LLP**

Michael P. Canty, Esq.

140 Broadway

New York, NY 10005

settlementquestions@labaton.com

(888) 219-6877

If you are a Settlement Class Member, to be eligible to share in the distribution of the Net Settlement Fund, you must submit a Claim Form ***postmarked or submitted online no later than December 2, 2022.***  If you are a Settlement Class Member and do not timely submit a valid Claim Form, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will nevertheless be bound by all judgments or orders entered by the Court, whether favorable or unfavorable.

If you are a Settlement Class Member and wish to exclude yourself from the Settlement Class, you must submit a written request for exclusion in accordance with the instructions set forth in the Notice so that it is **_received no later than November 16, 2022._** If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court, whether favorable or unfavorable, and you will not be eligible to share in the distribution of the Net Settlement Fund.

Any objections to the proposed Settlement, Lead Counsel's Fee and Expense Application, and/or the proposed Plan of Allocation must be filed with the Court, either by mail or in person, and be mailed to counsel for the Parties in accordance with the instructions in the Notice, such that they are **_received no later than November 16, 2022_**.

For any questions, visit www.CreditAcceptanceSecuritiesSettlement.com or call toll-free at (877) 654-1993.

PLEASE DO NOT CONTACT THE COURT, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE.

SOURCE JND Legal Administration

## BUSINESS & FINANCE

# Junk-Rated Firms Fine-Tune Their Timing

**High-yield companies with financing needs wait to know just when to tap investors**

By Nina Trentmann

**CNX Resources** Corp. was initially planning to raise funds in the bond market in January, but the natural-gas firm decided to wait until its earnings were out at the end of the month—only to find that Russia's invasion of Ukraine in late February effectively closed the market for speculative-rated companies.

The Canonsburg, Pa., company, which is rated below investment grade, waited until August, and then until September before it pulled the trigger, raising $500 million at 7.375% that will come due in 2031. CNX is using the proceeds to pay back $350 million in 2027 bonds that carry a slightly lower coupon of 7.25%. "We timed it just about as well as it could be timed," said Alan Shepard, the company's chief financial officer.

"We're constantly looking at refinancing to keep our maturities out as far as possible because the high-yield market is so fickle," he added. "It can close down for long periods of time, so if you're not careful, you get caught out."

Executives at junk-rated companies are facing sharply higher financing costs as the Federal Reserve continues to raise rates, leading some to look for alternatives, while others like Mr. Shepard swallow the increase in price in return for later due dates. While there is limited pressure overall as many businesses refinanced in 2020 and 2021 when funding was cheaper and investor appetite stronger, high-yield companies with im-

mediate financing needs have to find the right time to tap investors, corporate bankers say.

"This is a market of windows and our advice for clients is to be ready to access those windows when they present themselves," said Alexandra Barth, co-head of the leveraged capital-markets business at Deutsche Bank AG. "Even if the market is choppy, there are options."

Those opportunities are crucial for finance chiefs as there is about $11 billion in high-yield bonds coming due through the end of the year, followed by roughly $62 billion in 2023 and $107 billion in 2024, according to Deutsche Bank. Adding loans and revolving-credit facilities, speculative companies have maturities of around $1.47 trillion through 2027, ratings firm Moody's Investors Service said last week.

Companies with urgent cash demands have options, including renegotiating with lenders or searching for investors in the private credit market, which grew sharply in recent years. Companies can do follow-on or at the market offerings to sell equity to the secondary market, said Anna Pinedo, co-leader of the capital markets practice at Mayer Brown LLP, a law firm.

And the high-yield bond market isn't closed, it just become more expensive, bankers said. Companies raised $15.7 billion in speculative bonds in the third quarter, compared with $85.7 billion during the prior-year period, according to Refinitiv, a data provider. Average coupon rates for such deals climbed to 7.63% in the third quarter, up from 5.13% a year earlier, Refinitiv said.

