UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PALM TRAN, INC. AMALGAMATED
TRANSIT UNION LOCAL 1577
PENSION PLAN, Individually and On
Behalf of All Others Similarly Situated,

    Plaintiff,

v.	Civil Case No. 20-12698
	Honorable Linda V. Parker

CREDIT ACCEPTANCE
CORPORATION, et al.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING (1) PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE SETTLEMENT AND PLAN OF ALLOCATION (ECF NO. 51) AND (2) LEAD COUNSELS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES (ECF NO. 52)**

This is a putative class action lawsuit filed under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The lawsuit asserts violations of federal law based on alleged false and misleading statements and omissions, concerning Defendant Credit Acceptance Corporation's ("Credit Acceptance") business, operations, and adherence to the relevant laws and regulations. Specifically, Plaintiff Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan ("Plaintiff") asserts that the statements and/or omissions concern (i) "topping off the pools of loans that [Credit Acceptance] packaged and securitized

with higher-risk loans"; (ii) "making high interest subprime auto loans to borrowers that the Company knew borrowers would be unable to repay"; (iii) "subject[ing] [borrowers] to hidden finance charges, resulting in loans exceeding the usury rate ceiling mandated by state law"; and (iv) "[taking] excessive and illegal measures to collect debt from defaulted borrowers." (ECF No. 1 at Pg. ID 6.)

On August 24, 2022, Plaintiff filed an "Unopposed Motion for Preliminary Approval of Class Action Settlement and Approval of Notice to The Settlement Class." (ECF No. 42) The Court held a motion hearing on August 30, 2022. The Court granted preliminary approval of the settlement and notice plan on September 19, 2022. (ECF No. 48.) The matters are presently before the Court on "Lead Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation" (ECF No 51) and "Lead Counsel's Motion For an Award of Attorneys' Fees and Payment of Litigation Expenses" (ECF No. 52). On December 7, 2022, the Court held a fairness hearing, during which both parties presented on the record. For the reasons that follow, the Court is granting both motions.

## BACKGROUND

Credit Acceptance is a provider of financing programs, and related products and services to automobile dealerships throughout the United States. As of 2019,

2

Credit Acceptance funded approximately 370,000 auto loans nationwide, of which Plaintiff alleges approximately 95% were considered to be 'subprime.' The programs are offered through a nationwide network of dealers to consumers who otherwise may not be able to obtain financing. According to Plaintiffs, Credit Acceptance provided loans to consumers that it knew could not be repaid, in addition to charging excessive interest rates.

On August 28, 2020, the Massachusetts Attorney General ("Mass. AG") filed a lawsuit against Credit Acceptance, alleging that for years, it made unfair and deceptive auto loans to consumers in Massachusetts. *See Commonwealth v. Credit Acceptance Corp.*, Case No. 2084cv01954-BLS2 (Mass. Super. Mar. 15, 2021). The lawsuit further alleged that Credit Acceptance provided false information to investors regarding asset-backed securitizations that they offered to investors, and the company engaged in unfair debt collection practices. As a result of the Mass AG lawsuit, Credit Acceptance's stock price fell $85.36 per share, which was approximately over 18%, closing at $374.07 per share over two trading days ending on September 1, 2020. Plaintiff maintains that due to Credit Acceptance's alleged wrongful acts and omissions, and the decline in its common stock, Plaintiff suffered damages throughout the class period.

On October 2, 2020, Plaintiff filed this lawsuit on behalf of the following class:

> all persons and entities who purchased or otherwise acquired Credit Acceptance common stock from November 1, 2019 through August 28, 2020, and who were damaged thereby

(ECF No. 1 ¶ 55, Pg ID 26.) In the Complaint, Plaintiff alleges that Credit Acceptance violated Sections 10(b) (Count I) and 20(a) of the Securities Exchange Act of 1934 (Count II).

## LEGAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure sets forth the procedures for the settlement of class actions. Pursuant to the rule, the court's role is to determine whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). District courts must "appraise the reasonableness of particular class-action settlements on a case-by-case basis, in the light of all the relevant circumstances." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).

> Several factors guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

The court may approve a settlement agreement that binds class members only if it finds the settlement fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). The rule sets forth the following factors courts must consider when making that determination:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and,
>
> (D) the proposal treats class members equitably relative to each other.

*Id.* The Sixth Circuit has extended "wide discretion" to district courts "in assessing the weight and applicability of [the factors it has identified]." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992); *see also UAW v. Ford Motor Co.*, 2006 WL 891151, at \*14 ("The court may choose to

consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.").