The average yield on leveraged loans rose to 9.42% in the third quarter, when companies borrowed $125 billion, compared with a year ago when lower-rated businesses took out $296.8 billion in leveraged

loans, with yields averaging 4.57%, Refinitiv said.

In addition to CNX, speculative-grade rated businesses including auto maker **Ford Motor** Co. and cruise operator **Royal Caribbean Cruises** Ltd. secured new funding in recent weeks, according to Refinitiv. Dearborn, Mich.-based Ford borrowed $600 million from investors for 6.5% that will mature in 2062, and agreed to a $1.75 billion green bond, which has a coupon rate of 6.1% and matures in 2032. The company declined to comment.

Royal Caribbean, based in Miami, recently raised $2 billion in funds to redeem debt that would have come due in 2023, agreeing to pay investors between 8.25% and 9.25% for notes that will mature in 2029. "We have access to capital," Naftali Holtz, the company's CFO, said last month.

But financing options have tightened and the worsening

economic outlook could hurt consumer-facing companies in particular, with a chunk of recent downgrades falling into that category, according to S&P Global Ratings.

"For a generation, we had a decline in interest rates and a decline in borrowing costs. That has led to higher and higher debt loads and lower credit ratings," said Gregg Lemos-Stein, chief analytical officer for corporate ratings at S&P.

Low rates in recent years brought with them weak covenant requirements, meaning some borrowers didn't have to take out hedges to protect their exposure to floating rates, for example, the Secured Overnight Financing Rate. That can spell trouble down the road as both the London interbank offered rate and term SOFR traded higher in recent months and exceeded 3.4% for one-month tenors on Oct. 14, according to Refinitiv.

Still, default rates remain low and bankers and lawyers don't see widespread distress. During the first three quarters of the year, 279 U.S. compa-

nies filed for bankruptcy protection, fewer than in prior-year periods going back to at least 2010, according to S&P Global Market Intelligence, an arm of the ratings firm.

**Latam Airlines Group** SA on Oct. 11 said it secured financing to exit bankruptcy. The largest airline in Latin America said its debt following the restructuring will stand at around $2.2 billion, roughly 35% less than what it carries now. Interests on its new debt, however, are at 13.375%, much higher than the ones on its existing debt ranging from 3.6% to 7%, according to the company's filings. Latam also had to sell the notes at a discount to make them more attractive to investors.

Movie-theater chain **AMC Entertainment Holdings** Inc. on Friday said its subsidiary Odeon Finco PLC priced a $400 million bond. The bond carries a 12.75% coupon and was issued at a discount of 92 cents on the dollar for an all-in yield of roughly 15%, a hedge fund analyst said.

Bankers said they have received few calls from triple C-rated companies in recent months looking for maturity extensions. "It could happen in three to six months, but it is still early days and most companies accessed the market during the past couple of years when the backdrop was firm," Deutsche Bank's Ms. Barth said.

There could be some pickup in fundraising activity toward the end of the year, as companies want to avoid going-concern warnings in their annual financial statements, which can call into question their ability to stay afloat for another 12 months. "There could be a window for opportunistic issuers between now and then," a banker said.



**Bond and leveraged loan sales by high-yield companies through Oct. 14 of each year**

Bonds / Leveraged Loans

$750 billion / 500 / 250 / 0

2018 '19 '20 '21 '22

Source: Refinitiv

A CNX Resources drill rig. The natural-gas firm waited months to raise funds in the bond market.

JUSTIN MERRIMAN/BLOOMBERG NEWS

---

ADVERTISEMENT

# The Marketplace
To advertise: 800-366-3975 or WSJ.com/classifieds

## CLASS ACTION

### LEGAL NOTICE

**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION**

PALM TRAN, INC. AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN, Individually and On Behalf of All Others Similarly Situated, Plaintiff, v. CREDIT ACCEPTANCE CORPORATION, BRETT A. ROBERTS, and KENNETH S. BOOTH, Defendants.