Finally, where the settlement agreement includes the payment of attorney's fees, the court must assess the reasonableness of that amount. *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (citing cases finding judicial review of the fee award necessary). "[T]he Court must carefully scrutinize the settlement and the circumstances in which it was reached, if only to ensure that 'the interest of [the] plaintiffs' counsel in counsel's own compensation did not adversely affect the extent of the relief counsel procured for the clients.' " *Id.* (quoting *Cisek v. Nat'l Surface Cleaning, Inc.*, 954 F. Supp. 110, 110-11 (S.D.N.Y. 1997)). Further, the Court has "'wide discretion in assessing the weight and applicability' of the relevant factors." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

## ANALYSIS

**A. Settlement Terms**

The settlement comprises of a full class-wide release of claims and dismissal of the action in exchange for $12,000,000 for settlement class members after deductions of fees, expenses, and taxes. The agreement provides for recovery of approximately $1.95 per allegedly damaged share before the deduction of

6

attorney's fees and expenses, and $1.34 per allegedly damaged share after deductions for awarded attorney's fees and expenses. (ECF No. 42-2 at Pg ID 1088–89.) Plaintiff notes that the Claims Administrator mailed the Notice Packets to class members, and to date, approximately 66,000 copies were mailed. The notice was published in *The Wall Street Journal* and transmitted over the internet on *PR Newswire*. Originally, potential claimants had until December 2, 2022, to submit a claim. However, at the fairness hearing, parties represented to the Court that the Claims Administrator will allow late claims to be submitted for a limited timeframe. As of December 7, 2022, 25,752 claims have been filed, which is a return rate of 39%.

According to the Plan of Allocation, the settlement proceeds will be distributed by the Claims Administrator, where claimants will submit—by mail or online through a settlement website—the Claims Form. The Claims Administrator then determines each claimants' eligibility and determines each claimants' pro rata portion of the Net Settlement Fund. Parties represent to the Court that this method will also be used to calculate Lead Plaintiff's claims as well. Further, claimants will be notified if any defects arise regarding their claims or regarding conditions of ineligibility and will be provided an opportunity to contest the rejection of their claims.

Once the claims process is ultimately completed, payments will be issued to those claimants who are approved. If there are any unclaimed funds after the initial distribution by the Claims Administrator, there will be reallocations among authorized claimants who have cashed their checks, which "may occur on multiple occasions." (ECF No. 42-2 at Pg ID 1042.) Finally, the Settlement provides that any *de minimis* balance remaining, after any outstanding Notice and administrative expenses, will be contributed to Consumer Federation of America, or any other non-profit organization approved by the Court.

### B. Likelihood of Success on the Merits/Complexity, Expense, and Likely Duration of the Litigation

Plaintiff provides convincing evidence that the settlement will avoid complex, expensive, and perhaps protracted litigation, in addition to outlining the risks involved. Plaintiff notes that in the absence of a settlement, "the complexity, cost, and duration of continued litigation . . . would be considerable." (ECF No. 51 at Pg ID 1341.) Plaintiff maintains that it faces challenges with pleading falsity, scienter, and loss causation, in light of Defendant's motion to dismiss. Specifically, Credit Acceptance maintained that the "misstatements" were those of opinion, general risk warnings, and that Plaintiff failed to allege sufficient facts to show the alleged misstatements were false. Plaintiff also notes that Credit Acceptance would likely move for summary judgment at the conclusion of discovery with

8

respect to proving liability, including but not limited to Credit Acceptance's likely arguing that they lacked scienter as they did not knowingly misrepresent or omit material facts.

Plaintiff also maintains that Credit Acceptance would likely seek to establish that the declines in stock prices were not caused by the alleged false statements. Further, if Plaintiff failed to establish causation by a preponderance of the evidence, then the class would be at risk of not obtaining any recovery. Finally, Plaintiff notes that the damages experts have different assumptions and methods to calculate perspective damages, and if the case continued, this would also raise complex issues before the Court. For these reasons, this factor favors approval of the Settlement.

**C. Risk of Fraud or Collusion/Arms-Length Negotiation**

"[C]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Sheick v. Auto. Component Carrier LLC*, No. 09-14429, 2010 WL 4136958, at *19 (E.D. Mich. Oct. 18, 2010) (citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). Here, there is no evidence to the contrary.

Under this District, settlement negotiations that employ third-party mediators or a Special Master may be viewed as evidence of an "arm's length" negotiation. *See In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich.

2021), *motion to certify appeal denied,* No. 5:16-CV-10444, 2021 WL 5833416 (E.D. Mich. Dec. 8, 2021), and *amended in part,* No. 5:16-CV-10444-JEL, 2022 WL 3721774 (E.D. Mich. Jan. 20, 2022) ("[T]here appears to be no better evidence of [a truly adversarial bargaining process] than the presence of a neutral third party mediator[.]") (citation omitted). The parties employed an experienced mediator, Robert Meyer, Esq., who himself has been involved in hundreds of disputes and has served as a mediator since 2006. (*See* Canty Decl., ECF No. 53 at Pg ID 1410.) The mediation lasted a full day where counsel "zealously negotiated for their clients' best interest." (ECF No. 51 at Pg ID 1337.) However, due to being unable to reach an agreement, Counsel continued negotiations over the next couple of weeks. The Court should find that this advocacy is indeed an example of an arms-length negotiation. For these reasons, these factors favor approval of the Settlement.