Case No. 20-cv-12698
Honorable Linda V. Parker

**SUMMARY NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

**To:** All persons and entities that purchased or otherwise acquired the publicly traded common stock of Credit Acceptance Corporation during the period from May 4, 2018 through August 28, 2020, inclusive, and were damaged thereby (the "Settlement Class")

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Eastern District of Michigan, that Lead Plaintiffs Ontario Provincial Council of Carpenters' Pension Trust Fund and Millwright Regional Council of Carpenters Pension Trust Fund ("Lead Plaintiffs"), on behalf of themselves and all members of the Settlement Class, and Defendants Credit Acceptance Corporation ("Credit Acceptance"), Brett A. Roberts and Kenneth S. Booth (collectively, the "Individual Defendants" and, with Credit Acceptance, "Defendants" and, together with Lead Plaintiffs, the "Parties") have reached a proposed settlement of the claims in the above-captioned class action (the "Action") and related claims in the amount of $12,000,000 (the "Settlement").

A hearing will be held before the Honorable Linda V. Parker on December 7, 2022, at 1:00 p.m. via Zoom video conference from Courtroom 206 of the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, MI, 48226 (the "Settlement Hearing") to determine whether the Court should: (i) approve the proposed Settlement as fair, reasonable, and adequate; (ii) dismiss the Action with prejudice as provided in the Stipulation and Agreement of Settlement, dated August 24, 2022; (iii) approve the proposed Plan of Allocation for distribution of the proceeds of the Settlement (the "Net Settlement Fund") to Settlement Class Members; and (iv) approve Lead Counsel's Fee and Expense Application. The Court may change the date of the Settlement Hearing without providing another notice. You do NOT need to attend the Settlement Hearing to receive a distribution from the Net Settlement Fund. Instructions to join the video conference will be posted on the Settlement website and Lead Counsel's website.

IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS, YOUR RIGHTS WILL BE AFFECTED BY THE PROPOSED SETTLEMENT AND YOU MAY BE ENTITLED TO A MONETARY PAYMENT. If you have not yet received a full Notice and Claim Form, you may obtain copies of these documents by visiting the website for the Settlement, www.CreditAcceptanceSecuritiesSettlement.com, or by contacting the Claims Administrator at:

Credit Acceptance Securities Litigation
c/o JND Legal Administration
P.O. Box 91300
Seattle, WA 98111
www.CreditAcceptanceSecuritiesSettlement.com
(877) 654-1993

Inquiries, other than requests for information about the status of a claim, may also be made to Lead Counsel:

LABATON SUCHAROW LLP
Michael P. Canty, Esq.
140 Broadway
New York, NY 10005
settlementquestions@labaton.com
(888) 219-6877

If you are a Settlement Class Member, to be eligible to share in the distribution of the Net Settlement Fund, you must submit a Claim Form *postmarked or submitted online no later than December 2, 2022*. If you are a Settlement Class Member and do not timely submit a valid Claim Form, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will nevertheless be bound by all judgments or orders entered by the Court, whether favorable or unfavorable.

If you are a Settlement Class Member and wish to exclude yourself from the Settlement Class, you must submit a written request for exclusion in accordance with the instructions set forth in the Notice so that it is *received no later than November 16, 2022*. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court, whether favorable or unfavorable, and you will not be eligible to share in the distribution of the Net Settlement Fund.

Any objections to the proposed Settlement, Lead Counsel's Fee and Expense Application, and/or the proposed Plan of Allocation must be filed with the Court, either by mail or in person, and be mailed to counsel for the Parties in accordance with the instructions in the Notice, such that they are *received no later than November 16, 2022*.