**D. Discovery Completed**

Despite counsel not engaging in formal discovery, Plaintiff's counsel exhausted time preparing for and participating in the mediation. This preparation included "each side prepar[ing] and exchang[ing] written submissions addressing liability and damages for the Parties' and mediator's review." (*See* Canty Decl., ECF No. 53 at Pg ID 1411.) Moreover, Counsel represents that they conducted an internal investigation, which included contacting 143 former employees of Credit

Acceptance and conduct over three dozen interviews. Additionally, Counsel issued FOIA requests to investigating agencies and conducted an extensive damages analysis with the assistance of an expert. As this District notes: "[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-CV-10610, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 12, 2013) (alterations in original). The parties agree that they had sufficient information to evaluate the strength and weaknesses of their arguments and the case overall. For these reasons, this factor favors approval of the Settlement.

### E. Reaction of Class Counsel and Absent Class Members

Plaintiff's counsel, who themselves have "extensive experience in securities class actions," represent to the Court that the Settlement is a favorable resolution to a complex litigation and maintains that the Settlement is fair and reasonable. (ECF No. 51 at Pg ID 1331.) Further, Plaintiff represents that there were no objections to the settlement. The lack of objections to the Settlement or Plan of Allocation provides convincing evidence that the settlement is fair, reasonable and adequate. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) (quoting *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983)) ("'[T]his unanimous approval of the proposed settlement[ ] by the class

members is entitled to nearly dispositive weight in this court's evaluation of the proposed settlement.'"). As such, this factor weighs heavily in favor of approval of the Settlement.

## F. Public Interest

The parties submit that the public interest weighs in favor of settlement because it "will conclude what would have proven to be a lengthy and complex litigation . . . provid[ing] . . . recovery to thousands of class members whose investment losses would not otherwise justify individual action." (ECF No. 51 at Pg ID 1352.) With the multitude of risks involved with strong arguments from Defendants, and Plaintiff's burden of proof, there is a likelihood that the class would not recover. *See e.g., Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 782 (N.D. Ohio 2010) (finding that the public interest served by class-wide recovery "that, but for [the] litigation, would almost certainly have gone uncompensated"). For these reasons, this factor favors approval of the Settlement.

## Attorneys' Fees & Litigation Expenses

Lead Counsel's request for an attorneys' fee award of 30% of the Settlement Fund is more than reasonable. Counsel further represents that they spent 2,542 hours on this case, amounting to a total loadstar $1,512,963. The amount sought here is within the range of percentage fee awards generally accepted in this District. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 532 (recognizing that

fees of 20-30% are generally awarded in the Sixth Circuit); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, *19 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions."). All of the factors recognized by the Sixth Circuit as relevant to determining the reasonableness of a fee request also support the requested award.

Courts under the Sixth Circuit may determine whether the lodestar method or percentage method is more appropriate when calculating attorney's fees. *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Regarding the percentage method, the Sixth Circuit notes that it has numerous advantages, including that "it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Id*. at 516. Again, Plaintiff's Counsels' attorneys' fees request is reasonable as it will be comparable to awards in this Circuit. *See e.g., In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) (finding that 33% "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"). Plaintiff's Counsel drafted the Complaint and subsequently prepared and engaged in thoughtful settlement negotiations.

13

Counsel also seeks reimbursement for $59,615.60 worth of litigation expenses. (ECF No. 10 at Pg ID 54.) This fee includes the following: (1) Court, witness & service fees: $1,535.00; (2) work-related transportation, hotels and meals: $899.65; (3) experts and professional Fees: $23,696.50; (4) mediation: $8,475.00; and (5) online legal & factual research: $21,989.10. "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 244 (E.D. Mich. 2016) (internal quotations omitted). As such, they are entitled to an award reimbursing them for these expenses.

## CONCLUSION

For the foregoing reasons, the Court finds the overall Settlement and Plan of Allocation to be fair, adequate, and reasonable to the Settlement Class. The Court also finds that Lead Plaintiff's Counsel are entitled to attorneys' fee awards, costs, and expenses incurred in litigating this action on behalf of the Class and that the awards sought are reasonable.

Accordingly,

**IT IS ORDERED** that Plaintiff's "Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation" (ECF No. 51) is **GRANTED**, and "Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses" (ECF No. 52) is **GRANTED**.

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: December 12, 2022