**PLEASE DO NOT CONTACT THE COURT, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE**

www.CreditAcceptanceSecuritiesSettlement.com

---

BUSINESS OPPORTUNITIES

**DRY EYE SOLUTION®**
All natural dry eye treatment
Product brand acquisition offering
Distributed in the U.S.A., S. Korea, China
Current sales $22 million U.S.
541-660-5231 No Text messages
Willem.biologicaquaresearch@gmail.com

COMMERCIAL REAL ESTATE

**Business For Sale By Owner**
Turn key roll off dumpster rental business. Upstate NY. Great reputation and room to grow clientele. Serious Inquiries only.
518-429-0575

PUBLIC NOTICES

NOTICE TO: ALL FORMER SECURITY HOLDERS OF EXECVISION, INC., a Delaware corporation ("ExecVision")

The current sole stockholder of ExecVision, Mediafly, Inc., has filed a Petition in the Delaware Court of Chancery under Section 205 of the Delaware General Corporation Law seeking validation of defective corporate acts related to the conversion of Vorsight, LLC, a Virginia limited liability company, into a Delaware corporation, Vorsight, Inc., which subsequently changed its name to ExecVision (the "Petition"). The Petition seeks to validate putative actions taken in December 2015 including: (1) the conversion of Vorsight, LLC into a Delaware corporation, (2) the conversion of ownership interests in Vorsight, LLC into stock of ExecVision, (3) adoption of the initial bylaws of ExecVision, and (4) the election of David Stillman, Stephen Richard, Mudar Yaghi and Robert Means as the initial directors or ExecVision. The legal proceeding is captioned: IN RE EXECVISION, C.A. No. 2022-0588-VCC. The Petition and related filings are available for review during regular office hours at the Office of the Register in Chancery in the Court of Chancery of the State of Delaware, 500 North King Street, Wilmington, Delaware 19801 (the "Courthouse"). If you have questions, you may contact Petitioner's counsel: R. Judson Scaggs Jr., Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899-1347, rscaggs@morrisnichols.com. The Court will hold a hearing on the Petition at 1:30 p.m. on October 27, 2022 at the Courthouse. Any written objection to the Court granting validation of the defective acts requested in the Petition must be received by the Court and Petitioner's counsel on or before 5:00 p.m. (EDT) on October 25, 2022. You may also appear and object in person at the hearing.

TRAVEL



**Antarctica Expedition this December?**
Opportunity for group (maximum 4) to join professionally-guided self-drive Antarctic expedition including South Pole.
Starts 15 December 2022. Interested?
Email Arctic Trucks: jonathan@arctictrucks.is

THE WALL STREET JOURNAL.
**THE MARKETPLACE**
ADVERTISE TODAY
**(800) 366-3975**
For more information visit:
**wsj.com/classifieds**
© 2022 Dow Jones & Company, Inc.
All Rights Reserved.

---

# SPAC Sponsors Win Out

Continued from page B1
raise the rest from stock investors, according to the researchers.

When the SPAC sponsor completes a merger, the sponsor gets a bonus typically equivalent to 20% of the value of the SPAC. Many investors and academics have criticized this bonus—known as a promote—as overly generous given that it can lead sponsors to profit even if the SPAC's investors are down over 90% in many cases. Regulators from the Securities and Exchange Commission called SPAC sponsor compensation costly and drafted rules to make it more transparent to investors.

Backers of the promote structure say it allows sponsors to be compensated to take the risk to launch a SPAC, given that sponsors get little if they don't complete a merger.

The rate, they say, is set by the market, and it has fallen some as competition has grown.

The promote "is fully and fairly disclosed and has been for decades," directors of the SPAC Association trade group wrote in a comment to the SEC in June. "If investors want to support a sponsor and pay them 50%, it's their right."

Precise sponsor returns can be difficult to track. Sponsors usually only report individual sales if they serve on merged companies' boards or hold large stakes. Hedge-fund managers that run SPACs also report quarterly holdings.

For sponsors that sold shares of companies that rose in value, gains were particularly lucrative. **Apollo Global Management** Inc. put $14 million from an Apollo-run fund into a company that merged with the electric-vehicle company Fisker Inc. in 2020. Apollo sold at least $64 million of shares in the first quarter of 2021, and disposed of its remaining 12.9 million shares some time in the second quarter of 2021, records show. Based on Fisker's lowest share price in the second quarter,

Apollo would have garnered about $140 million from those sales.

The profits came as Fisker's share more than doubled to above $20 soon after the merger. Fisker's share price has since fallen to less than $7 from its $10 initial share price. Had Apollo held its shares, it would be sitting on a gain of more than $70 million.

Cantor Fitzgerald's arrangement with AEye and other SPACs was more complex than that of the typical sponsor. Cantor, which has an investment-banking arm, served as the underwriter of the initial IPO of the SPAC, generating about $4 million in fees, securities filings show. Then, when the SPAC merged with AEye, it received $25 million more in fees for marketing, merger advisory and acting as the placement agent for a slug of additional investment in the deal, securities filings show. It disposed of one million shares in the first two quarters of 2022. If it had sold at the lowest share price during those quarters, it would have brought in $2.3 million. Cantor held $6.5 million in AEye stock as of June 30.

---

## THE TICKER | MARKET EVENTS COMING THIS WEEK

### Monday

**Empire Manufacturing**
Sept., previous   -1.5
Oct., expected   -5.0

**Earnings expected**
Estimate/Year Ago
Bank of America   0.78/0.85
Bank of New York Mellon
   1.10/1.04
Charles Schwab   1.05/0.84
Equity LifeStyle Properties
   0.37/0.38

### Tuesday

**Capacity utilization**
Aug., previous   80.0%
Sept., expected   80.0%

**Industrial production**
Aug., previous
   down 0.2%
Sept., expected   up 0.1%

**Earnings expected**
Goldman Sachs   7.75/14.93
Intuitive Surgical   1.12/1.19
Johnson & Johnson
   2.48/2.60
Lockheed Martin
   6.66/2.21
Netflix   2.14/3.19
Truist Financial   1.19/1.20

### Wednesday

**Building Permits**
Aug., previous   1.517 mil.
Sept., expected   1.540 mil.

**EIA status report**
Previous change in stocks in millions of barrels
Crude-oil stocks   up 9.9
Gasoline stocks   up 2.0
Distillates   down 4.9

Tesla is expected to report per-share earnings of $1.01 on Wednesday.

SUN YILEI/REUTERS

**Housing Starts**
Aug., previous   1.575 mil.
Sept., expected   1.480 mil.

**Mort. bankers indexes**
Purch., previous
   down 2.0%
Refinan., prev.
   down 2.0%

**Earnings expected**
Estimate/Year Ago
Abbott Laboratories
   0.95/1.40
Elevance Health   7.15/6.79
IBM   1.79/2.41
Procter & Gamble   1.55/1.61
Prologis   1.29/0.97
Tesla   1.01/0.62

### Thursday

**EIA report: natural-gas**
Previous change in stocks in billions of cubic feet
   up 125

**Existing home sales**
Aug., previous   4.80 mil.
Sept., expected   4.70 mil.

**Initial jobless claims**
Previous   228,000
Expected   235,000

**Leading indicators**
Aug., previous
   down 0.3%
Sept., expected
   down 0.3%

**Philadelphia Fed survey**
Sept., previous   -9.9
Oct., expected   -5.8

**Earnings expected**
Estimate/Year Ago
AT&T   0.61/0.66
Blackstone   0.98/1.28

Danaher   2.26/2.39
Marsh & McLennan
   1.15/1.08
Philip Morris Int'l   1.35/1.58
Union Pacific   3.07/2.57

### Friday

**Earnings expected**
Estimate/Year Ago
American Express
   2.40/2.27
HCA Healthcare   3.88/4.57
Huntington Bancshares
   0.38/0.52
Regions Financial
   0.59/0.66
Schlumberger   0.55/0.36
Verizon Communications
   1.29/1.41

* FactSet Estimates earnings-per-share estimates don't include extraordinary items (Losses in parentheses) ◆ Adjusted for stock split
Note: Forecasts are from Dow Jones weekly survey of economists